1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

AMMAR HARRIS,

7

     Plaintiff,

Case No. 3:21-CV-00380-RCJ-CLB

8

v.

**SCREENING ORDER on**
**SECOND AMENDED COMPLAINT**

9

STATE OF NEVADA, *et al*.,

10

     Defendants.

11

12       Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections

13 ("NDOC"), has submitted a Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983

14 (ECF No. 21), and has filed an application to proceed in forma pauperis (ECF No. 25). The matter

15 of the filing fee will be temporarily deferred. The Court now screens Plaintiff's SAC under 28

16 U.S.C. § 1915A.

17 **I.  SCREENING STANDARD**

18       Federal courts must conduct a preliminary screening in any case in which a prisoner seeks

19 redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C.

20 § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that

21 are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary

22 relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se*

23 pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

24 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide

1  more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2  A formulaic recitation of the elements of a cause of action is insufficient.  *Id.*

3       Additionally, a reviewing court should "begin by identifying pleadings [allegations] that,

4  because they are no more than mere conclusions, are not entitled to the assumption of truth."

5  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework

6  of a complaint, they must be supported with factual allegations."  *Id.*  "When there are well-pleaded

7  factual allegations, a court should assume their veracity and then determine whether they plausibly

8  give rise to an entitlement to relief."  *Id.*  "Determining whether a complaint states a plausible claim

9  for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

10  experience and common sense."  *Id.*

11       Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte*

12  if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on

13  legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or

14  claims of infringement of a legal interest which clearly does not exist), as well as claims based on

15  fanciful factual allegations (e.g., fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S.

16  319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

17  **II.  PRIOR DISMISSAL OF FIRST AMENDED COMPLAINT**

18       Previously, the Court dismissed (ECF No. 16) the entire First Amended Complaint ("FAC")

19  without prejudice with leave to amend because Plaintiff's 67-page FAC did not comply with the

20  Federal Rules of Civil Procedure ("FRCP").  The Court advised Plaintiff of the requirements under

21  the FRCP to facilitate the filing of a properly formatted second amended complaint.  The Court

22  further notified Plaintiff that the failure to comply with these rules when drafting and filing his

23  Second Amended Complaint could result in this action being dismissed.  The Court advised Plaintiff

24  that a complaint must contain "a short and plain statement of the claim showing that [Plaintiff] is

entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*. The function of the complaint is not to list every single fact relating to Plaintiff's claims. As such, the Court notified Plaintiff that if he amended his FAC, he was required to set forth his claims in a simple, concise, and direct manner to meet the requirements of FRCP 8.

The Court also advised Plaintiff that a basic lawsuit is a single claim against a single defendant. FRCP 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. FRCP 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner"). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that inmates pay the required filing fees for their lawsuits and prevent inmates from circumventing the three strikes rule under the PLRA. 28 U.S.C. § 1915(g). The Court advised Plaintiff that each claim that he raised in a second amended complaint must be permitted by either Rule 18 or Rule 20. That is, the Court notified Plaintiff that he may state a single claim against a single defendant. Plaintiff could then add any additional claims to his action that are against the same defendant under FRCP 18. Plaintiff could also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions

as his original claim. Fed. R. Civ. P. 20(a)(2). The Court notified Plaintiff that any attempt to join claims that are not permitted by the FRCP will result in those claims being dismissed as improperly joined.

**III. SCREENING OF SECOND AMENDED COMPLAINT**

In the 32-page[1] SAC, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at Ely State Prison ("ESP") and High Desert State Prison ("HDSP"). ECF No. 21 at 3. Plaintiff sues Defendants Board of Prison Commissioners Steven Sisolak, Aaron Ford, and Barbara Cegavske in their official capacities for injunctive relief. *Id.* at 3-4. He also names as Defendants, solely in their official capacities, NDOC Director Charles Daniels, NDOC Deputy Director Brian Williams Sr., NDOC Medical Director Michael Minev, ESP Warden William Gittere, ESP Associate Warden William Reubart, and HDSP Warden Calvin Johnson. *Id.* at 4-6. He further names as Defendants, both in their individual and official capacities, ESP Associate Warden David Drummond, Caseworker P. Hernandez, Correctional Officer Dana Cole, Correctional Officer Boyd, HDSP Associate Warden F. Dreesen, HDSP Dr. Gregory Bryan, and Does 1-10. *Id.* at 5-7. Plaintiff alleges four causes of action and seeks monetary, declaratory, and injunctive relief. *Id.* at 31-32.[2]

The Court construes the SAC as alleging the following claims: Eighth Amendment claims for deliberate indifference to inmate safety; an Eighth Amendment claim for deliberate indifference

---

[1] Plaintiff has also attached more than 200 pages of "Exhibits" to his complaint.

[2] Plaintiff has also named the State of Nevada as a Defendant. The Court dismisses Defendant State of Nevada with prejudice from the entirety of this case, as amendment would be futile. Plaintiff can neither raise 42 U.S.C. § 1983 claims nor state law claims against the State of Nevada based on Eleventh Amendment sovereign immunity. *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (holding that "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state" and that "[t]he Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature"); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding that states are not persons for purposes of § 1983); *see* NRS § 41.031(3) (stating that the State of Nevada does not waive its Eleventh Amendment immunity).

to serious medical needs; Fourteenth Amendment claims for denial of access to the Courts; a First Amendment claim for retaliation; and an American with Disabilities Act claim.

## IV. BACKGROUND

On August 28, 2020, at about 8:30 in the morning, an inmate attacked and seriously injured Plaintiff. *Id.* at 8-9. Earlier that morning, Plaintiff had informed Defendant Cole that he was not going to the yard that day. *Id.* at 8. Just prior to the attack, Cole started opening multiple cell doors. *Id.* The inmate was standing at Plaintiff's cell door, made a gesture to Cole, and Plaintiff's cell was opened. *Id.* Plaintiff became aware the inmate had a weapon and alerted Cole and Defendant Boyd for aid. *Id.* They laughed and cheered and did not intervene until after Plaintiff was on the floor bleeding. *Id.* at 8-9.

Following the attack, Plaintiff was transported to a hospital, and then transported to UMC Trauma. *Id.* at 9-10. Plaintiff next woke up on September 4, 2020, and a doctor indicated Plaintiff was lucky to be alive, having twice been revived from death. *Id.* at 10. On September 11, 2020, Plaintiff was transferred to Summerlin Hospital for speech pathology, pain management, and physical and occupational therapy. *Id.* While at Summerlin Hospital, Plaintiff received blood thinners to increase circulation. *Id.* at 12.

On October 16, 2020, Plaintiff was transferred to HDSP and taken to the infirmary in a wheelchair with a copy of his medical records and a medical order for continuing care, pain management and physical therapy. *Id.* at 11. Defendant Dr. Bryan visited Plaintiff on October 19, 2020, who did not examine Plaintiff but asked whether Plaintiff was feeling pain (he was). *Id.* Dr. Bryan informed Plaintiff that he would not be sent to physical therapy. *Id.* at 11-12. Dr. Bryan discontinued the use of blood thinners and put Plaintiff on Baclofen.[3] *Id.* at 12.

---

[3]     Plaintiff asserts that he has learned that Baclofen should not be given to stroke patients.

1        Dr. Bryan released Plaintiff from the infirmary on November 19, 2020.  *Id.* at 13.  Plaintiff

2    was placed into "disciplinary / punitive segregation."  *Id.* at 13-14.  On November 24, 2020, Plaintiff

3    received a notice of charges for murder from Cole arising from the August 28, incident.  *Id.* at 14.

4        On May 6, 2021, Defendants Drummond, Gittere, Reubart, and Johnson planned to have

5    Plaintiff transferred back to ESP.  *Id.* at 16.  The transfer occurred on May 19, 2021.  *Id.*  Plaintiff

6    was taken to intake in a wheelchair and, while in full restraints, was required to get out of the

7    wheelchair to board the bus.  *Id.*  His request to be handcuffed in the front was denied.  *Id.*  During

8    the trip, the bus came to a sudden stop.  *Id.*  Plaintiff hit his head on the back of the seat in from of

9    him, then fell to the floor.  *Id.*  Plaintiff was admitted to the infirmary at ESP upon his arrival.  *Id.*

10        Plaintiff filed informal grievances on March 14, 2021, and March 21, 2021.[4]  *Id.* at 15.  When

11    he did not receive a response, he filed a First Level Grievance on May 5, 2021.  *Id.*  On June 6, 2021,

12    Defendant Hernandez informed Plaintiff that he needed to pay for copies of his grievances.  *Id.* at

13    17.  When Plaintiff did not receive responses, he filed a First Level grievance on July 16, 2021, and

14    a Second Level Grievance on August 1, 2021.  *Id.* at 17-18.  On August 6, 2021, Hernandez gave

15    Plaintiff two memorandums issued by Drummond.  *Id.*  Plaintiff asked Hernandez for clarity, to

16    which she responded that "something bad may happen" if he kept pushing the issue.  *Id.*

17        In December 2014, the Department of Justice initiated an investigation after receiving

18    complaints from inmates with disabilities in the custody of NDOC.  *Id.*  In June 2016, the Department

19    issued a letter finding the NDOC had violated the ADA.  *Id.*  On April 1, 2021, Defendants Sisolak

20    and Daniels entered into a settlement agreement with the Department.

21

22

23

24

---

[4]    The exhibits Plaintiff has attached to his motion suggest that these grievances sought compensation for the injuries he sustained in the August 28, 2020, incident.

1    **V.    ANALYSIS**

2        **A.    Improper Joinder of Claims**

3            The Court previously notified Plaintiff that any attempt to join claims that are not permitted

4    by the FRCP will result in those claims being dismissed as improperly joined.  FRCP 18(a) allows

5    a plaintiff to add multiple claims to the lawsuit when they are against the same defendant.  FRCP

6    20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out

7    of the same "transaction, occurrence, or series of transactions" and "any question of law or fact

8    common to all defendants will arise in the action."  However, unrelated claims that involve different

9    defendants must be brought in separate lawsuits.  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir.

10    2007) (holding that "[a] buckshot complaint that would be rejected if filed by a free person—say, a

11    suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a

12    debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a

13    prisoner").

14            In considering whether Plaintiff has improperly joined claims in his SAC, the Court finds

15    that his primary claim is his Eighth Amendment claim for deliberate indifference to inmate safety

16    arising from the August 28, 2020, incident, which he has brought against Cole and Boyd. [5]  Plaintiff

17    also alleges that Cole filed a disciplinary charge for murder against him arising from the August 28,

18    2020, incident.  As Plaintiff asserts this was done for the purpose of preventing him to petition the

19    government for a redress of grievances, the Court broadly construes the SAC as alleging Cole filed

20    the disciplinary charge in an effort to deny him access to the courts or the grievance process in

21

22

23    —————————————

24    [5]        Plaintiff also seeks to hold Daniels, Williams, Gittere, Reubart, Drummond, and Does liable
as supervisors of Cole and Boyd regarding the August 28, 2020, incident.  As will be discussed later,
Plaintiff has not stated a colorable claim against any of these Defendants.

violation of the Fourteenth Amendment.[6]  As Plaintiff has brought this claim against Cole, it is properly joined in this action.

Plaintiff brings a separate Eighth Amendment claim against Dr. Bryan for deliberate indifference to his serious medical needs arising from Dr. Bryan's medical care rendered in October 2020, regarding Plaintiff's injuries from the August 28, 2020, incident.  The Court will treat this claim as sufficiently related to the Plaintiff's primary claim as to permit its joinder in this lawsuit.

Plaintiff seeks to hold Drummond and Hernandez liable under the First Amendment for retaliating against him for filing grievances starting in March 2021.  Broadly construed, Plaintiff also seeks to hold Drummond, Gittere, Reubart, Dreesen and Johnson liable under the Fourteenth Amendment for attempting to deny him access to the Courts.  On its face, the SAC lacks any allegations indicating any connection between these acts and the August 28, 2020, incident. However, Plaintiff has attached exhibits to his SAC that include copies of his grievances in which he seeks compensation for the injuries he sustained in the August 28, 2020, incident.  As Plaintiff was required to exhaust the grievance process prior to bringing any claims based on that incident, the Court finds these claims are properly joined.

However, Plaintiff also seeks to hold Daniels, Williams, Gittere, Reubart, Johnson, Dreesen, Drummond, and Doe Defendants liable under the Eighth Amendment for deliberate indifference to inmate safety regarding his transport between HDSP and ESP on May 14, 2021.  He also brings a Fourteenth Amendment claim against Drummond, Gittere, Reubart, Dreesen and Johnson, alleging that they decided to transport Plaintiff in an attempt to deny him access to the courts.  He also appears to bring an Americans with Disabilities Act claim against Doe Defendants for failing to reasonably

---

[6]    Plaintiff also seeks to hold Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, and Johnson liable as supervisors of Cole regarding the disciplinary charge for murder.  As will be discussed later, Plaintiff has not stated a colorable claim against any of these Defendants.

accommodate his disability for denying his request to be handcuffed in front during this transport. He also appears to seek injunctive relief against Defendants Sisolak and Daniels both for breaching the April 2021 ADA Settlement Agreement and violating the ADA.  This claim also arises from the May 14, 2021, transport, as it also rests upon Plaintiff's allegation that his request to be handcuffed in front during the transport was denied.  Plaintiff's claims arising from or concerning his transport between prisons are unrelated to his Eighth Amendment claim against Cole arising from the August 28, 2020, incident.  Accordingly, the Court will dismiss these claims without prejudice as improperly joined.

**B.  Deliberate Indifference to Serious Threat to Inmate Safety**

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.  *Id*. at 834.  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."  *Id*. at 837.  Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.  *Id*. at 843.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983."  *Id*.; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that

1  "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that

2  each Government-official defendant, through the official's own individual actions, has violated the

3  Constitution").

4      "A showing that a supervisor acted, or failed to act, in a manner that was deliberately

5  indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—

6  and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). "Thus,

7  when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable

8  for his or her own culpable action or inaction, not held vicariously liable for the culpable action or

9  inaction of his or her subordinates." *Id*. at 1207. As such, "a plaintiff may state a claim against a

10  supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence

11  in unconstitutional conduct by his or her subordinates." *Id*.

12      Plaintiff has stated a colorable Eighth Amendment claim for deliberate indifference to a

13  serious threat to inmate safety as against Defendants Cole and Boyd. Plaintiff has alleged that Cole

14  was opening cell doors to allow inmates to go to the yard. Plaintiff had made Cole aware that he

15  would not be going to the yard. Nevertheless, his cell door was opened after an inmate, who was

16  standing in front of the cell, made a gesture to Cole. Plaintiff alleges he realized the inmate had a

17  weapon and alerted Cole and Boyd for aid. They responded by laughing and cheering and did not

18  intervene until after Plaintiff was injured. Accepting the allegations as true, they raise a plausible

19  inference that Cole was deliberately indifferent to the serious threat to Plaintiff's safety posed by the

20  attacking inmate both immediately prior to and during the attack. The allegations also raise a

21  plausible inference that Boyd was deliberately indifferent to a serious threat against Plaintiff's safety

22  during the attack. The Court will permit this claim to proceed against Cole and Boyd.

23      Plaintiff has not stated a colorable Eighth Amendment claim for deliberate indifference to

24  inmate safety as against Daniels, Williams, Gittere, Reubart, Drummond, and Does in their capacity

as supervisors of Cole and Boyd regarding the August 28, 2020, incident. Plaintiff has not asserted any allegation of fact suggesting that any of these Defendants participated in or directed the alleged violations of either Cole or Boyd, or knew of the alleged violations and failed to act to prevent them. Plaintiff has not asserted any allegation of fact suggesting that any of these Defendants had knowledge of and acquiesced in the alleged unconstitutional conduct of Cole or Boyd. Plaintiff has not alleged any facts raising a plausible inference that either Cole or Boyd acted pursuant to a policy or custom. Plaintiff's conclusory allegation that the acts were pursuant to a policy or custom does not cure this defect. The Court will dismiss this claim for failure to state a claim. This dismissal is without prejudice but with leave to amend.

Plaintiff has not stated a colorable Eighth Amendment for deliberate indifference to inmate safety as against Daniels, Williams, Gittere, Reubart, Drummond, and Does for failing to inform Plaintiff of threats against him. While this claim seeks to hold these defendants liable for their own conduct, rather than vicariously liable for the conduct of subordinates, it fails because Plaintiff has not alleged facts raising a plausible inference that that these Defendants knew of and disregarded an excessive risk to Plaintiff's safety. He has not alleged facts suggesting that any of these Defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew the inference. Plaintiff's conclusory and general allegation that these Defendants possessed intercepted communications and other intelligence revealing threats against Plaintiff's life since 2014 does not cure this defect. The Court will dismiss this claim for failure to state a claim. This dismissal is without prejudice but with leave to amend.

**C. Deliberate Indifference to Serious Medical Need**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when

he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). Additionally, if the prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995).

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."

1    *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  To establish that

2    a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course

3    of treatment the doctors chose was medically unacceptable under the circumstances" and "that they

4    chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  *Jackson v.*

5    *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

6         However, "a complaint that a physician has been negligent in diagnosing or treating a

7    medical condition does not state a valid claim of medical mistreatment under the Eighth

8    Amendment.  Medical malpractice does not become a constitutional violation merely because the

9    victim is a prisoner."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Even gross negligence is

10   insufficient to establish deliberate indifference to serious medical needs.  *See Toguchi v. Chung*, 391

11   F.3d 1051, 1060 (9th Cir. 2004).

12        Plaintiff has not stated a colorable claim of deliberate indifference to a serious medical need

13   as against Dr. Bryan.  The Court recognizes, at the outset, that Plaintiff has sufficiently alleged that

14   he suffered serious and significant injuries as a result of the August 28, 2020, incident.  He has

15   alleged facts raising a plausible inference that those injuries required ongoing care in October and

16   November 2020.  However, Plaintiff has not alleged facts raising a plausible inference that Dr. Bryan

17   was deliberately indifferent to Plaintiff's serious medical needs arising from those injuries.

18   Plaintiff's claim rests upon three medical decisions Dr. Bryan made regarding Plaintiff's care.  First,

19   Plaintiff alleges that Dr. Bryan did not send Plaintiff to physical therapy but that Plaintiff was going

20   to have to help himself.  Plaintiff has not, however, alleged facts raising an inference of a serious

21   medical need to be *sent* to physical therapy, as opposed to physical therapy self-performed by

22   Plaintiff.  Plaintiff's allegation that a nurse informed him that without therapy his condition would

23   get worse does not cure this defect, as it suggests only a difference of medical opinion.  Further,

24   Plaintiff has not alleged facts raising an inference that, because he was not sent to physical therapy,

he suffered further significant injury or the unnecessary and wanton infliction of pain. His general assertion that he suffered injury and unnecessary pain is conclusory and does not cure this defect.

Second, Plaintiff alleges that Dr. Bryan prescribed Baclofen. Plaintiff has not alleged any injury, much less a significant injury, resulting from this decision. Neither has he alleged that the prescription for Baclofen was medically unacceptable for his particular circumstance. His allegation that he learned Baclofen should not be given to stroke patients, or that Dr. Bryan did not inform him of the side effects, does not cure this defect.

Third, and finally, Plaintiff alleges that Dr. Bryan discharged him from the infirmary on November 19, 2020. Again, Plaintiff has not alleged any injury, much less a significant injury, resulting from this decision. Neither has he alleged facts raising an inference that his discharge from the infirmary on November 19, 2020, was medically unacceptable for his particular circumstance. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Dr. Bryan for deliberate indifference to a serious medical need for failure to state a claim. This dismissal is without prejudice but with leave to amend.

Plaintiff has not stated a colorable Eighth Amendment claim for deliberate indifference to serious medical needs as against Daniels, Williams, Minev, Johnson, Dreesen, and Doe Defendants as supervisors of Dr. Bryan. The claim fails as Plaintiff has not alleged a colorable constitutional violation against Dr. Bryan. In addition, Plaintiff has not asserted any allegation of fact suggesting that any of these Defendants participated in or directed the alleged violations, or knew of the alleged violations and failed to act to prevent them. Plaintiff has not asserted any allegation of fact suggesting that any of these Defendants had knowledge of and acquiesced in the alleged unconstitutional conduct of Dr. Bryan. Plaintiff has not alleged any facts raising a plausible inference that Dr. Bryan acted pursuant to a policy or custom. Plaintiff's conclusory allegation that the acts were pursuant to a policy or custom does not cure this defect. Plaintiff has not stated a

1   colorable claim against these Defendants arising from Dr. Bryan's interactions with Plaintiff on

2   October 19, 2020.

3   **D. First Amendment claim for Retaliation for Filing Grievances**

4        Prisoners have a First Amendment right to file prison grievances and to pursue civil rights

5   litigation in the courts.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).  "Without those

6   bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison

7   injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those

8   rights necessarily undermine those protections, such actions violate the Constitution quite apart from

9   any underlying misconduct they are designed to shield."  *Id*.

10        To state a viable First Amendment retaliation claim in the prison context, a plaintiff must

11  allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because

12  of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

13  First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

14  goal."  *Id*. at 567-68.  Total chilling is not required; it is enough if an official's acts would chill or

15  silence a person of ordinary firmness from future First Amendment activities.  *Id*. at 568-69.

16        "[T]he denial of a grievance or a disciplinary appeal without more does not meet the requisite

17  threshold of adversity.  Such actions are considered *di minimis*; they would not deter an inmate of

18  ordinary firmness from partaking in future First Amendment activities."  *Almy v. R. Bannister*, No.

19  3:13-CV-00645-MMD-VPC, 2016 WL 11448946, at *6 (D. Nev. May 23, 2016), report and

20  recommendation adopted sub nom. *Almy v. Bannister*, No. 3:13-CV-00645-MMD-VPC, 2016 WL

21  5419416 (D. Nev. Sept. 27, 2016).

22        Plaintiff seeks to hold Drummond and Hernandez liable for retaliating against him for filing

23  grievances.  He has not, however, stated a colorable claim for relief.  He has alleged that he filed

24  grievances.  He has not, however, alleged facts raising an inference that he was subjected to an

16

adverse action by either Defendant because he filed those grievances.  His allegation that he did not receive a timely response to his grievances is, at most, a *de minimis* action.  His allegation that he was required to pay for copies of his grievances does not raise an inference of an adverse action. His allegation that Hernandez gave him two memoranda from Drummond regarding his grievances raises, at most, an inference that his grievances were denied.  This is an inference that does not meet the requisite threshold of adversity.

The Court will dismiss Plaintiff's First Amendment claim for retaliation without prejudice for failure to state a claim.  This dismissal is without prejudice but with leave to amend.

**E.   Fourteenth Amendment claim for Denial of Access to Grievance Procedures**

Prisoners have a constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered "actual injury."  *Id*. at 349.  The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  *Id*. at 353.  "The right of meaningful access to the courts extends to established prison grievance procedures."  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).  "[T]he object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  *Christopher v. Harbury*, 536 U.S. 403, 413, (2002).

Plaintiff has not stated a colorable Fourteenth Amendment claim for denial of access against Cole. Plaintiff alleges that Cole filed a disciplinary charge against him for murder arising from the August 28, 2020, incident.  Plaintiff asserts this charge was fictitious.  Plaintiff has not alleged facts raising an inference that, in filing the disciplinary charge, Cole denied Plaintiff access to either the Courts or to the grievance process.  Plaintiff's only relevant assertion is his speculation that the

1  NDOC has a policy or custom of issuing fictitious notices of charges "to prevent inmates from
2  petitioning the government for a redress of grievances."  Absent from the complaint, however, are
3  any allegations of fact suggesting that Plaintiff was, as a result of the disciplinary charge, prevented
4  from either filing a grievance or initiating a court action regarding the August 28, 2020, incident.

5      Plaintiff fails to state a colorable Fourteenth Amendment claim for denial of access as against
6  Daniels, Williams, Gittere, Reubart, Drummond, and Does liable as supervisors of Cole regarding
7  the disciplinary charge filed against Plaintiff arising from the August 28, 2020, incident.  The claim
8  fails because Plaintiff has not alleged a colorable constitutional claim against Cole for filing the
9  disciplinary charge.  In addition, Plaintiff has not asserted any allegation of fact suggesting that any
10  of these Defendants participated in or directed the alleged violations, or knew of the alleged
11  violations and failed to act to prevent them.  Plaintiff has not asserted any allegation of fact
12  suggesting that any of these Defendants had knowledge of and acquiesced in any alleged
13  unconstitutional conduct of Cole regarding the disciplinary charge.  Plaintiff has not alleged any
14  facts raising a plausible inference that the alleged acts were pursuant to a policy or custom.
15  Plaintiff's conclusory allegation that the acts were pursuant to a policy or custom does not cure this
16  defect.  The Court will dismiss this claim for failure to state a claim.  This dismissal is without
17  prejudice but with leave to amend.

18  **VI. LEAVE TO AMEND**

19      The Court will grant Plaintiff leave to file a Third Amended Complaint to cure the
20  deficiencies of the claims alleged in the Second Amended Complaint.  If Plaintiff chooses to file a
21  Third Amended Complaint, he is advised that the Third Amended Complaint supersedes (replaces)
22  the Second Amended Complaint as well as the original complaint and First Amended Complaint.
23  Thus, the Third Amended Complaint must be complete in itself.  *See Hal Roach Studios, Inc. v.*
24  *Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party

was named in the original complaint is irrelevant; an amended pleading supersedes the original");

*see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims

dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended

complaint to preserve them for appeal).

If Plaintiff chooses to file a Third Amended Complaint, it must contain all properly joined

claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit. However,

the Court advises Plaintiff that leave to amend has been granted only to cure the defects of the

properly joined claims alleged in the Second Amended Complaint. The Court has not granted

Plaintiff leave to amend to add claims not alleged in the Second Amended Complaint. Further, the

Court has not granted Plaintiff leave to amend this complaint regarding the improperly joined claims.

Finally, if Plaintiff chooses to file a Third Amended Complaint, he should file it on this Court's

approved prisoner civil rights form and it must be entitled "Third Amended Complaint."

The Court notes that if Plaintiff chooses to file an amended complaint curing the deficiencies

of the claims dismissed from the Second Amended Complaint, as outlined in this order, Plaintiff

must file the amended complaint within 30 days from the date of entry of this order. If Plaintiff

chooses to file a Third Amended Complaint, the Court will screen it in a separate screening order.

The screening process will take several months. If Plaintiff chooses not to file a Third Amended

Complaint curing the stated deficiencies, this action will proceed against Defendants Cole and Boyd

solely as to Plaintiff's claim that they violated his Eighth Amendment right by being deliberately

indifferent to Plaintiff's safety as an inmate.

**CONCLUSION**

IT IS HEREBY ORDERED that a decision on the application to proceed *in forma pauperis*

(ECF No. 25) is deferred.

1    IT IS FURTHER ORDERED that the Second Amended Complaint (ECF No. 21) is the

2    operative complaint.

3    IT IS FURTHER ORDERED that Plaintiff's claims arising from the transport of Plaintiff

4    from HDSP to ESP in May 2021, are DISMISSED without prejudice without leave to amend as

5    improperly joined.

6    IT IS FURTHER ORDERED that Plaintiff's Eighth Amendment claim for Deliberate

7    Indifference to Inmate Safety as against Defendants Cole and Boyd may proceed.

8    IT IS FURTHER ORDERED that Plaintiff's Eighth Amendment claim for Deliberate

9    Indifference to Inmate Safety as against Defendants Daniels, Williams, Gittere, Reubart,

10    Drummond, and Doe Defendants is DISMISSED without prejudice but with leave to amend.

11    IT IS FURTHER ORDERED that Plaintiff's Eighth Amendment claim for Deliberate

12    Indifference to Serious Medical Needs is DISMISSED as against all Defendants without prejudice

13    but with leave to amend.

14    IT IS FURTHER ORDERED that Plaintiff's First Amendment claim for Retaliation is

15    DISMISSED without prejudice but with leave to amend.

16    IT IS FURTHER ORDERED that Plaintiff's Fourteenth Amendment claims for denial of

17    access are DISMISSED without prejudice but with leave to amend.

18    IT IS FURTHER ORDERED that, if Plaintiff chooses to file a Third Amended Complaint

19    curing the deficiencies of the claims alleged in his Second Amended Complaint, as outlined in this

20    order, Plaintiff will file the Third Amended Complaint within 30 days from the date of entry of this

21    order.

22    IT IS FURTHER ORDERED that the Clerk of the Court will send to Plaintiff the approved

23    form for filing a § 1983 complaint, instructions for the same, and a copy of his Second Amended

24    Complaint (ECF No. 21).  If Plaintiff chooses to file a Third Amended Complaint, he should use the

1   approved form and he will write the words "Third Amended" above the words "Civil Rights

2   Complaint" in the caption.

3        IT IS FURTHER ORDERED that, if Plaintiff chooses to file a Third Amended Complaint,

4   the Court will screen the amended complaint in a separate screening order.  The screening process

5   will take several months.

6        IT IS FURTHER ORDERED that, if Plaintiff chooses not to file a Third Amended Complaint

7   curing the stated deficiencies of the complaint, this action will proceed immediately and only as to

8   the Eighth Amendment claim of Deliberate Indifference to Inmate Safety as against Defendants Cole

9   and Boyd.

10       IT IS SO ORDERED.

11

12  Dated: <u>July 26, 2022</u>

13

14  _____

15                    ROBERT C. JONES
                  United States District Judge

16

17

18

19

20

21

22

23

24