UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

AMMAR HARRIS,

Plaintiff,

v.

ELY STATE PRISON STAFF, *et al.*,

Defendants.

Case No. 3:21-cv-00380-RCJ-CLB

SCREENING ORDER ON
THIRD AMENDED COMPLAINT

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a third amended complaint ("TAC") pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act. (ECF No. 27.) Plaintiff has also filed an application to proceed *in forma pauperis* and several motions. (ECF Nos. 13, 25, 30, 31, 35, 37.) The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's TAC under 28 U.S.C. § 1915A and addresses his motions.

I.    **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a

claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

2

1   Finally, all or part of a complaint filed by a prisoner may be dismissed *sua sponte*
2   if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims
3   based on legal conclusions that are untenable (e.g., claims against defendants who are
4   immune from suit or claims of infringement of a legal interest which clearly does not exist),
5   as well as claims based on fanciful factual allegations (e.g., fantastic or delusional
6   scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v.*
7   *Block*, 932 F.2d 795, 798 (9th Cir. 1991).

8   **II.    PRIOR SCREENING ORDER**

9   On July 26, 2022, this Court entered an order screening Plaintiff's second
10  amended complaint ("SAC"). (ECF No. 29.) The Court found that Plaintiff stated a
11  colorable Eighth Amendment claim for deliberate indifference to inmate safety, dismissed
12  Plaintiff's claims concerning the May 2021 prison transfer without leave to amend as
13  improperly joined, and dismissed the remaining claims with leave to amend. (*Id.* at 20.)
14  The Court gave Plaintiff until August 25, 2022, to file a third amended complaint. (*Id.*)

15  Shortly before the Court screened the SAC, Plaintiff had submitted his TAC along
16  with a motion for leave to file that complaint. (ECF Nos. 27, 28, 29.) The screening order
17  did not address the TAC or Plaintiff's motion. Three weeks after the screening order was
18  entered, Plaintiff sought an extension of time to file a new complaint. (ECF No. 33.)
19  Magistrate Judge Carla Baldwin granted that request, gave Plaintiff until September 23,
20  2022 to file an amended pleading, and, to avoid docket confusion, directed the Clerk of
21  the Court to strike Plaintiff's TAC and his motion for leave to file that complaint. (ECF No.
22  34.)

23  Plaintiff subsequently objected to Judge Baldwin's order, requesting that the Court
24  "not strike" his TAC or his motion. (ECF No. 36 at 5.) Plaintiff also appears to request that
25  the Court proceed with screening the TAC. (*Id.*) Because Plaintiff has not filed a new
26  complaint in response to the Court's screening order, the Court will treat the TAC as the
27  operative complaint and direct the Clerk of the Court to file it as a separate entry on the
28

1  docket. In light of this ruling, the Court overrules as moot Plaintiff's objection to Judge
2  Baldwin's order.[1] (ECF No. 36.) The Court now screens the TAC.

3  **III.    SCREENING OF TAC**

4  In the TAC, Plaintiff sues multiple Defendants for events that took place while he
5  was incarcerated at Ely State Prison ("ESP") and High Desert State Prison ("HDSP").
6  (ECF No. 27 at 3-7.) Plaintiff sues Governor Steven Sisolak, Secretary of State Barbara
7  Cegavske, Attorney General Aaron Ford, Director Charles Daniels, Deputy Director Brian
8  Williams, Sr., Medical Director Michael Minev, Warden William Gittere, Associate Warden
9  of Operations William Reubart, Associate Warden of Programs Davis Drummond,
10  Caseworker P. Hernandez, Correctional Officer ("C/O") Dana Cole, C/O Boyd, Warden
11  Calvin Johnson, Associate Warden of Programs F. Dreesen, Dr. Gregory Bryan, the State
12  of Nevada, and multiple Doe Defendants. (*Id.*)

13  Liberally construed, the TAC raises the following claims: (i) Eighth Amendment
14  claims for deliberate indifference to inmate safety; (ii) an Eighth Amendment claim for
15  deliberate indifference to serious medical needs; (iii) a First Amendment retaliation claim;
16  (iv) Fourteenth Amendment claims for denial of access to the courts and the grievance
17  process; and (v) an American with Disabilities Act ("ADA") claim. Plaintiff seeks monetary,
18  declaratory, and injunctive relief. (*Id.* at 30-32.)

19  The TAC alleges the following. On August 28, 2020, at about 8:30 in the morning,
20  an inmate attacked and seriously injured Plaintiff. (*Id.* at 8-9.) Earlier that morning, Plaintiff
21  had informed Cole that he was not going to the yard that day. (*Id.* at 8.) Just before the
22  attack, Cole started opening multiple cell doors in Plaintiff's unit. (*Id.*) The inmate stood
23  by Plaintiff's cell door and made a gesture to Cole. (*Id.*) Plaintiff's cell door was opened.
24  (*Id.*) At this point, Plaintiff saw that the inmate had a weapon, so he alerted Cole and Boyd
25  for aid. (*Id.*) They laughed and cheered and did not intervene until after Plaintiff was on
26  the floor bleeding. (*Id.*)

27

28  ---
[1] The Court also denies as moot Plaintiff's request for an extension of time to file his TAC. (ECF No. 35.)

4

Following the attack, Plaintiff was taken to a hospital, and then transported to UMC Trauma. (*Id.* at 9.) Plaintiff woke up on September 4, 2020, and a doctor indicated he was lucky to be alive, having twice been revived from death. (*Id.* at 9-10.) Plaintiff "could not articulate himself" because he had suffered a stroke and a "traumatic brain injury." (*Id.* at 10.) One week later, Plaintiff was transferred to Summerlin Hospital for speech pathology, pain management, and physical and occupational therapy. (*Id.*) While at Summerlin Hospital, Plaintiff received blood thinners to increase circulation. (*Id.* at 12.)

On October 16, 2020, Plaintiff was transferred to HDSP and taken to the infirmary in a wheelchair with a copy of his medical records and a medical order for continuing care, pain management, and physical therapy. (*Id.* at 11.) Dr. Bryan visited Plaintiff on October 19, 2020. (*Id.*) Although Dr. Bryan did not examine Plaintiff, he asked whether Plaintiff was feeling pain. (*Id.*) Plaintiff "answered in the affirmative." (*Id.*) Dr. Bryan informed Plaintiff that he would not be sent to physical therapy, discontinued the use of blood thinners, and put Plaintiff on Baclofen. (*Id.* at 11-12.) Plaintiff later learned that Baclofen "should not be given to" stroke patients. (*Id.* at 12.)

Dr. Bryan released Plaintiff from the infirmary on November 19, 2020. (*Id.*) Plaintiff informed Dr. Bryan that he was "still having dizziness, blurry vision, blackouts, [and] headaches with severe pain." (*Id.* at 13.) Although Dr. Bryan said he "would prescribe [Plaintiff] something," he never did so. (*Id.*) Dr. Bryan also failed to schedule an appointment with Plaintiff's neurosurgeon. (*Id.*) Following his release from the infirmary, Plaintiff was placed in "punitive segregation." (*Id.* at 15.) On November 24, 2020, Plaintiff received from Cole a "fictitious" notice of charges for murder arising from the August 28, 2020 incident. (*Id.* at 15-16.)

On March 14, 2021, Plaintiff filed an informal grievance about the August 28, 2020 incident. (*Id.* at 17.) When he did not receive a response, he filed a first-level grievance on May 5, 2021. (*Id.*) Dreesen and Drummond were notified of Plaintiff's grievances. (*Id.*) On May 6, 2021, Dreesen and Drummond planned to have Plaintiff transferred back to ESP to "retaliate against [him]" for "petitioning the government for [ ] redress." (*Id.*) The

transfer took place on May 19, 2021. (*Id.* at 14.) Plaintiff was taken to intake in a wheelchair and, while in full restraints, was required to get out of the wheelchair to board the bus. (*Id.*) His request to be handcuffed in the front was denied. (*Id.*) During the trip, the driver slammed the brakes, and the bus came to a sudden stop. (*Id.*) Plaintiff hit his head on the back of the seat in from of him, then fell to the floor. (*Id.*) Plaintiff was admitted to the infirmary at ESP upon his arrival. (*Id.*)

On May 23, 2021, Plaintiff sent a kite to Gittere "request[ing] an audience." (*Id.* at 18.) Gittere responded: "What about?" (*Id.*) On June 6, 2021, Hernandez informed Plaintiff that he needed to pay for copies of his grievances. (*Id.*) On August 1, 2021, Plaintiff filed his "final grievance" about the August 28, 2020 incident. (*Id.*) Five days later, Hernandez gave Plaintiff two memoranda issued by Drummond. (*Id.*) Plaintiff asked Hernandez for "clarity," to which she responded that "something bad may happen" if he kept pushing the issue. (*Id.*)

In December 2014, several years before the events described above, the Department of Justice initiated an investigation after receiving complaints from disabled NDOC inmates. (*Id.* at 20.) In June 2016, the Department issued a letter finding the NDOC had violated the ADA. (*Id.* at 21.) On February 10, 2021, Sisolak and Daniels entered into a settlement agreement with the Department. (*Id.*)

### A.    Improperly Joined Claims

Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to a lawsuit when they are against the same defendant. Rule 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different

transactions—should be rejected if filed by a prisoner"). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that inmates pay the required filing fees for their lawsuits and prevent inmates from circumventing the three strikes rule under the PLRA. 28 U.S.C. § 1915(g).

As the Court explained in its prior screening order, the primary claim in this action is the Eighth Amendment claim for deliberate indifference to inmate safety based on the August 28, 2020 incident. (ECF No. 29 at 8.) Like the SAC, the TAC includes several claims that are not properly joined in this action because they are insufficiently related to the August 28, 2020 incident. Specifically, Plaintiff seeks to assert the following claims based on his transport between HDSP and ESP on May 19, 2021: (i) an Eighth Amendment claim for deliberate indifference to inmate safety, (ii) a Fourteenth Amendment claim for denial of access to the courts, (iii) an ADA claim, and (iv) a claim alleging that Sisolak and Daniels breached the February 2021 settlement agreement between the NDOC and the Department of Justice. Because these claims are unrelated to the August 28, 2020 incident, the Court dismisses them without prejudice as improperly joined.

## B.    Deliberate Indifference to Inmate Safety

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must show that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

1   A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

2   participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A

3   supervisor is only liable for constitutional violations of his subordinates if the supervisor

4   participated in or directed the violations, or knew of the violations and failed to act to

5   prevent them. There is no respondeat superior liability under [§] 1983." *Id.*; *see also Iqbal*,

6   556 U.S. at 676 (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and §

7   1983 suits, a plaintiff must plead that each Government-official defendant, through the

8   official's own individual actions, has violated the Constitution").

9   "A showing that a supervisor acted, or failed to act, in a manner that was

10  deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to

11  demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652

12  F.3d 1202, 1206-07 (9th Cir. 2011). "Thus, when a supervisor is found liable based on

13  deliberate indifference, the supervisor is being held liable for his or her own culpable

14  action or inaction, not held vicariously liable for the culpable action or inaction of his or

15  her subordinates." *Id.* at 1207. As such, "a plaintiff may state a claim against a supervisor

16  for deliberate indifference based upon the supervisor's knowledge of and acquiescence

17  in unconstitutional conduct by his or her subordinates." *Id.*

18  Plaintiff states a colorable Eighth Amendment claim against Cole and Boyd for

19  deliberate indifference to a serious threat to inmate safety. Plaintiff alleges that, on the

20  morning of August 28, 2020, Cole was opening cell doors to allow inmates to go to the

21  yard. Plaintiff had made Cole aware that he would not be going to the yard. Nevertheless,

22  his cell door was opened after an inmate, who was standing in front of the cell, made a

23  gesture to Cole. Plaintiff alleges he realized the inmate had a weapon and alerted Cole

24  and Boyd for aid. They allegedly responded by laughing and cheering and did not

25  intervene until after Plaintiff was injured. Accepting the allegations as true, they raise a

26  plausible inference that Cole was deliberately indifferent to the serious threat to Plaintiff's

27  safety posed by the attacking inmate both immediately before and during the attack. The

28  allegations also raise a plausible inference that Boyd was deliberately indifferent to a

serious threat to Plaintiff's safety during the attack. Thus, the Court will permit this claim to proceed against Cole and Boyd.

For reasons the Court explained in its prior screening order, however, Plaintiff fails to state a colorable claim against any other Defendant for deliberate indifference to inmate safety. (ECF No. 29 at 11-12.) Like the SAC, the TAC fails to plausibly allege that any of the remaining Defendants played a role in—or were even aware of—the August 28, 2020 incident. The TAC also fails to plead facts supporting the conclusory assertion that multiple Defendants were deliberately indifferent to "threats against Plaintiff['s] life" since 2014. (ECF No. 27 at 23.) Accordingly, the Eighth Amendment claim for deliberate indifference to a serious threat to inmate safety will proceed only against Cole and Boyd.

### C.    Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer*, 511 U.S. at 828. "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of

1   medical treatment evinces deliberate indifference, the prisoner must show that the delay

2   led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404,

3   407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to

4   state a claim of deliberate medical indifference").

5        A difference of opinion between medical professionals concerning the appropriate

6   course of treatment generally does not amount to deliberate indifference to serious

7   medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "[a]

8   difference of opinion between a prisoner-patient and prison medical authorities regarding

9   treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare

10  Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion

11  amounted to deliberate indifference, the prisoner "must show that the course of treatment

12  the doctors chose was medically unacceptable under the circumstances" and "that they

13  chose this course in conscious disregard of an excessive risk to [the prisoner's] health."

14  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

15       However, "a complaint that a physician has been negligent in diagnosing or

16  treating a medical condition does not state a valid claim of medical mistreatment under

17  the Eighth Amendment. Medical malpractice does not become a constitutional violation

18  merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Even gross negligence

19  is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi

20  v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

21       Plaintiff fails to state a colorable claim for deliberate indifference to serious medical

22  needs. Plaintiff identifies serious medical needs stemming from the injuries he sustained

23  during the August 28, 2020 incident. Plaintiff fails to plausibly allege, however, that any

24  Defendant was deliberately indifferent to his serious medical needs. Plaintiff's allegations

25  against Dr. Bryan are insufficient for the reasons explained in the Court's prior screening

26  order. (ECF No. 29 at 14-15.) First, although Plaintiff alleges that Dr. Bryan declined to

27  send him to physical therapy, he fails to plead facts suggesting a serious medical need

28  to be *sent* to physical therapy. Nor does Plaintiff allege facts showing that he suffered

additional injuries or pain because he did not receive physical therapy. Second, Plaintiff's allegation that Dr. Bryan prescribed him Baclofen is insufficient to state a claim, because Plaintiff does not allege he suffered any injury as a result of this decision, and he does not plead that Baclofen was medically unacceptable in these circumstances. Although Plaintiff alleges that he subsequently learned Baclofen should not be given to stroke patients, this allegation reflects a mere difference of opinion concerning medical treatment. Third, Plaintiff fails to state a claim based on Dr. Bryan's decision to discharge him from the infirmary. Again, Plaintiff alleges no facts suggesting that he suffered any injury from the discharge, and he does not plead that Dr. Bryan's decision was medically unacceptable.

The TAC includes the additional allegation that, following his discharge from the infirmary, Plaintiff informed Dr. Bryan that he was "still having dizziness, blurry vision, blackouts, [and] headaches with severe pain." (ECF No. 27 at 13.) Although Dr. Bryan responded that he "would prescribe [Plaintiff] something," he allegedly failed to do so. (*Id.*) Furthermore, Plaintiff claims that Dr. Bryan failed to schedule an appointment with his neurosurgeon. These allegations do not state a colorable claim. At most, they support an inference that Dr. Bryan was negligent, which is insufficient to sustain an Eighth Amendment claim. *Toguchi*, 391 F.3d at 1060.

Finally, to the extent that Plaintiff seeks to hold any other Defendant liable for deliberate indifference to serious medical needs, such a claim fails for the reasons set forth in the Court's prior screening order. (ECF No. 29 at 15-16.) The TAC includes no factual allegations suggesting that any of the remaining Defendants participated in—or were aware of—an unconstitutional denial of medical care. Accordingly, the Court dismisses without prejudice the Eighth Amendment claim for deliberate indifference to serious medical needs.

### D.    First Amendment Retaliation

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

"Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68. For First Amendment retaliation purposes, "protected conduct" does not need to be "tethered to the speech or associational freedoms secured by that Bill of Rights provision." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013). Instead, "a claim for retaliation can be based upon the theory that the government imposed a burden on the plaintiff, more generally, because he exercise[d] a constitutional right." *Id.* (internal quotation marks omitted). In addition, total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Rhodes*, 408 F.3d at 568-69.

"[T]he denial of a grievance or a disciplinary appeal without more does not meet the requisite threshold of adversity. Such actions are considered *de minimis*; they would not deter an inmate of ordinary firmness from partaking in future First Amendment activities." *Almy v. R. Bannister*, No. 3:13-CV-00645-MMD-VPC, 2016 WL 11448946, at *6 (D. Nev. May 23, 2016), *adopted by* 2016 WL 5419416 (D. Nev. Sept. 27, 2016).

Plaintiff states a colorable retaliation claim against Dreesen and Drummond. Plaintiff alleges that on May 5, 2021, he engaged in protected activity by filing a first-level grievance about the August 28, 2020 incident. Plaintiff had previously filed an informal grievance about the incident but had not received a response. Due to the filing of the first-level grievance, Dreesen and Drummond became aware of Plaintiff's grievances. One

day after the first-level grievance was filed, Dreesen and Drummond allegedly made plans to have Plaintiff transferred back to ESP to "retaliate against [him]" for "petitioning the government for [ ] redress." (ECF No. 27 at 17.) The planned transfer took place two weeks later. Liberally construed, these allegations are sufficient to plead that Dreesen and Drummond took the adverse action of initiating a prison transfer in retaliation for Plaintiff's protected activity of filing grievances. *See Belmonte v. Palomares*, No. 19-cv-00163, 2020 WL 5878286, at *3 (E.D. Cal. Oct. 2, 2020) ("A prison transfer may . . . constitute an adverse action." (collecting cases)). Thus, the retaliation claim will proceed against Dreesen and Drummond.

Plaintiff also seeks to assert a retaliation claim based on (i) Hernandez's decision to require Plaintiff to pay for copies of his grievances, and (ii) Hernandez's giving Plaintiff two memoranda issued by Drummond. As the Court explained in its prior screening order, these allegations fail to state a colorable retaliation claim because they do not suggest that Plaintiff suffered an adverse action. (ECF No. 29 at 16-17.) The TAC does not support a reasonable inference that being required to pay for copies of grievances would deter an inmate of ordinary firmness from engaging in protected activity. Moreover, Plaintiff's allegation regarding the two memoranda suggests, at most, that his grievances were denied. A denial of a grievance, standing alone, does not qualify as an adverse action. Accordingly, the retaliation claim will proceed only against Dreesen and Drummond based on their alleged decision to transfer him to ESP for filing grievances.

## E.    Denial of Access to the Courts and Grievance Procedures

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered "actual injury." *Id.* at 349. The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. "The right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S.

1   223, 230 n.2 (2001). "[T]he object of the denial-of-access suit, and the justification for

2   recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for

3   relief once the frustrating condition has been removed." *Christopher v. Harbury*, 536 U.S.

4   403, 413 (2002).

5          Plaintiff fails to state a colorable claim for denial of access to the courts or the

6   grievance process. Plaintiff alleges that Cole filed a "fictitious" disciplinary charge against

7   him for murder based on the August 28, 2020 incident. As the Court explained in its prior

8   screening order, Plaintiff fails to allege facts suggesting that the issuance of the charge

9   prevented him from filing a grievance or a court action concerning the August 28, 2020

10  incident. (ECF No. 29 at 17-18.) Plaintiff also fails to state a colorable denial-of-access

11  claim against any of the remaining Defendants. To the extent that Plaintiff seeks to impose

12  supervisory liability on Daniels, Williams, Gittere, Reubart, Drummond, or the Doe

13  Defendants for their alleged role in the disciplinary charge, such a claim fails because

14  Plaintiff does not state an underlying denial-of-access claim against Cole. (*Id.* at 18.)

15  Moreover, Plaintiff fails to allege any facts suggesting that any of these Defendants

16  participated in or directed the alleged violations, or knew of the alleged violations and

17  failed to act to prevent them. Accordingly, the Court dismisses the denial-of-access claim

18  without prejudice.[2]

19

20

21

22

---

23          [2] Because Plaintiff fails to state any colorable claims against Sisolak, Cegavske,
    Ford, Daniels, Williams, Minev, Gittere, Reubart, Hernandez, Johnson, or Dr. Bryan, the
24  Court dismisses them from the entirety of this action without prejudice. The Court also
    dismisses the State of Nevada from the entirety of this action with prejudice. Eleventh
25  Amendment sovereign immunity bars Plaintiff from raising § 1983 claims against the State
    of Nevada. *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th
26  Cir. 1991) (holding that "[t]he Eleventh Amendment prohibits federal courts from hearing
    suits brought against an unconsenting state" and that "[t]he Eleventh Amendment's
27  jurisdictional bar covers suits naming state agencies and departments as defendants, and
    applies whether the relief sought is legal or equitable in nature"); *see also Will v. Michigan*
28  *Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding that states are not persons for
    purposes of § 1983); *see* NRS § 41.031(3) (stating that the State of Nevada does not
    waive its Eleventh Amendment immunity).

1    **IV.    PLAINTIFF'S MOTIONS**

2         **A.    Motion for Temporary Restraining Order and/or Preliminary Injunction**

3         Plaintiff has moved for the entry of a temporary restraining order and/or a

4    preliminary injunction. (ECF Nos. 30, 31.) Plaintiff contends that preliminary injunctive

5    relief is appropriate because prison officials have denied him adequate treatment for the

6    injuries he sustained during the August 28, 2020 incident. (ECF No. 30 at 3.)

7         Injunctive relief, whether temporary or permanent, is an "extraordinary remedy,

8    never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).

9    "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

10   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

11   that the balance of equities tips in his favor, and that an injunction is in the public interest."

12   *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)

13   (quoting *Winter*, 555 U.S. at 20). Furthermore, under the PLRA, preliminary injunctive

14   relief must be "narrowly drawn," must "extend no further than necessary to correct the

15   harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C.

16   § 3626(a)(2).

17        The Court denies Plaintiff's motion for a temporary restraining order and/or a

18   preliminary injunction. First, Plaintiff does not specify the injunctive relief he seeks. In

19   other words, he does not describe the conduct he wishes to enjoin or the actions he

20   wishes Defendants to take. "Plaintiff's failure to specify the injunctive relief that he seeks

21   is fatal to his pursuit of a preliminary injunction and temporary restraining order." *Hughley*

22   *v. Ulloa*, No. 17-cv-8516, 2018 WL 6016130, at *2 (C.D. Cal. July 3, 2018). Second, as

23   part of this order, the Court will refer this case to the Court's Inmate Early Mediation

24   program so that the parties can engage in mediation and attempt to reach a mutually

25   beneficial resolution to this action. Because the parties will have the opportunity to

26   mediate this issue and potentially come to a mutual resolution, preliminary injunctive relief

27   would not be in the public interest at this time.

28

1

**B.    Motion for Class Action**

2   Plaintiff has also filed a "Motion for Class Action" in which he seeks to certify this

3   case as a class action. (ECF No. 13.) The Court denies this motion. Plaintiff is not an

4   attorney. Although *pro se* litigants have the right to conduct their own cases personally,

5   the law does not permit them to represent anyone other than themselves. *Cato v. United*

6   *Sta*tes, 70 F.3d 1103, 1105 n.1 (9th Cir. 1995); *C.E. Pope Equity Trust v. United States*,

7   818 F.2d 696, 697 (9th Cir. 1987). Thus, Plaintiff cannot prosecute this case as a class

8   action. *See Williams v. United States*, No. 18-cv-01737, 2019 WL 1460862, at *2 (D. Nev.

9   Apr. 2, 2019) ("Given that Plaintiff is a *pro se* litigant and does not have the authority to

10   represent the other plaintiffs, this case cannot proceed as a class action.").

11

**C.    Motion to Consolidate Cases**

12   Plaintiff has moved to consolidate this case with two other actions he filed in this

13   district—*Harris v. Daniels*, 2:22-cv-00293-CDS-NJK and *Harris v. Dreesen*, 2:22-cv-

14   01231-JAD-EJY. (ECF No. 37.) Plaintiff contends that consolidation is appropriate

15   because these three cases raise "the same or similar claims against the same parties,

16   involving the same property, transaction, or event." (*Id.* at 2.)

17   Federal Rule of Civil Procedure 42 governs consolidation and provides: "If actions

18   before the court involve a common question of law or fact, the court may: (1) join for

19   hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3)

20   issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Under

21   Local Rule 42-1(b), a party may file a motion to consolidate when "it reasonably appears

22   the actions involve common questions of law or fact and consolidation would aid in the

23   efficient and economic disposition of an action."

24   The Court denies Plaintiff's request for consolidation. The surviving claims in this

25   case are (i) an Eighth Amendment claim for deliberate indifference to inmate safety based

26   on the August 28, 2020 incident, and (ii) a First Amendment retaliation claim based on

27   the decision to transfer Plaintiff to ESP. These claims do not share common questions of

28   law or fact with the surviving claim in *Harris v. Dreesen*—a First Amendment retaliation

1    claim alleging that two prison officials "intentionally destroyed [Plaintiff's] legal books and

2    required him to pay about $50 to send his other personal property to HDSP." 2:22-cv-

3    01231-JAD-EJY, ECF No. 8 at 11. Nor do the claims in the present action share common

4    questions of law or fact with the surviving claim in *Harris v. Daniels*—an Eighth

5    Amendment medical-indifference claim based on prison officials' alleged decision to

6    ignore an outside provider's "medical treatment plan" for Plaintiff's "traumatic brain injury,

7    headaches, syncope, and chronic and residual right-sided spasticity." 2:22-cv-00293-

8    CDS-NJK, ECF No. 14 at 7-8. Accordingly, there is no basis to consolidate the present

9    action with Plaintiff's other two cases.

10   **V.    CONCLUSION**

11         It is therefore ordered that a decision on the application to proceed *in forma*

12   *pauperis* (ECF No. 25) is deferred.

13         It is further ordered that the TAC (ECF No. 27) is the operative complaint in this

14   action and that the Clerk of the Court file it as a separate entry on the docket.

15         It is further ordered that Defendant the State of Nevada is dismissed from the

16   entirety of this action with prejudice.

17         It is further ordered that Defendants Sisolak, Cegavske, Ford, Daniels, Williams,

18   Minev, Gittere, Reubart, Hernandez, Johnson, and Dr. Bryan are dismissed from the

19   entirety of this action without prejudice.

20         It is further ordered that the following claims based on Plaintiff's transport between

21   HDSP and ESP on May 19, 2021 are dismissed without prejudice and without leave to

22   amend as improperly joined: (i) the Eighth Amendment claim for deliberate indifference

23   to inmate safety, (ii) the Fourteenth Amendment claim for denial of access to the courts,

24   (iii) the ADA claim, and (iv) the claim alleging a breach of the February 2021 settlement

25   agreement between the NDOC and the Department of Justice.

26         It is further ordered that the Eighth Amendment claim for deliberate indifference to

27   serious medical needs is dismissed without prejudice.

28

It is further ordered that the Fourteenth Amendment claim for denial of access to the courts and the grievance process is dismissed without prejudice.

It is further ordered that the Eighth Amendment claim for deliberate indifference to inmate safety will proceed against Defendants Cole and Boyd.

It is further ordered that the First Amendment retaliation claim will proceed against Defendants Dreesen and Drummond.

It is further ordered that Plaintiff's "Motion for Class Action" (ECF No. 13) is denied.

It is further ordered that Plaintiff's motions for a temporary restraining order and/or a preliminary injunction (ECF Nos. 30, 31) are denied.

It is further ordered that Plaintiff's motion for an extension of time (ECF No. 35) is denied as moot.

It is further ordered that Plaintiff's objection (ECF No. 36) to Judge Baldwin's August 19, 2022 order is overruled as moot.

It is further ordered that Plaintiff's motion to consolidate (ECF No. 37) is denied.

It is further ordered that, given the nature of the claims that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendants an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the

1    filing of an answer, the Court will issue a scheduling order setting discovery and
2    dispositive motion deadlines.

3        It is further ordered that "settlement" may or may not include payment of money
4    damages. It also may or may not include an agreement to resolve Plaintiff's issues
5    differently. A compromise agreement is one in which neither party is completely satisfied
6    with the result, but both have given something up and both have obtained something in
7    return.

8        It is further ordered that if the case does not settle, Plaintiff will be required to pay
9    the full $350.00 statutory filing fee for a civil action. This fee cannot be waived, and the
10   fee cannot be refunded once the Court enters an order granting Plaintiff's application to
11   proceed *in forma pauperis*. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will
12   be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff
13   is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil
14   action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

15       It is further ordered that if any party seeks to have this case excluded from the
16   inmate mediation program, that party must file a "motion to exclude case from mediation"
17   no later than 21 days prior to the date set for mediation. The responding party will have
18   seven days to file a response. No reply may be filed. Thereafter, the Court will issue an
19   order, set the matter for hearing, or both.

20       It is further ordered that if Plaintiff needs an interpreter to participate in the
21   mediation program, Plaintiff will file a notice identifying the interpretation language and
22   the need for the interpreter within 30 days from the date of this order.

23       The Clerk of the Court is further directed to add the Nevada Department of
24   Corrections to the docket as an Interested Party and electronically serve a copy of this
25   order and a copy of Plaintiff's TAC (ECF No. 27) on the Office of the Attorney General of
26   the State of Nevada by adding the Attorney General of the State of Nevada to the
27   interested party on the docket. This does not indicate acceptance of service.

28

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

DATED THIS 27th day of December 2022.

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

AMMAR HARRIS,

                                        Plaintiff.

            v.

ELY STATE PRISON STAFF, *et al.*,

                                        Defendants.

Case No. 3:21-cv-00380-RCJ-CLB

REPORT OF ATTORNEY GENERAL
RE: RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

## REPORT FORM
[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

        _____   A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

        _____   A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

        _____   No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (*If this box is*

21

*checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                           Print                                      Signature

Address: _____          Phone:

_____          _____

                                                          Email:
                                                          _____