Ammar Harris # 1116547
High Desert State Prison

United States District Court
District of Nevada

| | |
|---|---|
| Ammar Harris,<br>　　　　Plaintiff, | 3:21-CV-00380 |
| v. | Hon. Robert C. Jones |
| Nevada Dep't. of Corr., et al.,<br>　　　　Defendants. | Mag. Carla Baldwin |

JURY TRIAL DEMANDED

FOURTH AMENDED VERIFIED COMPLAINT FOR DECLARATORY,
INJUNCTION AND DAMAGES

I. Introduction

i.) This is a 42 USCS § 1983, 1985 and 18 USCS ?? 242 action filed by Plaintiff, stating unconstitutional conditions of confinement regarding failure to provide reasonable safety and discrimination, seeking declaratory, injunction and damages pursuant to 42 USCS § 12101 et seq (ADA) and 29 USCS § 794 et seq (RA) on his own behalf and those similarly situated.

2.) Defendants actions detailed herein, deny reasonable safety, inflict unnecessary and wanton pain, discriminate against reasonable accommodations, which put Plaintiff and the class at substantial risk of physical injury and discrimination, all in violation of Plaintiff's rights under the Eighth and Fourteenth Amendment to the U.S.C. Plaintiff seek declaratory and injunction relief to remedy these ongoing violations of rights for himself as well as for a class of those similarly situated.

II. Jurisdiction and Venue

3.) This action arises under 42 USCS §§ 1983, 1988, 18 USCS § 242, 42 USCS § 12101 et seq, 29 USCS § 794 et seq to redress the deprivations under color of state law of rights, privileges and immunities secured by the Constitution of the U.S.C. The rights sought to be redressed are guaranteed by the First, Eighth and Fourteenth Amendment to the U.S.C. Jurisdiction is founded on 28 USCS § 1331, 1343 and the aforementioned statutory and constitutional provisions.

4.) Venue is proper in the District of Nevada pursuant to 28 USCS § 1391.

III. Parties

5.) Plaintiff Ammar "Harris" at all times relevant was confined by the Nevada Department of Corrections, "NDOC", at Ely State Prison, "ESP" and High Desert State Prison, "HDSP".

6.) Defendant Steven "Sisolak", is the Governor of the State of Nevada, as Governor, Sisolak is the President of the "board" of Prison Commissioners, the state governmental body responsible for oversight of all prisons in Nevada. Sisolak is herein sued in his official capacity.

7.) Defendant Barbara "Cegavske", is the Secretary of the State of Nevada, as Secretary, Cegavske is the Secretary of the Board, Cegavske is herein sued in her official capacity.

8.) Defendant "Zack "Conine", is the Treasurer of the State of Nevada, as Treasurer, Conine is the Treasurer of the Board, Conine is herein sued in his official capacity.

9.) Defendant Charles "Daniels", is the Director of the NDOC, as Director, Daniels is responsible for NDOC's daily functioning and administration. He is also responsible for establishing policies and procedures. Daniels is herein sued in his official and individual capacity.

10.) Defendant Brian "Williams" Sr., is the Deputy Director of the NDOC. Williams is herein sued in his official and individual capacity.

11.) Defendant William "Gittere", is the Warden of ESP, as Warden, Gittere is responsible for the daily functioning and administration of ESP, including the safe, secure and humane treatment of all incarcerated persons there. Gittere is herein sued in his official and individual capacity.

3 of 27

12.) Defendant William "Reubart", is the Associate Warden of Operations of ESP. Reubart is herein sued in his official and individual capacity.

13.) Defendant David "Drummond", is the Associate Warden of programs of ESP. Drummond is herein sued in his official and individual capacity.

14.) Defendant Danny "Cole", is a security Officer of ESP. Cole is herein sued in his official and individual capacity.

15.) Defendant Mr. "Boyd", is a Security Officer of ESP. Boyd is herein sued in his official and individual capacity.

16.) Defendant Mr. "Henry", is a Security Officer of ESP. Henry is herein sued in his official and individual capacity.

17.) Defendant Calvin "Johnson", is the Warden of HDSP, as Warden, Johnson is responsible for the daily functioning and administration of HDSP, including the safe, secure and humane treatment of all incarcerated persons there. Johnson is sued in his official and individual capacity.

18.) Defendant Frank "Dreesen", is the Associate Warden of Programs of HDSP, Dreesen is herein sued in his official and individual capacity.

19.) Defendant "Doe", is a Security or Transportation Officer and/or Administrator of ESP or HDSP. Doe is herein sued in his official and individual capacity

20.) Defendant Siedlak, Ceganske, Corine, Darnik, Williams, Cittere, Reubart, Drummond, Cole, Boyd, Henry, Johnson, Dreesen, Doe, and each of them at all times mentioned herein was or is the agent, servant and employee of each remaining defendants, acting under Color of State Law or acting within the course, scope and authority of said agency, service and employment.

21.) The true identities of Doe, are currently unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff, based upon knowledge and information, reasonably believe and therefore allege that each of the Defendants designated herein as Doe may be in some manner responsible for events and happenings herein referred to, that Plaintiff will ask for leave to amend this complaint to insert the true names of said Defendants when the same have been ascertained by Plaintiff together with the appropriate facts, to join such Defendants as and when they become known in this action or their true capacities.

IV. Exhaustion of Available Remedies

22.) Plaintiff exhausted his available administrative remedies before filing this complaint.

V. Statement of Facts

I. Cole, Boyd, Henry, Doe Failed to Provide Reasonable Safety and Discriminated Against Plaintiff Causing Significant Physical Injury and/or Unnecessary and Wanton Infliction of Pain, Depriving Him of Equal Protection Under the Law.

23.) ESP is a maximum security prison designed to house over 1,000 incarcerated persons, including Death Row.

24.) On or about August 24th, 2020 while at ESP, at Approx. 9am Cole asked Harris if he were attending yard, which was declined. Approx 8:30am Cole started opening multiple doors in the Death Row unit.

25.) An incarcerated person stood at Harris door attempting to gain entry, as he stood there, a gesture was made to Cole and Boyd, Harris door was intentionally opened for the incarcerated person to attack him.

26.) Harris noticed the weapon in the incarcerated person hand, alerted Cole, Boyd and Henry for aid, but they merely laughed and cheered on, he tried to defend himself to the best of his ability, was unsuccessful, when Does came to intervene, he was laying on the floor bleeding from stab wound to the head, experiencing the unnecessary and wanton infliction of pain.

27.) Harris was given some treatment by Nurse Jones and then transferred by EMS to William Bee Ririe Hospital, his injuries were serious which triggered A.R. 404.01 (Emergency Situation Procedures) and A.R. 420.02 (Death or Serious Injury Reporting Requirements) that notified Daniels, Williams, Gittere and Reubart. ECF No. 27 at 91-115, 276.

28.) On or about September 4th, 2020 Harris awoke at UMC Trauma, was informed by Dr. Anson he was lucky to be alive because of the injuries sustained from the assault, had succumb twice and had to be revived, the weapon penetrated his brain resulting to Intra-Cranial Hemorrhage in the left Frontal Lobe, an acute Fracture in the left parietal bone and lumbar spine damage.

29.) Harris could not articulate himself, had suffered a stroke and could not eat, Dr. Areson had to order a Gastrostomy Tube placed for him to take in nutrients, he was diagnosed with Acquired Aphrasia, Ataxia, Hemianopsia, Apraxia and Hemiparesis.

30.) On or about September 14th, 2020 Harris was transferred to Summerlin Hospital for Speech Pathology, Pain Management, Physical and Occupational Therapy, he watched a news report on TV regarding the events that transpired on August 24th, 2020 involving himself, which deprived him of liberty interest in freedom from bodily injuries.

31.) On or about October 16th, 2020 Harris was discard from Summerlin Hospital and taken to HDSP, wheelchaired to the infirmary by C/o Lopez.

32.) Cole, Boyd, Henry Knew of and disregarded an excessive risk to Harris safety by opening his door while an incarcerated person with a weapon stood before it or by failing to follow policies, rules and regulations regarding strip searching incarcerated persons before conducting yard and laughing and cheering while Harris was being attacked

33.) Cole, Boyd, Henry failed to take reasonable measures to abate Harris attack, their actions are not adequate given the known risk or if they give inconsequential logistical concerns that might be no more than matters of convenience higher priority than Harris needs for reasonable safety.

34.) Cole, Boyd, Henry actions essentially orchestrated Harris attack, they were aware by prior incidents that incarcerated persons manufacture weapon from scrap metal and intentionally did not conduct strip searches, that serious violence has become almost a feature of institutional life, or Harris received arbitrary and irrational treatment or that all persons similarly situated should be treated alike.

35.) Harris has endured concussion, migraine headaches, dizziness, blurred vision, weakness, back pains, body aches, weight loss, depression, physical and mental suffering, loss of sleep, suicidal ideations, anxiety and emotional distress, fear, paranoia and stress after his attack.

36.) Cole, Boyd, Henry deprived Harris of the minimal civilized measure of life's necessities, their conduct were repugnant to the conscience of mankind, causing him permanent neurological disability, requiring him to utilize a wheelchair, which pose an unreasonable risk of serious damage to his future safety or health.

37.) Cole, Boyd, Henry follow custom or policy of opening incarcerated persons doors without conducting strip searches or failing to follow policies, rules and regulations which require them to do strip searches, or created policy or custom orchestrating attacks.

38.) On or about May 19th, 2021 Harris was wheelchaired to intake and forced to forego it to board transportation bus to ESP, despite his visible disabilities. He requested for reasonable accommodation to be taken by Medical Van, Doe replied "It is not apart of the transportation order", the request was denied.

39.) Harris was placed in Five point restraints despite the severe pain caused and his ability to only be able to utilize the left side of his body, he asked Doe for reasonable accommodation based on his Traumatic Brain Injury or stroke, to be handcuffed in the front, the request was denied; Does had to help Harris board the bus, that all persons similarly situated should be treated alike. Harris v. F.Dreesen, et al., 2:22-cv-01231-JAD-EJY, ECF No. 4-2 through 4-5.

40.) In route Doe slammed the breaks, which caused the bus to come to an abrupt stop, because of lack of seat belts, Harris flew forward hitting his head on the seat infront of him, falling hard on his right side, reaggravating his injuries causing severe pain and suffering, upon arrival to E8P, Harris had to immediately be admitted into the infirmary because of injuries sustained.

41.) Doe knew of and disregarded an excessive risk to Harris safety by denying his request for reasonable accomodation to be transported by medical van based on his disability, the discrimination was purposeful or intentional and not related to legitimate prison interest.

42.) Doe failed to take reasonable measures to abate Harris unnecessary and wanton infliction of pain, this actions are not adequate given the known risk or if he give logistical concerns that might be no more than matters of convenience higher priority than Harris needs for reasonable safety.

43.) Cole, Boyd, Henry, Doe failed to provide reasonable safety or neglected their statutory responsibilities resulting to Harris significant physical injury or unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris needs for reasonable safety or violated clearly established statutory or constitutional rights of which a reasonable person would have known.

II. Cole, Drummond, Dreesen Retaliated Against Plaintiff for Exercising his Constitutional Rights, Causing Unnecessary and Wanton Infliction of Pain and/or Depriving him of Equal Protection Under the Law.

44.) Harris hereby incorporates all his supporting facts to Count I of this complaint, as if fully stated herein.

45.) On August 24th, 2020 Cole filed a fictitous disciplinary charge of misfider against Harris in order to cover up an Eighth Amendment Violation regarding the true matters that took place on August 24th, 2020. ECF No. 27 at 147, ECF No. 41 at 147.

46.) Cole actions were to chill Harris from ordinary firmness in exercising his constitutional rights, Cole actions is not reasonably related to a legitimate penological goal or interest.

47.) On March 14th, 2021 Harris filed a grievance about the events on August 24th, 2020. ECF No. 27 at 204-207; ECF No. 41 at 204-207.

48.) On May 5th, 2021 Harris proceeded to the next grievance level about the events on August 24th, 2020 pursuant to A.R. 740.01 et seq which notified Drummond and Dreesen. ECF No. 27 at 143-226; ECF No. 41 at 143-226

49.) Upon information and belief, on or about May 6th, 2021 Dreesen and Drummond was or is joined knowly of unknowingly in a plot, plan or common scheme and/or a conspiracy to retaliate against Harris by having him transferred to ESP, to prevent him from exercising his constitutional rights

50.) Cole, Drummond, Dreesen Retaliated against Harris by filing a fictitous disciplinary charge and/or having him transferred or from exercising his constitutional rights and/or neglected their statutory responsibilities resulting to Harris unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris's reasonable safety or violated clearly established statutory or constitutional rights of which a reasonable person would have known.

III  Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe Failed to Supervise Causing Violations of Harris Constitutional Rights.

51.) Harris hereby incorporates all his supporting facts to Count I, II of this Complaint, as if fully stated herein.

52.) Harris utilized the Formal Grievance Process pursuant to A.R. 740.01 et seq, which notified Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe.

53.) Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe had a duty to train and supervise Cole, Boyd, Henry, Doe, Drummond, Dreesen to ensure policies, procedures and regulations are followed, Failed to provide reasonable safety or failed to review and investigate if staff error or misconduct was proximate cause, failed to terminate a series of actions that would lead to a constitutional violation, failed to protect Harris from harm despite knowledge he were in danger because of acts by Cole, Boyd, Henry, Doe, Drummond, Dreesen and did not take any action to negate it.

54.) Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe authorized or enabled a pattern or custom of permitting their subordinates to issue fictitous disciplinary charges of murder to cover up Eighth Amendment violations.

55.) Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe authorized the policy or custom of permitting their subordinates to issue fictitous disciplinary charge of murder in order to cover up an Eighth Amendment violation.

56.) Sisolak, Cegavske, Corinne, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe has actual knowledge of all incidents that occured based on logs, memorandums, reports, grievances, communications, authorizations, board of prison commissioner meetings and other gathering methods.

57.) Sisolak, Cegavske, Corinne, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe promulgated, created, implemented or possessed responsibilities for continued operation of issuing fictitous disciplinary charges of murder or participated directly in the violation of Harris's rights or after being informed of the violations of his rights through grievance process, failed to remedy the wrong or created a policy or custom under which his rights were violated or allowed such a policy or custom to continue or were grossly negligent in that they did not adequately supervise their subordinates who violated Harris's rights or exhibited deliberate indifference to the rights of Harris by failing to act on information indicating unconstitutional acts were occurring.

58.) Sisolak, Cegavske, Corinne, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe Failed to Supervise and/or Neglected their statutory responsibilities resulting to Harris's Significant Physical Injury or Unnecessary and wanton Infliction of pain or Depriving him of Equal Protection Under the Law, Conduct who Deliberate Indifference to Harris needs for Reasonable Safety or Violated clearly Established statutory or Constitutional Rights of which a Reasonable Person Would Have Known. See, Harris v. F.Dreesen, et al. 2:22-CV-01231-JAD-EJY, Ecf No. 4-2 through 4-5.

II. NOOC, Sisolak, Daniels, Doe Discriminated Against Harris by Failure to Provide Reasonable Modifications in Violation of ADA and RA.

59.) Harris hereby incorporates all his supporting facts to Count I, II and III of this complaint, as if fully stated herein.

60.) Harris is an individual with a disability that limits major life activities, such as standing, walking, grooming, articulating, seeing, hearing, touching, reading, writing, sleeping, bending, neurological, brain, circulatory, and other daily functions, He is qualified to received reasonable modifications to rules, policies or practices for transportation based on his Traumatic Brain Injury or stroke, but was discriminated against based on his disability and denied.

61.) Upon information and belief, NOOC receives federal assistance.

62.) On or about December 2014, the Department of Justice initiated an investigation after receiving complaints from inmates with disabilities who were then in the custody of the NDOC.

63.) On June 20th, 2016 the Department issued a finding letter, concluding that the NDOC had violated Title II of the ADA.

64.) On February 10th, 2021 NDOC, Sisolak, Daniels entered into a settlement "Agreement" with the Department of Justice (DJ No. 204-46-176[(i)]), their in violation of the following terms or provisions;

[(i)] Christine Kim, Christine.Kim@usdoj.gov
www.ada.gov/nv-doc_settlmt

II. General Relief – 6(a)-9(d)

C. Custody – 21-23.

D. Training – 26.

E. Discipline and Grievances – 30., 31., 34. Ecf No. 29 at 36-81; Ecf No. 41 at 36-69.


65.) NDOC, Sisolak, Daniels, Doe Discriminated Against Harris in violation of ADA and RA and/or violated the Agreement resulting to his unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris's reasonable safety or violated clearly established statutory or constitutional rights of which a reasonable person would have known.


V. Negligence or Gross Negligence and Intentional Infliction of Emotional Distress; State Law Tort.


66.) Harris hereby incorporates all his supporting facts to Count I, II, III and IV of this complaint, as if fully stated herein.


67.) Sisolak, Gagnicke, Comure, Dyriels, Williams, Gittere, Reubart, Drummond, Dreesen, Cole, Boyd, Henry, Johnson, Doe had a duty to provide reasonable safety to Harris, Failed to enforce regulation that would of prevented his injuries or intentionally caused it, their actions or inactions directly and foreseeably caused Harris injuries, while in official capacity, owed him a greater duty of care than he recieved; Harris suffered permanent disability.

68.) Szydlak, Ceganske, Lorrine, Daniels, Williams, Gittere, Leubert, Drummond, Dreesen, Cole, Boyd, Henry, Johnson, Doe conduct was extreme and outrageous with reckless disregard for causing emotional distress. Harris suffered severe anxiety, depression, panic attacks, chest pains, hyperventilation, hypertension, anger, suicidal ideations, nightmares, heighted state of fear, paranoia, with extreme emotional distress, and is actual or proximate causation.

69.) Harris has been forced to incur reasonable attorney fees and cost in pursuit of this action including, but not necessarily limited to those contemplated by 42 USC 4 1988.

VI. Applicable Law

The Constitution requires Defendants to provide "reasonable safety" to Harris. Farmer v. Brennan, 511 U.S. 825, 844, 114 S.Ct. 1970 (1994); Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475 (1993) quoting DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200, 109 S.Ct. 998 (1989)

Harris must show that Defendants displayed "deliberate indifference" or "reckless disregard" for safety by failing to "act reasonably." Farmer, 511 U.S. at 828, 834-47, 114 S.Ct. 1970 (1994), accord, Cake v. Bobbitt, 462 F.2d 646, 651 (4th Cir. 1988)(the Constitution is violated "where defendants know of the danger or where the threat of violence is so substantial or pervasive that their knowledge could be inferred, and yet defendants fail to embrace a policy or take other reasonable steps which may have prevented the harm"); see, Clem v. Lomeli, 566 F.3d 1177, 1161-62 (9th Cir. 2009)(citations omitted)

15 of 27

The Supreme Court has held that Defendants can be found reckless or deliberate indifference if " the official knows of and disregard an excessive risk to inmate safety". Farmer, 511 U.S. at 837.

Defendants must "take reasonable measures to abate it". Farmer, 511 U.S. at 843; see, Clem v. Lomeli, 566 F.3d 1177, 1161-62 (9th Cir. 2009) ( jury instructions that a defendant could be liable only if an " act of the defendant" harmed the plaintiff was erroneous; jury should have been told that failure to act may also support a deliberate indifference finding).

Defendants may still be liable if their actions are "not adequate given the known risk" or if they give " inconsequential logistical concerns that might be no more than matters of convenience." Jones v. City and County of San Francisco, 976 F.Supp. 896, 908-09 (N.D.Cal. 1997) ( Holding correction of many fire safety defiances was a " less than reasonable" response where other serious inadequacies persisted); Coleman v. Wilson, 912 F.Supp. 1282, 1314 ( E.D.Cal. 1995)(" ... Patently ineffective gestures purportedly directed towards remedying objectively unconstitutional conditions do not prove a lack of deliberate indifference, they demonstrate it"), appeal dismissed, 161 F.3d 1009 (9th Cir. 1996); Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1995)( Holding that prison officials own policy goal of five hours a week of recreation was evidence that they knew of the risks of depriving prisoners of exercise, and their failure to comply with it without good reason constituted deliberate indifference).

Defendants may obviously be held liable for Harris assault if they actively permit or encourage it. Curtis v. Jones, 293 F.3d 434, 344-45 (4th Cir. 2002)(defendants were liable and were not entitled to immunity where they "essentially orchestrated the attack"); Fischl v. Armitage, 126 F.3d 58, 56-59 (2d Cir. 1997)(assault made possible by officer's actions is actionable); Pavlick v. Mifflin, 90 F.3d 205, 208-10 (7th Cir. 1996)(affirming damage based on evidence that officer actively aided the assault or at least permitted it by opening the plaintiff's cell while he was asleep).

Defendants were aware "that serious violence has become almost a feature of institutional life." Fisher v. Koehler, 692 F.Supp. 1519, 1561 (S.D.N.Y. 1988), aff'd, 962 F.2d 2 (2d Cir. 1990); see, e.g., Hale v. Tallapoosa County, 50 F.3d 1579, 1543 (11th Cir. 1995)(evidence that inmate-inmate violence "occurred regularly when the jail was overcrowded", as had been the case for two years, and that the violence was severe enough to require medical attention and even hospitalization on occasion, was sufficient to establish a "substantial risk of serious harm")

Harris must demonstrate "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measures of life's necessities". Rhodes v. Chapman, 452 U.S. at 349; accord, Wilson v. Seiter, 501 U.S. at 304

The Ninth Circuit has listed as basic human needs "food, clothing, shelter, medical care and reasonable safety". Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

Defendants created conditions that "pose an unreasonable risk of serious damage to Harris future health". Helling v. McKinney, 509 U.S. 25, 33, 35-36, 113 S.Ct. 2475, 2480-2482 (1993)(citations omitted); see, also Brown v. Plata, 563 U.S. 493, 495, 131 S.Ct. 1910, 1919 (2011)(citations omitted).

The Equal Protection clause of the Fourteenth Amendment guarantees every person in the United States, including those who are incarcerated, "the equal protection of the laws". U.S. Const. amend. XIV.

The Supreme Court noted that a successful equal protection claim must prove that there was purposeful discrimination. McCleskey v. Kemp, 491 U.S. 279, 297, 107 S.Ct. 1756, 1769 (1987).

The Supreme Court found that an equal protection claim can be made by a "class of one". Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074-1075 (2000).

Defendants created an unreasonable risk to Harris's safety in transportation conditions. Brown v. Missouri Dept of Corrections, 353 F.3d 1038, 1040 (8th Cir. 2004) (per curiam) (allegation that transportation officers refused to fasten the seat belt of a restrained prisoner and then drove recklessly stated a deliberate indifference claim).

Harris has a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (4th Cir. 2004)

Unconstitutional retaliation may be remedied by an injunction, even if the practices are not formally part of Defendants' policy, Gomez v. Vernon, 255 F.3d 1118, 1127, 1129-30 (4th Cir. 2001); Pratt v. Rowland, 770 F.Supp. 1399, 1406 (N.D.Cal. 1991), or by an award of damages. Hines v. Gomez, 108 F.3d 265 (4th Cir. 1997) (affirming jury verdict for plaintiff subjected to retaliation for filing grievances)

To support a retaliation claim, adverse action must be sufficient to deter or "chill" a person of "ordinary firmness" in the exercise of constitutional rights. Rhodes, at 559, 566-69 (9th Cir. 2005)

Defendants Filed fake disciplinary charges against Harris. Austin v. Terhune, 367 F.3d 1167, 1170-71 (9th Cir. 2004) (citations omitted), He was never given a hearing and charges were dismissed. Surprenant v. Rivas, 424 F.3d 5, 13-14 (1st Cir. 2005); Freeman v. Rideout, 808 F.2d at 952 (2d Cir. 1986)

The Courts are in agreement that disciplinary charges brought in retaliation for filing grievances, making complaints, pursuing lawsuits, or engaging in other activities protected by the Constitution violate the substantive constitutional right in question. Williston v. Coughlin, 769 F. Supp. 116, 120-21 (W.D.N.Y. 1992) (holding allegation that officers filed fabricated reports to conceal their Eighth Amendment violations stated a claim).

Defendants took the adverse action of initiating a prison transfer in retaliation for Harris's protected activity of filing grievances. See, Belmonte v. Palomares, No. 19-cv-00163, 2020 WL 5974266, at *3 (E.D. Cal. Oct. 2, 2020) ("A prison transfer may... constitute an adverse action." (collecting cases)).

For First Amendment retaliation purposes, "protected conduct" does not need to be "tethered to the speech or associational freedoms secured by that Bill of Rights provision." Blaisdell v. Frappiea, 729 F.3d 1237, 1242 (9th Cir. 2013).

Harris need only show that protected speech was "motivating factor" for retaliation. Hasan v. U.S. Dept of Labor, 400 F.3d 1001, 1006 (7th Cir. 2005)

Harris can submit statements based on personal knowledge that support the claim of retaliatory motive. See, e.g. Mays v. Springborn, 575 F.3d 643, 650 (7th Cir. 2009)( at trial, plaintiff's plausible testimony created a jury question as to retaliatory motive).

Type of evidence that have been found to support retaliation claims, suspicious timing of adverse action made against Harris. Allen v. Thomas, 388 F.3d 1447, 1449-50 (5th Cir. 2004)( confiscation of property shortly after the prisoner sent letters critical of the prison to the mail room).

Defendants may be held liable " if the defendant set in motion a series of events". Agolela v. U.S. Immigration and Customs Enforcement, 2010 WL 3946639, *4 (D.N.J., Jun 27, 2010)( supervisors who "wrote the policy, implemented it, and monitored its progress" could be liable under Iqbal).

Defendants failure to take remedial action may also be evidence of a policy. Gomez v. Vernon, 255 F.3d 1118, 1127 (4th Cir. 2001)(" The Department's failure to investigate or correct constitutional violations supports the district courts findings that there was a policy or custom that led to violation of the inmate's rights.)

The Supreme Court held in Ashcroft v. Iqbal that supervisory officials can only be charged with responsibility for lower officials acts if they were personally involved in them. See, Ashcroft v. Iqbal, 556 U.S. 662, 676-677, 129 S.Ct. 1937, 1948-1949 (2009)

Defendants is liable " only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmates Eighth Amendment rights is sufficient to demonstrate the involvement - and the liability - of that supervisor." Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011)

The Second Circuit discussed in Brandon v. Kinter a supervisor is considered "personally involved" in a constitutional violation if: (1) " participated directly in the alleged constitutional violation"; or (2) " after being informed of the violation...failed to remedy the wrong"; or (3) " created a policy or custom under which"; "or allowed such a policy or custom to continue"; or (4) " grossly negligent"; or (5) " exhibited deliberate indifference to the rights by failing to act on information indicating unconstitutional acts were occurring." See, Brandon v. Kinter, 938 F.3d 21, 36-37 (2d Cir. 2019) (discussing the ways in which supervisor may be found liable under section 1983).

The Ninth Circuit held in Al-Kidd v. Ashcroft that supervisors can be held liable for the actions of their subordinates (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; (4) for conduct that shows a " reckless or callous indifference to the rights of others". Al-Kidd v. Ashcroft, 580 F.3d 949, 964-65 (9th Cir. 2009)

American With Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.S. § 12132.

Remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of Title II of the ADA. 42 U.S.C.S. § 12133.

The ADA only protects against discrimination by a "public entity". 42 U.S.C.S. § 12132. ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C.S § 12131(1)(A)(B)

No otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Federal Executive agency. Rehabilitation Act of 1973, 29 U.S.C.S. § 794(a).

The United States Supreme Court notes in Alexander v. Choate that section 504 requires state and local governments receiving federal aid to provide "meaningful access to the benefit" they offer. Alexander v. Choate, 469 U.S. 287, 301 (1985), superseded by statute on other grounds, 24 C.F.R. § 35.160 - 35.164 (2020), 24 C.F.R. § 42.503(e)-(f) (2020)

All of the operations of a department, agency, special purpose district, or other instrumentality of a state or of a local government; or the entity of such state or local government that distributes such assistance and each such department or agency (and each other state or local government entity) to which the assistance is extended, in the case of assistance to a state or local government. Rehabilitation Act of 1973, <u>29 U.S.C.S. § 794(B)(1)(A)-(B)(2012)</u>

The Ninth Circuit discussed in Thompson v. Davis the requirements for an ADA Title II claim. <u>Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)</u>

Under both the ADA and Section 504, you have a disability if: (1) a physical or mental impairment substantially limits one or more of your major life activities, (2) you have a record of such an impairment, or (3) you are required as having such an impairment. <u>29 U.S.C.S. § 705(20)(B); 42 U.S.C.S § 12102(1)</u>; See, <u>Toyota Motor Mfg. Inc. v. Williams, 534 U.S. 184, 198 (2002)</u>

The United States Supreme Court stated in United States v. Georgia that "its quite plausible that the alleged deliberate refusal of prison officials to accommodate ... disability related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted "exclusion from participation in or ... denial of the benefits of the prison's services, programs, or activities."" See, e.g., <u>United States v. Georgia, 546 U.S 151, 157 (2006)</u>

The Ninth Circuit ruled that Section 504 applies to state institutions that receive Federal Funding. <u>Bonner v. Lewis, 457 F.2d 659, 562-565 (9th Cir. 1988)</u>

The Supreme Court allowed in Hudson v. McMillian the claim to go forward even where there was no significant injury or need for medical attention. Hudson v. McMillian, 503 U.S. 1, 10 (1992).

The Supreme Court held in Braden v. Plata that unreasonable risks to Harris's health may violate the Eighth Amendment even if you have not been harmed yet. See, Braden v. Plata, 563 U.S. 493, 495 (2011).

VII. Relief Requested.

A. Issue a Declaratory Judgment stating that;

1.) That Cole, Boyd, Henry, Dee Failed to provide reasonable safety to Harris causing significant physical injury or unnecessary and wanton infliction of pain, in violation of his rights under the Eighth Amendment to the U.S.C.

2.) That Cole, Boyd, Henry, Dee actions or inactions were motivated by reckless indifference to Harris's rights, ill will, a desire to injure, or malice.

3.) That Cole acted by filing fictitious disciplinary charge against Harris to cover up an Eighth Amendment violation, in violation of his rights under the First Amendment to the U.S.C.

4.) That Dreesen, Drummond retaliated by having Harris transferred to ESP from exercising his constitutional rights, causing significant physical injury or unnecessary wanton infliction of pain, in violation of his rights under the First and Eighth Amendment to the U.S.C.

5.) That Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe actions or inactions violated Harris's rights under the First and Eighth Amendment to the U.S.C.

6.) That Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe authorized or follow policy or custom permitting their subordinates to issue fictitious disciplinary charges or murder to cover up Eighth Amendment violations, in violation of Harris's rights under the First Amendment to the U.S.C.

7.) That Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe failed to provide reasonable safety to Harris causing significant physical injury or unnecessary and wanton infliction of pain, in violation of his rights under the Eighth Amendment to the U.S.C.

8.) That NDOC, Sisolak, Daniels, Doe Discriminated against Harris by failure to provide reasonable modification in violation of ADA, RA and Equal Protection under the Fourteenth Amendment to the U.S.C., as well as violation of DOJ's settlement agreement.

9.) That Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Cole, Boyd, Henry, Johnson, Doe failed to provide reasonable safety amounting to Negligence and Intentional Infliction of Emotional Distress under State Law causing extreme emotional distress and physical injury.

   B. Issue an injunction ordering Defendants, or their agents to;

1.) Immediately implementing policy restricting fictitous disciplinary charges of murder without factual evidence for such.

2.) Immediately implementing policy with guidelines regarding retaliation and how to eliminate such behavior.

3.) Immediately enforcement of the Department of Justice's settlement agreement to ensure the protection of individuals with disabilites.

   C. Compensatory, nominal damages in the following amount;

1.) $2,500,000 jointly and severally against NDOC, Sisolak, Cegarske, Corrine, Daniels, Williams, Gittere, Reubart, Drummond, Cole, Boyd, Henry, Johnson, Dreesen, Doe for the physical and emotional injuries sustained as a result of Harris's assault and discrimination.

2.) $75,000 against Cole for fictitous disciplinary charge, for the punishment, including deprivations of liberty and amenity, emotional injury resulting from the denial of due process in connection with Harris's disciplinary proceedings.

3.) $1,000,000 jointly and severally against Daniels, Williams, Gittere, Reubart, Drummond, Cole, Boyd, Henry, Johnson, Dreesen, Doe for the physical and emotional injury resulting from their failure to provide reasonable safety to Harris, and future harm.

   D. Punitive damages in the following amount;

1.) $25,000 each against Daniels, Williams, Gittere, Reubart, Drummond, Cole, Boyd, Henry, Johnson, Dreesen, Doe.

E. Pre-judgment interest

1.) Defendants be required to pay pre-judgment interest of 5% per day, legal cost and expenses, including reasonable provision for Harris attorney fees.

F. Grant such other relief as it may appear that Harris is entitled

VIII. Verification

I, Ammar Harris have read the complaint, on personal knowledge hereby verify that the matters stated herein are true, except as to matters stated upon information and belief, and as to those I believe them to be true, am over the age of 18 years and am competent to testify as to matters stated herein, all papers, pleadings and documents on file herein, declare under penalty of perjury that the foregoing is true and correct. 28 USC 4 1746.

Dated this 14th day of December, 2023.

/s/ Mr. Harris