Ammar Harris #1116547

High Desert State Prison

United States District Court
District of Nevada

Ammar Harris,                          | 3:21-CV-00380-CLB

        Plaintiff,

v.                                     | Harris Opposition to

Nevada Dep't. of Corr., et al.,        | ECF No. 118

        Defendants.

Comes Now, Harris Opposition to ECF No. 118. This Opposition is made and based upon fundamental fairness, interest of justice, all papers, pleadings and documents on file herein.

Memorandum of Points and Authorities

I. Introduction

On December 14th, 2023 Defendants filed Answer to ECF No. 41. ECF No. 46.

On December 19th, 2023 Harris filed Amended Complaint and Motion for Answer. ECF No. 94, ECF No. 93 at 1 ("as a matter of course").

On January 2nd, 2024 Defendants failed to respond to ECF No. 93, but filed Case Management Report. ECF No. 95 at 4 ("Upon review, it does not appear there may be a viable exhaustion argument in this case.").

- 1 of 26 -

On January 4th, 2024 Harris and Defendants agreed that motion to dismiss was proper regarding ECF No. 94. ECF No. 99 at 2 ("The Court and the parties discuss the filing of a motion to dismiss..").

On January 10th, 2024 This Court issued its Scheduling Order. ECF No. 100.

On January 22nd, 2024 Harris filed Declaration with Exhibits. ECF No. 114 at 14 ("...Dated this 10th day of January, 2024..").

On January 23rd, 2024 This Court stricken evidence. ECF No. 117.

On January 24th, 2024 Defendants filed Motion to dismiss and Summary judgment. ECF No. 114 at 1 ("failed to properly exhaust his available administrative remedies").

On January 30th, 2024 Harris filed Motion for Reconsideration to ECF No. 117. ECF No. 126 at 1-3 ("...Dated this 24th day of January, 2024.").


II. Statement of Disputed Facts


A. Facts in the Fourth Amended Complaint/ Disputed


On August 24th, 2020 while at ESP, at Approx 4am Cole asked Harris if he were attending yard, which was declined. Approx 4:30 Cole started opening multiple doors in the Death Row Unit. ECF No. 94 at 6.


An incarcerated person stood at Harris door attempting to gain entry, as he stood there, a gesture was made to Cole and Boyd, Harris's door was intentionally opened for the incarcerated person to attack him. Id.


Harris noticed the weapon in his hand, alerted Cole, Boyd and Henry for aid, they merely laughed and cheered on, when Does came to intervene, he was laying on the floor bleeding from stab wound to head, experiencing unnecessary and wanton infliction of pain. Id.

Harris was given treatment, then transferred by Ems to William Bee Ririe Hospital, his injuries were serious which triggered A.R 404.01 et seq (Emergency Situation Procedures) and A.R. 420.02 et seq. (Death or Serious Injury Reporting Requirement) that notified Daniels, Williams, Gittere, and Reubart. Id. ; ECF No. 41 at 71-115, 276.

On September 4th, 2020 Harris awoke at UMC Trudman, informed by Dr. Anson he was lucky to be alive, succumb twice, had to be revived, weapon penetrated his brain resulting to Intra-Cranial Hemorrhage in left frontal lobe, an acute fracture in left parietal bone and lumbar spine damage. ECF No. 44 at 6.

On September 14th, 2020 Harris watched news report on TV regarding events that transpired on August 24th, 2020 involving himself, which deprived him of liberty interest in freedom from bodily injuries. Id. at 7

Cole, Boyd, Henry knew of and disregarded an excessive risk to Harris safety by opening his door while person with weapon stood before it or failed to follow policies, rules and regulations regarding strip searching persons before conducting yard, laughing, cheering while Harris was being attacked, failed to take reasonable measures to abate his attack, their actions are not adequate given the known risk or if they give inconsequential logistical concerns that might be no more than matters of convenience higher priority than his needs for reasonable safety, their actions essentially orchestrated Harris attack, they were aware by prior incidents that persons manufacture weapon from scrap metal, intentionally did not conduct strip searches, that serious violence has become almost a feature of institutional life or Harris received arbitrary and irrational treatment or that all persons similarly situated should be treated alike. Id.

Harris has endured concussion, migraine headaches, dizziness, blurred vision, weakness, back pains, body aches, weight loss, depression, physical and mental suffering, loss of sleep, suicidal ideations, anxiety and emotional distress, fear, paranoia and stress after his attack. Id. at 6

Cole, Boyd, Henry deprived Harris of the minimal civilized measures of life's necessities, their conduct were repugnant to the conscience of mankind, causing him permanent neurological disability, requiring him to utilize wheelchair, which pose a unreasonable risk of serious damage to his future safety or health, follow custom or policy of opening persons doors without conducting strip searches or failed to follow policies, rules and regulations which require them to do strip searches or created policy or custom orchestrating attacks. Id.

On May 19th, 2021 Harris was wheelchaired to intake, forced to board bus to ESP, despite visible disabilities, requested reasonable modification to be taken by medical van, was placed in five point restraints despite severe pain cause, asked for reasonable modification to be cuffed in the front, based on T.B.I or stroke was denied, that all persons similarly situation should be treated alike. Id., see, Harris v. Dreesen, et al., No. 2:22-CV-01731-JAD-EJY, ECF No. 4-2 through 4-5.

In route Dee slammed the brakes, bus came to an abrupt stop, lack of seat belts, Harris flew forward hitting his head, reaggravating his injuries causing severe pain and suffering, upon arrival to ESP, he had to immediately be admitted into infirmary. ECF No. 94 at 9.

Doe knew of and disregarded an excessive risk to Harris safety by denying his request for reasonable accommodation to be transported by medical van based on his disability, the discrimination was purposeful or intentional and not related to legitimate prison interest, failed to take reasonable measures to abate Harris unnecessary and wanton infliction of pain, this actions are not adequate given the known risk or if he give logical concerns that might be no more than matters of convenience higher priority than Harris needs for reasonable safety. Id. at 9

Cole, Boyd, Henry, Doe failed to provide reasonable safety or neglected their statutory responsibilities resulting to Harris significant physical injury or unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris needs for reasonable safety or violated clearly established statutory or constitutional rights of which a reasonable person would have known. Id.

On August 28th, 2020 Cole filed fictitious charge of murder against Harris in order to cover up an Eighth Amendment violation. Id. at 10, ECF No. 41 at 147.

Cole actions were to chill Harris from ordinary firmness in exercising his constitutional rights, is not reasonably related to legitimate penological interest. ECF No. 94 at 10.

On March 14th, 2021 Harris filed grievance about August 28th, 2020. Id., ECF No. 41 at 204-207.

On May 5th, 2021 Harris filed first level grievance, which notified Drummond and Dreesen. ECF No. 94 at 10, ECF No. 41 at 143-226

On or about May 6th, 2021 Dreesen and Drummond was or is joined knowingly or unknowingly in plot, plan or common scheme and/or conspiracy to retaliate against Harris by having him transferred to ESP, to prevent him from exercising his constitutional rights. ECF No. 94 at 16.

Cole, Drummond, Dreesen retaliated against Harris by filing fictitious charge and/or having him transferred or from exercising his constitutional rights and/or neglected their statutory responsibilities resulting to his unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris needs for reasonable safety or violated clearly established statutory or constitutional rights of which a reasonable person would have known. Id.

Harris utilized the Grievance Process pursuant to A.R. 740.01 et seq, which notified Sisolak, Cegavske, Corinne, Daniels, Williams, Reubart, Drummond, Dreesen, Johnson, Doe. Id. at 11

Sisolak, Cegavske, Corinne, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe had a duty to train and supervise Cole, Boyd, Henry, Doe, Drummond, Dreesen to ensure policies, procedures and regulations are followed, failed to provide reasonable safety or failed to review and investigate if staff error or misconduct was proximate cause, failed to terminate a series of actions that would lead to a constitutional violation, failed to protect Harris from harm despite knowledge he were in danger because of acts by Cole, Boyd, Henry, Doe, Drummond, Dreesen and did not take any action to negate it. Id.

Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe authorized policy or custom of permitting their subordinates to issue fictitous charge of murder in order to cover up an Eighth Amendment violation. Id.

Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe has actual knowledge of all incidents that occured based on logs, memorandums, reports, grievances, communications, authorizations, board of prison commissioner meetings and other gathering methods, promulgated, created, implemented or possessed responsibilities for continued operation of issuing fictitous charges of murder or participated directly in the violation of Harris rights or after being informed of the violations of his rights through grievance process, failed to remedy the wrong or created a policy or custom under which his rights were violated or allowed such a policy or custom to continue or were grossly negligent in that they did not adequately supervise their subordinates who violated Harris rights or exhibited deliberate indifference to the rights of Harris by failing to act on information indicating unconstitutional acts were occuring. Id. at 12.

Sisolak, Cegavske, Corine, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Johnson, Doe failed to supervise and/or neglected their statutory responsibilities resulting to Harris significant physical injury or unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris needs for reasonable safety or violation clearly established statutory or constitutional rights of which a reasonable person would have known. Id., See, Harris v. Dreesen, et al., No. 7:22-CV-01231-JAD-EJY, ECF No. 4-2 through 4-6.

Harris is an individual with a disability that limits major life activities such as standing, walking, grooming, articulating, seeing, hearing, focusing, reading, writing, sleeping, bending, neurological, brain, circulatory, and other daily functions, he is qualified to received reasonable modifications to rules, policies, or practices for transportation based on his Traumatic Brain Injury or Stroke, was discriminated against based on his disability and denied. Id. at 13.

On December 2014, the Department of Justice initiated an investigation after receiving complaints from persons with disabilities in custody of NDOC, Id.

On June 20th, 2016 the Department issued finding letter, concluding NDOC had violated Title II of the ADA. Id.

On February 11th, 2021 NDOC, Sisolak, Daniels entered into "Agreement" with the Department of Justice, their in violation of the following terms or provisions;

II. General Relief - 9(a)-9(d).
C. Custody - 21-23.
D. Training - 26.
E. Discipline and Grievances - 30, 31, 34. Id. at 13-14, ECF No. 41 at 36-69.

NDOC, Sisolak, Daniels, Doe Discriminated against Harris in violation of ADA and RA and/or violated the Agreement resulting to his unnecessary and wanton infliction of pain or depriving him of equal protection under the law, conduct was deliberate indifference to Harris needs for reasonable safety or violated clearly established statutory or constitutional rights of which a reasonable person would have known. ECF No. 94 at 14.

Sisolak, Cegavske, Corinne, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Cole, Boyd, Henry, Johnson, Doe had a duty to provide reasonable safety to Harris, failed to enforce regulations that would of prevented his injuries or intentionally caused it, their actions or inactions directly and foreseeably caused his injuries, while in official capacity, owed him a greater duty of care than he received, Harris suffered permanent disability. <u>Id.</u> at 14.

Sisolak, Cegavske, Corinne, Daniels, Williams, Gittere, Reubart, Drummond, Dreesen, Cole, Boyd, Henry, Johnson, Doe conduct was extreme and outrageous with reckless disregard for causing emotional distress, Harris suffered severe anxiety, depression, panic attacks, chest pains, hyperventilation, hypertension, anger, suicidal ideations, nightmares, heighted state of fear, paranoia, with extreme emotional distress, is actual or proximate causation. <u>Id.</u> at 15.

B. <u>Grievance 2006-31-18343 / Disputed</u>

Harris exhausted his available administrative remedies. ECF No. 94 at 5 ("... Plaintiff exhausted his available administrative remedies before filing this complaint.").

On April 6th, 2021, May, 17th, 2021 and August 4th, 2021 David Drummond rejected informal, first level and second level because Frank Dreesen withheld documents needed in order to thwart Harris ability to exhaust. ECF No. 41 at 143-226 ("... Drummond ... Grievance 2006.31.18343 ... This grievance has been rejected 3 times .... Your grievance may not be resubmitted and if it is re-submitted, it will be placed in your grievance file without any action ....").

Ammar Harris hereby makes this declaration in support of Disputed Facts;

1.) Defendants ECF No. 114-1 at 1-16 is a fraudulent misrepresentation of my filed grievances, done purposely and intentionally by Janet Traut to destroy or fabricate evidence or cover-up misconduct to deprive me of the means to challenge unlawful conduct in court, which violates Nevada Professional Code of conduct which all practicing attorney's must adhere to.

2.) Defendants must enter all grievances into NOTIS, whether accepted or not, failed to record receipts, transmittals, actions, and responses on all my grievances to NOTIS within three (3) working days of receipt, failed to sign, date and enter the time as noted on DOC 3691, 3093 and 3094, date stamped the day entered into NOTIS ECF No. 114-2 at 3, ECF No. 41 at 143-226.

3.) Defendants failed to automatically allow appeals without interference unless the grievance is granted. ECF No. 114-1 at 3 ("... F. Dreesen, AW... 7/14/2021 ... 2006-31-14343... 1st reject... Informal Level Grievance... This grievance may NOT proceed to the next level per AR 740 due to the following:

Non-grievable issue.
        Parole Board decision?"); ECF No. 114-2 at 6 (" Administrators or employees of the institution shall automatically allow appeals without interference unless the grievance is granted.").

4.) Defendants failed to resolve unsafe conditions of confinement, address the violation of my constitutional, civil or statutory rights. Id. at 6.

5.) Defendants failed to protect me from criminal or prohibited acts committed by Departmental employees and staff or other persons, failed to revise, clarify and implement written Departmental and institutional rules of procedures necessary to prevent further violations, to provide a disabled or physically impaired with reasonable accommodation or reasonable modification. Id.

6.) Defendants failed to provide monetary reimbursement for damage, personal injury, tort or civil rights claims arising out of an act of omission of the Department of Corrections of any of its agents, former officers, employees or contractors. Id.

7.) Defendants failed to review, investigate and respond to my Informal Grievance by the Department Supervisor that has responsibility over the issue that is being grieved or designated person. Id. at 10.

8.) Defendants failed to provide responses to my grievances that were substantial, referencing all policies, procedures, rationale, and/or circumstances in finding for or against me. Id. at 11, ECF No. 41 at 143-226.

9.) I was only able to file a grievance when I regained my mental ability because of my traumatic brain injury, also did not return from the Hospital until October 16th, 2020. ECF No. 118 at 3 ("On October 16th, 2020, Plaintiff was transferred to HDSP and taken to the infirmary in a wheelchair.").

10.) Defendants failed to forward my grievances to the Inspector General. ECF No. 118-2 at 12 ("Grievance alleging staff misconduct pursuant AR 354 .... will be reviewed by the Warden ... will be forwarded to ... Inspector General through NOTIS.").

11.) Defendants failed to review, investigate and respond to my first level Grievance by the warden at the institution where the incident being grieved occurred, even if the warden is the subject of the grievance. Id., ECF No. 41 at 143-226 (grievances).

12.) Defendants failed to review, respond to my second level Grievance by the Deputy Director of operation or the Offender Management Administrator or Mental Health Director. ECF No. 118-2 at 14; ECF No. 41 at 143-226.

13.) Defendants thwarted my attempts of grieving by having me transferred of from taking advantage of the grievance process through machination, misrepresentation, failed to file any admissible evidence.

14.) On May 6th, 2021 Dreesen and Drummond was of is joined knowingly or unknowingly in a plot, plan or common scheme and/or conspiracy to retaliated against me by having him transferred to ESP, to prevent me from exercising my constitutional rights.

15.) I am aware that RJ Smith and C/o Deyro will attempt to provide false testimony to the Court, by asserting that on or about February 24th, 2022 I refused to sign grievances.

16.) NDOC receive federal assistance.

17. I, Ammar Harris on personal knowledge, am over the age of 18 years, am competent to testify to the matters stated herein, as well as all papers, pleadings and documents on file herein, declare under penalty of perjury that the foregoing is true and correct. 28 USC § 1746.

III. Applicable Law

A. Motion to Dismiss

To survive a motion to dismiss, Harris complaint must include "enough facts to state a claim to relief that is plausible on its face", and do so for each element of his claim. Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating a claim "requires a complaint with enough factual matters (taken as true) to suggest" the required element. [quoting Bell Atlantic, 550 U.S. at 576 n.3.] This "does not impose a probability requirement at the pleading stage, but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.").

This Court is required to "accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002). See also Bell Atlantic, 550 U.S. at 555 (2007) (stating that the decisions on such motion to dismiss rest "on the assumption that all the allegations in the complaint are true"); Litney v. 565 Automotive Services, Inc., 432 F.3d 466, 467 (4th Cir. 2005); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982) (12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits).

Dismissal under PLRA screening statutes are reviewed on appeal de novo, at least dismissals for failure to state a claim. Barren v. Harrington, 152 F.3d 1193, 1194 (4th Cir. 1998)

"A document Filed pro se is 'to be liberally construed', and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers". Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007)(citation omitted)(quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976)).

To prevail on Harris claim under the Eighth and Fourteenth Amendments, he must demonstrate "either that prison officials acted with "deliberate indifference' or that their conduct was so reckless as to be tantamount to a desire to inflict harm." Starr v. Baca, 633 F.3d 1191, 1193 (9th Cir. 2011)( quoting Redman v. City of San Diego, 942 F.2d 1435, 1449 (9th Cir. 1991)

Defendants may be held liable as a supervisor under §§ 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 633 F.3d at 1196 ( quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989), "A plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." Id. ( quoting Redman, 942 F.2d at 1447) (internal quotation marks omitted).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1147 ( quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)

"Acquiescence or culpable indifference" may suffice to show that a supervisor "personally played a role in the alleged constitutional violation." Id. (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005); see, Redman v. City of San Diego, 942 F.2d 1435, 1446 (4th Cir. 1991).

Under Federal Rules of Civil Procedure 8(a), Harris has satisfied the requirements to give Defendants "... a short and plain statement of the claim showing that the pleader is entitled to relief...." Starr, 633 F.3d at 1200-1201.

"... State pleading rules tend largely required code of facts, pleadings under which pleaders were required to allege very specifically the factual bases for their claims. By contrast, under the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively. The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts ..." Id. (emphasis supplied).

"In Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed. 2d 1081 (2007) (per curiam), the Tenth Circuit had dismissed an Eighth and Fourteenth Amendment deliberate indifference claim for failure to satisfy Rule 8(a). The Tenth Circuit deemed the allegations of the complaint "conclusory" and dismissed on the pleadings. Id. at 90. The Court emphatically disagreed: "The holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review". Id. ....." Starr, 633 F.3d at 1203 (citation omitted and emphasis added).

"We hold that the Supreme Court's decision in Iqbal did not alter the substantive requirements for supervisory liability claims in an unconstitutional conditions of confinement case under the Eighth and Fourteenth Amendments where deliberate indifference is the applicable standard." Starr v. Baca, 633 F.3d 1191, 1191-1204 (9th Cir. 2011) and cases cited. (citation omitted).

Harris realized that Defendants conceded their argument regarding the ADA and RA, because the holdings in Miranda B. v. Kitzhaber and Pfeiffer v. Columbia River Corr. Inst. would have made any direct attempt futile. Miranda B. v. Kitzhaber, 328 F.3d 1181, 1181-1191 (9th Cir. 2003) and cases cited (citations omitted); Pfeiffer v. Columbia River Corr. Inst., 344 F.3d 791, 791-793 (9th Cir. 2004) (per curiam) and cases cited (citations omitted).

The Supreme Court held that Harris may sue states for money damages under Title II, regarding misconduct which actually violates parts of the Constitution that apply to the states. United States v. Georgia, 546 U.S. 151, 159, 126 S.Ct. 477, 482, 163 L.Ed. 2d 650, 660 (2006); see, ECF No. 45, 63.

Harris may sue Defendants for money damages under Title II when NDOC (1) violates any of the rights that are part of the Fourteenth Amendment and (2) violates Title II. Georgia, 546 U.S. at 159.

Fourteenth Amendment makes most rights in the first eight amend. to the Constitution apply against Defendants. Hustler Magazine v. Falwell, 485 U.S. 46, 50-51 (1988) (freedom of speech); Robinson v. California, 370 U.S. 660, 667 (1962) (cruel and unusual punishment); U.S. Const. amend. XIV, § 1 (equal protection).

Harris stated negligence claim against Defendants under Nevada Law, he must plead true facts to show: (1) the defendant owed him an existing duty of care, (2) the defendant breached that duty, (3) "the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. Foster v. Costco Wholesale Corp., 128 Nev. 7773 (Nev. 2012).

Harris stated intentional infliction of emotional distress claim against Defendants under Nevada Law, he must plead (1) that the defendant's conduct was extreme and outrageous, enacted with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff suffered severe or extreme emotional distress, and (3) actual or proximate causation. Star v. Rabello, 625 P.2d 90, 91-92 (Nev. 1981).

Harris stated 42 USC§ 1988 under Jurisdiction against Defendants, § 1988(a) Applicability of statutory and common law. 42 USC § 1988(a) "... jurisdiction in civil and criminal matters conferred on the district .... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adopted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and change by the constitution and statutes of the state wherein the court having jurisdiction of such civil and criminal cause is held, so far as the same is not inconsistent with the constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party..."); Hesselgesser v. Reilly, 440 F.2d 901, 904 (9th Cir. 1971) (Hamley, J., opinion); Meredith v. State of Arizona, et al., 523 F.2d 481, 481-444 (1975) (Dittiwa-J, opinion)

- 17 of 26 -

Harris stated 18 USCS § 242 under Jurisdiction against Defendants, which makes it a crime for someone acting under color of state law to deprive another person of his or her federal civil rights, 18 USCS § 242 (providing "if bodily injuries results from the acts committed in violation of this section ... [the defendant] shall be fined under this title or imprisoned not more than ten years, or both"), several other federal criminal statutes define "bodily injury" as meaning:" (A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ or mental faculty; (E) any other injury to the body, no matter how temporary. 18 USCS § 931(f)(5); accord 18 USCS § 1365(g)(4); 18 USCS § 1515(a)(5); 18 USCS § 1964(d)(2).

Harris hereby incorporates VI. Applicable Law from ECF No. 94 at 15-24 of his complaint, as if fully enunciated herein.

This Court may grant Harris declaratory judgment now if justice so permits. Fed. R. Civ. P. 57; See, PGBA, LLC v. United States, 389 F.3d 1219, 1228 n.6 (Fed Cir. 2004) and cases cited. (You need not show irreparable harm or inadequate remedies at law to get a declaratory judgment).

This Court should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action. "The party who brings a suit is master to decide what law he will rely upon." Bogovich v. Sandoval, 189 F.3d 999, 1001 (9th Cir. 1999)(quoting Caterpillar Inc. v. Williams, 462 U.S. 386, 392 n.7, 96 L.Ed 2d 318, 107 S.Ct. 2425 (1987); O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007).

"A district court may abuse its discretion if it does not apply the correct law or if it rests it decision on a clearly erroneous finding of material fact." United States v. Plainbull, 957 F.2d 724, 725 (9th Cir. 1992). cf. Talamantes v. Leyva, 575 F.3d 1021 (4th Cir. 2007).

B. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exist no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment allows courts to avoid unnecessary trials when there is no dispute as to the facts. Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 16 F.3d 1468, 1476 (9th Cir. 1994). "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex v. Catrett, 477 U.S. 317, 323 (1986).

The purpose of summary judgment is to isolate and then terminate claims that are factually unsupported. Id. at 323-24. A moving party is not required to dispose the non-moving party's claims. Id. Instead the moving party is simply required to point out the absence of evidence supporting the non-moving party's claims. Id.

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does indeed exist. Matsushita, 475 U.S. at 586. Material facts are facts that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court should not consider disputes concerning irrelevant or unnecessary facts. Anderson, 477 U.S. at 248.

- 19 of 26 -

When attempting to establish the existence of a genuine issue of material fact, the opposing party is not permitted to merely rely upon its pleadings, but is required to tender evidence of specific facts in the form of affidavits, admissible evidence or discovery materials. Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 586 n.11; Anderson, 477 U.S. at 255. The opposing party is not required to establish a material issue of fact conclusively as it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). The evidence of the non-moving party is to be believed, and all reasonable inference that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citations omitted)(emphasis added); Anderson, 477 U.S. at 255.

Reasonable inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richard v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D.Cal 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; T.W. Elec. Serv., 809 F.2d at 631. The court is concerned with establishing the existence of genuine issues, and "where the records taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

The facts are only "viewed in the light most favorable to the non-moving party if there is a 'genuine' dispute as to those facts." Scott v. Harris, 566 U.S. 512, 340 (2007), "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." Id. (quoting Matsushita, 475 U.S. at 586-87). The United States Supreme Court has stated that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.; see, Curry v. Scott, 249 F.3d 493, 507-08 (6th Cir. 2001)(where record showed history of misconduct by officer, court should not have inferred on summary judgment that higher officials did not know about it on their motion for summary judgment); Smith v. Maschner, 899 F.2d 940, 948 (10th Cir. 1998)(plaintiff's retaliation claim supported by "suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern...").

Declarations or affidavits by Harris have the same status as those by anyone else, and it is improper to discount or disregard them on summary judgment. Scott v. Coughlin, 344 F.3d 282, 289 (2d Cir. 2003); Carroll v. Yates, 362 F.3d 984, 985 (7th Cir. 2004); Taylor v. Rodriguez, 238 F.3d 1186, 195 (2d Cir. 2001)(prisoner's affidavit was sufficient without corroboration by other affidavits or documentation); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004)(Holding that where plaintiff is pro se, the court "must consider as evidence in his opposition to summary judgment all of Harris's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Harris attested under penalty of perjury that the contents of the motions or pleadings are true and correct.).

IV. Legal Analysis

A. Proper Joinder

The Fourth includes several claims that are properly joined in this action because they are sufficiently related to the August 24th, 2020 incident. Specifically, Harris sought to assert the following claims based on his attack at ESP on August 24th, 2020 and his transport between HDSP and ESP on May 14th, 2021: (i) Eighth and Fourteenth Amendment claim for deliberate indifference to Harris needs for Reasonable Safety, (iii) depriving him of equal protection under the law, (ii) First, Eighth and Fourteenth Amendment for retaliation from fictitious charge and being transferred to ESP on May 14th, 2021 for filing grievances, for deliberate indifference to Harris needs for Reasonable Safety, depriving him of equal protection under the law, (iii) First, Eighth and Fourteenth Amendment for failure to supervise on August 24th, 2020 and May 14th, 2021 for deliberate indifference to Harris needs for Reasonable Safety, depriving him of equal protection under the law, (iv) First, Eighth and Fourteenth Amendment for August 24th, 2020 and May 14th, 2021, for filing grievances, being transferred, for deliberate indifference to Harris needs for Reasonable Safety, depriving him of equal protection under the law, violating settlement agreement, (v) negligence to all claims, and IIED to all claims.

B. Harris may prevail on all Claims

Harris hereby incorporates III(A) Motion to Dismiss from this opposition to ECF No. 114, as if fully enunciated herein.

C. Harris Exhausted his Available Administrative Remedies

The PLRA requires federal courts to examine all suits by Harris against Defendants and all IFP cases at the start of litigation, and to dismiss cases that are frivolous or malicious, that fail to state a claim on which relief may be granted, or seeks damages from a defendant immune from damage claims. 28 USC §§ 1915(e)(2), 28 USC §§ 1915A and 42 USC §§ 1997e(c)(1).

The Supreme Court has said that the only exception to the exhaustion requirement is that Harris need not exhaust remedies that are not "available". Ross v. Blake, 136 S.Ct 1850, 1862, 195 L.Ed. 2d 117, 126-127 (2016).

An administrative remedy is "available" if it can "provide any relief" or "take any action whatsoever in response to a complaint" even if it cannot provide the relief Harris prefers, such as money damages. Booth v. Churner, 532 U.S. 731, 736, 740-741, 121 S.Ct 1819, 1823, 149 L.Ed. 2d 958, 963 (2001).

The Supreme Court has acknowledged that sometimes an administrative procedure "though officially on the books, is not capable of use to obtain relief" and is therefore not an available remedy. Ross v. blake, 136 S.Ct. at 1859. It described, "as relevant here", three kinds of situations where that may be the case for Harris. Id.; Andres v. Marshall, 867 f.3d 1076, 1078 (9th Cir. 2017) (per curiam).

One of these is "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with Defendants unable or consistently unwilling to provide any relief to Harris. When the facts on the ground demonstrates that no such potential filing exists Harris has no obligation to exhaust the remedy". Ross, 136 S.Ct. at 1859; Ecf No. 116-2 at 1-15 (AR 740 Regulation); Ecf No. 41 at 143-226 (grievances).

Defendants purposely did not accept Harris informal grievance, which stated their misconduct leading to his attack. ECF No. 41 at 143-226; compare ECF No. 114-1 at 3; Smith v. Lagana, 574 F. App'x 130, 132-133 (3d. Cir. 2014) (per curium) (holding evidence of a "culture of not processing, nor responding to.. complaints against correctional guards" combined with evidence of the plaintiff's fruitless attempts to exhaust raised a factual question of unavailability barring summary judgment)

A remedy is also unavailable " when Defendants thwart Harris from taking advantage of a grievance process through machination, misrepresentation, or intimidation ... The Ninth Circuit recognized that Defendants might devise procedural systems such as rejections of failure to meet statutory deadlines in order to trip Harris up. Ninth Circuit have addressed a variety of instances in which Defendants misled so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with Harris pursuit of relief renders the administrative process unavailable. Ross, 136 S.Ct. at 1860 (citations and footnote omitted); See, e.g., Mills v. Mitchell, 742 F. App'x 511, 512 (4th Cir. 2020) (" ... repeated failure to meet the statutorily required deadlines and failure to provide proper notice made remedies effectively unavailable")

Defendants did not provide Harris with a copy of his informal grievance until roughly 140 days after filing in violation of their own policy. ECF No. 114-1 at 2-3; ECF No. 118-2 at 12 (".. time limit for a response to the informal grievance is forty-five (45) calendar days from the date the grievance is received by the grievance coordinator to the date returned to Harris")

Defendants are actively being trained to "fraudulently defeat[1] exhaustion attempts.
Beck v. Nevada, No. 2:14-CV-002341-APG-VCF, 2016 U.S. Dist. LEXIS 112079, at 15
(D.Nev. July 5, 2016)(citation omitted); ECF No. 41 at 143-226, ECF No. 114-1 at 3.

## D. Defendants Motion is Frivolous

Since exhaustion is not a pleading requirement, it cannot be addressed at initial
screening or by motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a
claim, except in those cases where non-exhaustion is clear on the face of the
complaint. Jones v. Bock, 549 U.S. 199, 214-215, 127 S.Ct. 910(2007); ECF No. 94 at 5.

Nor can exhaustion be addressed on a motion under Rule 12(b)(1), Fed.R.Civ.P.,
to dismiss for lack of subject matter jurisdiction, since failure to exhaust is not
jurisdictional. Woodford v. Ngo, 548 U.S. 81, 101, 126 S.Ct. 2374 (2006)

Defendants failed to produce admissible evidence to support non-exhaustion.
ECF No. 114-1 at 1-16; Fed.R.Civ.P. 56(c)(1)(B).

The Ninth Circuit has held that failure to exhaust is "a matter in abatement,
which is subject to an unenumerated Rule 12(b) motion, rather than a motion for
summary judgement. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)

The PLRA does not alter ordinary litigation practices governed by the Federal
Rules of Civil Procedure or by general practice unless it say so. Jones, 549 U.S. at
212-13, 221-24; Fed.R.Civ.P. 15(a)(1)(B).

_____

(1) Harris exhaustion attempts.＊

This Court is not required to conduct additional screening. 28 USC § 1915(e)(2), 28 USC § 1915A and 42 USC § 1997e(c)(1).

V. Conclusion

This Court should deny Defendants' motion to dismiss and Motion for summary judgment which are both insufficient, Harris took every step to properly exhaust any and all administrative remedies, Defendants' failed to provide admissible evidence on exhaustion.

Harris Fourth cite any shortcomings and deficiencies, was as a Matter of course, cite exact law he's relying on, on personal knowledge.

Destruction or fabrication of evidence or cover-ups of misconduct that deprives its victims of the means to challenge unlawful conduct in court. Christopher v. Harbury, 536 U.S. 403, 414, 416 n. 13, 122 S.Ct. 2179 (2002); Chappell v. Rich, 340 F.3d 1279, 1243 (11th Cir. 2003)(per curiam)("... interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights.").

Dated this 4th day of February, 2024.

/s/ Mr. Harris