Ammar Harris #1116547

High Desert State Prison

United States District Court
District of Nevada

| | |
|---|---|
| Ammar Harris, | 3:21-CV-00390-CLB |
| Plaintiff, | |
| -vs- | Plaintiff's Opposition to Summary Judgment |
| Ely State Prison, et al., | [Ecf No. 175] |
| Defendants. | |

Comes Now, Harris Opposition to Summary Judgment, Ecf No. 175. This Opposition
is made and based upon Memorandum of Points and Authorities, all papers, pleadings on
File herein. Harris hereby moves this Honorable Court, pursuant to Fed.R.Civ.P. 56, for
an Order denying Defendants' Summary Judgment and rending in his favor.

Memorandum of Points and Authorities

## I. Introduction

Ammar Harris (Harris), detained by Nevada Department of Corrections (NDOC), Filed
Fourth Amended verified Complaint regarding conditions of confinement at Ely State Prison
(ESP), resulting to his physical injuries. Ecf No. 94 at 1-27.

Harris action proceeds under 42 USCS §§ 1983, 1986, 18 USCS §§ 242. Id. at 2

Defendants Filed Answer disputing all Harris Factual assertions, Ecf No. 174, also Filed
Motion For Summary Judgment. [Ecf No. 175] Harris opposes Motion, but First raises evidentiary
objections to Defendants Motion.

A. Objections

    I. Defendants Concede Southworth and Rigney are not Fact-Based Witness

Rigney filed authenticating declaration confirming the authenticity of exhibits in support of Defendants' motion for summary judgment. ECF No. 175-11. see, ECF No. 187 at 5. In making such argument, Defendants concede "He is not a fact witness." Id.

    Additionally, "Southworth is not a fact-based witness as his declaration merely recites and summarizes information." Id, see also ECF No. 175-5.

    Exhibits include an allege Investigation Detail Report, Overhead Video Disclosure, Grievance filed with ESP, Grievance filed with HDSP, Inmate Grievance History. see, ECF No. 175-3, 175-4, 175-6, 175-7, 175-4.


    II. Statement of Facts

1.) Curtis Rigney Overhead Video Disclosure, Grievance filed with ESP, Grievance filed with HDSP, Inmate Grievance History copy or duplicate is not a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, or by mechanical or electronic re-recording or by other equivalent techniques which accurately reproduces the original. I hereby object to their admissibility pursuant to Federal Rules of Evidence 1001(4), 1003.


2.) Curtis Rigney Investigation Detail Report is based entirely on my Murder Notice of charges, [ECF No. 126-2 at 6], the investigator is unknown, its report due was on 10/3/20, disposition is non-conclusive or lacks "Factual findings" or outcome of investigation, there is no way to determine the reliability of information concerning incident alleged. I hereby object to its admissibility pursuant to Federal Rules of Evidence 403(b), 405(A).

3.) I, Ammar Harris on personal knowledge, am over the age of 14 years, am competent to testify to matters stated herein, as well as all papers, pleadings, declare under penalty of perjury that the foregoing is true and correct. 28 USC § 1746.

### III. Argument

A duplicate is admissible to the same extent as an original unless: (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original. Rule 1001(4), 1003, Fed.R.Evid. United States v. Westmoreland, 312 F.3d 302, 311 (7th Cir. 2002).

Here, Defendants are attempting to rely on hearsay documentation introduced by Curtis Rigney, [ECF No. 175-11 at 3-4], which are infact deficient reproductions, altering or distorting integrity from originals.

The Notice of Charges (Investigation Detail Report) regarding August 24th, 2020 incident is an accusatory instrument and, as such, it embodies charges leveled by Defendants and does not possess the inherent indicia of reliability upon which hearsay exceptions, including those set forth in rule 803(6) and rule 803(8), are bottomed. Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F.Supp. 1125, 1146 (E.D.Pa. 1980), aff'd in part and rev'd in part sub nom. In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983), rev'd on other grounds, 475 U.S. 574 (1986).

The Notice of charges (Investigation Detail Report) generated by Defendants within days of August 24th incident are govern by Rule 463(6) of the Federal Rules of Evidence, which renders records of regularly conducted activity admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness". The business record exception rests upon the trustworthiness and reliability of such records. Saks International, Inc. v. M/V "Exprit Champion", 417 F.2d 1011, 1013 (2d. Cir. 1987)("Principal precondition to admission of documents as business records... is that the records have sufficient indicia of trustworthiness to be considered reliable"); Bracey v. Herriman, 466 F.2d 762, 764, 764 n.4 (9th Cir. 1972)(citing Charles T McCormick, Evidence 44 281 at 597 (1954)(hearsay exception justified by "the element of unusual reliability... furnished by the fact that in practice regular business records have a comparatively high degree of accuracy...").

Investigation Detail Report, Overhead Video Disclosure, Grievance filed with ESP, Grievance filed with HDSP, Inmate Grievance History, such as the ones at issue here do not properly constitute "business records". Bracey, 466 F.2d at 764 (correctional officers' reports of prisoner beatings do not fit Rule 463(6) exception). In Palmer v. Hoffman, 318 U.S. 104, 113, 87 L.Ed 645, 63 S.Ct.477 (1943), referred to in the advisory committee notes to Rule 463 as the seminal case on the trustworthiness requirement for business records, the Court affirmed the exclusion of records of a railroad accident that were prepared by railroad personnel. The Supreme Court reasoned that an accident report is not typical of entries made systematically or as a matter of routine to record events or occurrence, to reflect transactions with others, or to provide internal controls... The fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made' in the regular course' of the business... Id. [see Ecf No. 175-3 (Investigation Report), 175-4 (Overhead Video), 175-6 (Grievance [ESP], 175-7 (Grievance [HDSP], 175-8 (Grievance History)].

The Court noted that such an expansive interpretation of "business records" would result in the admission of self-serving records of any incident for which an organization could foresee liability, as long as the records were made pursuant to some sort of regular recording system, though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a "business" or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compliation. Id. at 113-14 (citations omitted).

Futhermore, hearsay is not admissible under Rule 803(6) where the reliability of the materials in question is undermined. Where reports of Harris stabbing shows a lack of reliability and trustworthiness due to the self-interest of Defendants responsible for the records are inadmissible. Bracey, 466 F.2d at 1704-05. Self-interest functions strongly in the case at hand, where Defendants involved could be subject to disciplinary action, including dismissal, be brought up on criminal charges or civil liability.

Rule 803(8)(C) of the Federal Rules of Evidence allows the court to use its discretion to admit in civil cases "factual findings resulting from an investigation made pursuant to authority granted by law, unless the source of information or other circumstances indicate lack of trustworthiness". The term "factual findings" has been construed to include opinion or conclusion based upon investigations. Gentile v. County of Suffolk, 926 F.2d 142, 148 (2d Cir. 1991); Perria v. Anderson, 1984 F.2d 1046, 1046-47 (14th Cir. 1986); see also Litton Systems, Inc. v. America Telephone & Telegraph Co., 700 F.2d 785, 818-19 (2d Cir. 1983), cert. denied, 464 U.S. 1073, 79 L.Ed.2d 220, 104 S.Ct. 984 (1984).

- 5 of 2 --

The advisory committee's note to the rule recommends four factors useful in assessing the trustworthiness of such materials: (1) the timeliness of the investigation; (2) the special skill or experience of the reporter; (3) whether a hearing was held in conjunction with the investigation, the level at which the hearing was conducted, and the procedures invoked; and (4) any motive on the part of the informant that could interfere with accuracy. Fed.R.Evid 803 advisory committee's note; 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence P.803(6)[06] at 254 (1992); Bentley v. County of Suffolk, 124 F.R.D. 435, 456 (E.D.N.Y. 1990), aff'd, 926 F.2d 142 (2d. Cir. 1991); see also Ect No. 175-3 at 2-21 (Investigation Detail Report).

Harris hereby object to Ect No. 175-5, 175-11 as hearsay, move to strike as it improperly relies on both information and belief, and personal knowledge. Pfingsten v. Ronan Eng'g Co., 284 F.3d 999, 1003 (4th cir. 2002) ("in order to preserve a hearsay objection, a party must either move to strike the affidavit or otherwise lodge an objection with the district court"); Fenser v. Goodale, 342 F.3d 1032, 1036 (4th cir. 2005) (objection made in reply).

Affidavit based on "information and belief" - facts that Defendants believes are true but which Defendants does not know are true - are not proper. Automatic Radio v. Hazeltine Research, 339 U.S. 827, 831, 70 S.ct. 894, 896, 94 L.Ed 1312 (1950).

To be considered on motion for summary judgment, Defendants affidavit must satisfy three prerequisites: it must be sworn upon personal knowledge; it must state specific facts admissible in evidence at the time of trial; and it must be offered by a competent affiant. Abdusamilli v. City of Chicago, 164 F.3d 353, 359 (4th cir. 1999); Ascott v. Six Flags over Mid-America, Inc., 45 F.3d 1311, 1317 (4th Cir. 1996)

## B. Summary of Disputed Material Facts

Harris utilized lower bunk on August 28, 2020, informing Cole, Boyd or Harry that he was not attending yard, not his group at 9 a.m.

Harry went to B-wing to bring Rippo over to A-wing for yard at 9:30 a.m, Cole and Boyd disregarded policy by sending Harry alone, before he could complete the task they let Harris attacker out, not following schedule policy.

When attacker attempts to gain access to Harris cell and fails, he signals Cole or Boyd to open it, which they do, first thing Harris saw was the hook in his hand, thats when Harris began to panic, shouted to Cole and Boyd for help, but realized their laughter and smiles, thought to himself this a setup.

Only option Harris had was rushing for door to prevent attacker from being able to enter, that when Cole and Boyd tried to pin him with it to assist attacker, thats when Harris heard them cheering, he still shouted for help, forced to defend him, knowing they orchestrated this hit.

Cole and Boyd waited until Harris was down, before they fired at attacker, after the ordeal, while Harris laid in his hospital bed dying, Cole and Boyd issued a disciplinary charge for murder just in case he died against him.

Harris arrived at HDSP expecting medical treatment, while also pending murder infraction, which probably influenced his care, he attempted to glean the orchestrated attack while still struggling with symptoms mentally, emotionally and physically.

Once Harris filed his first level grievance that when Dreesen contacted ESP Drummond, alerting him of the situation because Harris listed names of supervisors, and his name was on it, but Harris got solved infraction at HDSP, which allowed him to file grievance including documentation, preventing its adjudication.

Dreesen and Drummond had to improperly screen grievances in order to deactivate them and initiate transfer through Southworth, in the process they abandon policies to interfere with Harris required pursuit. Attached, Exhibit A ("Ex.A") at 2-6.

II. Statement of Disputed Material Facts

A. August 28, 2020, Unconstitutional Conditions of Confinement Claim

Harris was housed at ESP in Unit 1, Cell A21, lower A bunk on August 28, 2020. Attached, Exhibit A ("Ex. A" - Declaration) at 2, Exhibit B ("Ex. B") at 3 (Bed Assignment). Approximately 8am that Morning Cole, Boyd or Harry asked him if he were attending yard, while 34-44 (D) were on tier, He replied no not his group. Ex. B at 2, Ecf No. 94 at 6; see also [Ecf No. 147-3 at 15 (CMU Exercise Yard & Tier Schedule - Third Column)][Ecf No. 175 at 2 (Undisputed Material Facts)].

8:30 am Harry went to B Wing to escort Rippo in cell B1 to A Wing for group 1-12 (A) yard; in violation of ESP Operational Procedure 521, portly 521.1(5)(B). Ex. A at 2, [Ecf No. 175-3 at 20]; see also [Ecf No. 147-3 at 2-15 ("... Completely secure both tiers ... will be no inmates in the showers and all porters will secured in their individual cells.. Two officers will then conduct an unclothed search of the inmate, as well as a hand search of all clothing and other items that the inmate intends to take to the rec yard... walk across the 1A tier, into the tier-side of the 1A sally-port, and then into the 1A rec yard... After all the 1B cross-over inmates who are going to the 1A rec yard are on the yard, the rest of the 1A yard group inmates will then be allowed to walk unrestrained across the 1A tier, into the 1A sally-port and then into the 1A rec yard...")].

Simultaneously while Harry is getting Rippo alone, Cole and Boyd starts opening doors on 1A tier. an incarcerated person attempted to gain entry to Harris cell, He proceeded to make gesture of signal to Cole or Boyd, immediately Harris door was opened so he could be attacked. Ex. A at 2; Ecf No. 94 at 6; Ecf No. 126-2 at 6; see also [Ecf No. 174 at 4]

Harris saw hook style weapon in incarcerated person ("attacker") hand, yell to Cole and Boyd for help, while they smiled and laughed, attacker made move to enter cell, Harris gave himself fighting chance by rushing out, with panic and fear he refused to be locked in with the attacker. Ex. A at 3; ECF No. 94 at 6.

Thomas was watching from cell A-2, waiting to come out for yard. ECF No. 147 at 7-9. He observed attacker signal to control, then Harris cell opened. Id. at 9. Harris tried to get out cell when it began to close on him, managed to free himself, started shouting for help, Cole and Boyd just smiled. Id.

Harris tried to defend himself from orchestrated attack, when officers came to intervene, he was laying on floor bleeding from stab wound to head. Ex. A at 3; ECF No. 94 at 6.4 [See ECF No. 175 at 2-3].

Harris was given some treatment by nurse, than transferred by Ems to William Bee Rifie Hospital, his injuries were life threatening. ECF No. 27 at 71-115, 276; ECF No. 127-1 at 1-45 (Rifie)

On September 4th, 2020 Harris awoke at UMC Trauma, informed by Dr. Anson he was lucky to be alive, had seizures twice, had to be resided, weapon penetrated his brain resulting to inter-cranial hemorrhage in left frontal lobe, an acute fracture in left parietal bone and lumbar spine damage. ECF No. 127 at 1-196 (UMC Trauma); ECF No. 129 at 1-199 (Part 2); ECF No. 127-4 at 1-196 (Part 3); ECF No. 127-3 at 1-198 (Part 4); ECF No. 125-1 at 1-196 (Part 5); ECF No. 125 at 1-198 (Part 6); ECF No. 125-2 at 1-196 (Part 7); ECF No. 125-3 at 1-196 (Part 8); ECF No. 125-4 at 1-196 (Part 9); ECF No. 125-5 at 1-206 (Part 10); ECF No. 125-6 at 1-198 (Part 11); ECF No. 125-7 at 1-196 (Part 12); ECF No. 125-8 at 1-29 (Part 13); See also ECF No. 94 at 6-7.

- 9 + 7 -

## B. Retaliation or Interference Claim

N. Childers approved Harris transfer from ESP to HDSP in Las Vegas. Ex A. at 3; Ex B. at 4. He would be treat/return upon medical clearance, which required IG supervisor approval prior to transfer. Ex B. at 4.

October 19, 2020 Calderwood made entry into Harris classification record; He was brought into infirmary on October 16, 2020 from ESP, after being stabbed. Pending Murder infraction. Ex A. at 3; Ex B. at 4; Ecf No. 94 at 6-9; Ecf No. 126-2 at 6 (Murder)

November 14, 2020 Yeats made entry into Harris classification record; He was brought into segregation on November 16, 2020, lifelighted due to incident at ESP on August 29, 2020, pending Murder infraction. Ex A. at 3; Ex B. at 4; Ecf No. 94 at 6-9; Ecf No. 126-2 at 6 (murder).

December 16, 2020, January 15, 2021, February 16, 2021, March 16, 2021, April 14, 2021 General case rotations were made; still pending murder infraction. Ex A. at 3; Ex B. at 5; Ecf No. 94 at 6-9; Ecf No. 126-2 at 6 (Murder).

April 1, 2021 D. Keith approved transfer for Harris to ESP. Ecf N; Ex B. at 5.

E. Lima informed Harris that He would be transferred, and do not worry about Murder infraction. Warden dismissed it. Ex A. at 3.

May 14, 2021 Dreesen and E. Lima forwarded Grievance to Drummond, informed him Harris grievance "... has already been inactivated." Ex B. at 5-6.

May 19, 2021 General case notation was made; approved transfer from HDSP to ESP on May 19, 2021, Harris no pending disciplinary concerns. Ex B. at 7.

Harris may not be transferred while pending any infractions. Ex B. at 4. Dreesen had to inform Drummond about deactivating grievance because pending infraction was attached. ECF No. 114-1 at 4-9. ( Informal Grievance )

Harris filed grievance on March 14, 2021. Id. at 5. Dreesen signed acknowledgment on March 19, 2021. Id. at 5-8. Attempts he waited an additional 4(four) Months to improperly reject it, deeming Non-grievable issue. Id. at 4. Dreesen violated policy while doing so. ECF No. 114-2 at 6 ( Administrators of employees of the institution shall automatically allow appeals without interference unless the grievance is granted )

Drummond rejected informal, first level and second level due to Dreesen issuing rejection on July 14, 2021, which thwarted Harris ability to exhaust. ECF No. 41 at 143-226 ( Drummond Grievance 2006.31.14343. This grievance has been rejected 3 times. Your grievance may not be resubmitted and if it is re-submitted, it will be placed in grievance file without any action ); ECF No. 126-2 at 1-97 ( Grievances ); ECF No. 114-1 at 4 ( July 14 ); compare, ECF No. 175 at 6.

ECF No. 175-6 at 1-22 and ECF No. 175-7 at 1-11 are fraudulent misrepresentations of Harris filed grievances, done by Heredges to fabricate evidence or cover up misconduct to deprive Harris of means to challenge unlawful conduct. Ex A. at 4.

Dreesen and Drummond must enter all Harris grievances into NOTIS, whether accepted or not, failed to record receipts, transmittals, actions, and responses on all his grievances to NOTIS within 3 days of filing, failed to sign, date and entered into NotiS. Ecf No. 41 at 143-226; Ecf No. 114-2 at 3 (AR 740); Ex A. at 4.

Dreesen failed to automatically allow appeals without interference unless Harris was granted. Ex A. at 4; Ecf No. 114-1 at 3 ( Dreesen 7/14/2021, 2006-31-143443 1st rejection. This grievance may NOT proceed to the next level. Non-grievable issue); Ecf No. 114-2 at 6.

Dreesen and Drummond failed to Forward Harris grievances to Inspector General As required by policy. Ex A. at 4; Ecf No. 114-2 at 12 ( Grievance alleging staff misconduct will be reviewed by warden, forwarded to Inspector General).

Dreesen and Drummond failed to review, investigate and respond to Harris informal grievance by Department Supervisor that has responsibility over issue that is being grieved. Ex A. at 4; Ecf No. 114-2 at 10.

Dreesen and Drummond failed to review, investigate and respond to Harris first level grievance by warden at institution where incident occurred, even if warden is subject. Ex A. at 4; Ecf No. 41 at 143-226.

Dreesen and Drummond failed to review, respond to Harris second level grievance by Deputy Director of Operation or Offender Management Division. Ex A. at 4; Ecf No. 114-2 at 14.

Dresen and Drummond Hinviated Harris attempts of grieving by having him transferred or from taking advantage of grievance process through inactiviation or misrepresentation Ex A. at 4; Ecf No. 94 at 6-12; Ex B. at 5-6; See also Ecf No. 123 at 10-12.

Defendants failed to put forth any properly admissible evidence. Ex A. at 5. [Ecf No. 195 at 2-6].

## C. Administrative Grievance 2006-31-18343 (Fly and HDSP)

Defendants first contends that Harris' "failure to protect" grievance is unexhausted because he created two informal level grievances at separate facilities, both of which were screened and rejected, since "Harris failed to provide an administrative claim form with either grievance", a requirement whenever an offender seeks "monetary compensation as a grievance remedy" [Ecf No. 195 at 12:24-27]. NDOC/Defendants policy in this regard, is inconsistent with federal law, unenforceable and as explained further rendered the grievance at issue here improperly screened.

It is undisputed that "proper" exhaustion is mandatory, meaning "a prisoner must complete the [prison] review process in accordance with applicable procedural rules" Woodford v. Ngo, 544 U.S. 41, 44 (2006)(brackets added). Yet Courts must ensure that those same procedural rules do not become traps for Harris. For example, Defendants must not create rules which impose obligations above and beyond those imposed Federal law or the Constitution. Spruill v. Gillis, 372 F.3d 218, 232 (3rd Cir. 2004); Strong v. David, 297 F.3d 646, 649-50 (7th Cir. 2002)(" The only constraint is that no prison system may establish a requirement inconsistent with the federal policy underlying Section 1983 and Section 1997(e)(a)".)

One such constraint is forcing Harris, seeking relief under Section 1983, to file administrative state-tort claims with his grievances. Blackmon v. Crawford, 305 F.supp.2d 1174, 1177-78 (D.Nev. 2004) ("There is no requirement for exhaustion of state tort claim procedures for filing a civil rights action in federal court"); see also Wisenbaker v. Farwell, 341 F.supp.2d 1160, 1168-69 (D.Nev 2004).

Here, Defendants AR 746.03(1) allows Harris to file grievances and seek compensation for harm arising from personal injuries "and any other tort claim or civil rights claim." [ECF No. 175-9 at 4]. Indeed, Nevada's only remedy for Harris pursuing monetary relief is under its state tort procedures pursuant to NRS 41.0322 and 209.243. The problem is, AR 746.03(1)(a) places an equal footing state tort with federal civil rights violations, imposing a procedural requirement that Harris, pursuing a civil rights claim, rather than a state tort claim, utilize the state-imposed tort process of NRS 41.0322 and 209.243. [ECF No. 175-9].

This, Defendants cannot do. In Felder v. Casey, 487 U.S. 131, 151 (1988), the Supreme Court struck down a requirement that claimants file a "notice of claim" with the state when they pursued a Section 1983 action in state court. Similarly, in Howlett v. Rose, 496 U.S. 356, 379 (1990), the Court found that, under the Supremacy Clause of the U.S. Constitution, state immunity laws cannot be invoked to protect Defendants from liability under § 1983.

Because the claim form Defendants references is part of Nevada's state tort, administrative process, Harris was not required to include one as part of his "failure to protect" civil rights grievance. Blackmon and Wisenbaker supra. Accordingly, Harris submits that when Defendants screened this grievance on this basis, it was improper. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (Administrative remedies are "effectively unavailable" where "prison officials improperly screens a prisoner's grievance or grievances that would have to sufficed to exhaust claim...).

1. Administrative Grievance 2006-31-24319

Defendants asserts that Harris filed first level grievance under 2006-31-14343 at HDSP on November 20, 2021 [Ecf No. 175 at 6'.19-23]. Harris did not raise this argument in any other document submitted under this grievance number [Id. at 6:23].

Defendants withheld Harris grievances filed under 2006-31-24319. Ex B. at 9-11. Harris filed an informal on August 15, 2021 at ESP, that went unanswered, he proceeded to first level on November 20, 2021 at HDSP, been more than 60 days, no response, on January 24, 2022 he proceeded to his second level. Id. at 9.

August 6, 2021 ESP caseworker P. Hernandez provided Harris with following documents. Id. at 10. Two Memorandum dated June 4, 2021, Ecf No. 176-2 at 25-24 (June 4, 2021), and August 4, 2021, Ecf No. 126-2 at 21-22, by Drummond. Ex B. at 10. See, also [Ecf No. 175 at 6:1-3, 14].

Defendants stated that Harris does not have other grievances raising retaliation claims, [Ecf No. 175 at 6:26-27] this further undermines documents "trustworthiness" in case.

III. Applicable Law
   A Summary Judgment
   Summary judgment is appropriate when it is demonstrated that there exist no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The 'purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment allows courts to avoid unnecessary trials when there is no dispute as to the facts. Northwest Motorcycle Ass'n v. U.s. Dep't of Agric., 18 F.3d 1466, 1476 (4th Cir. 1994). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex v. Catrett, 477 U.s. 317, 323 (1946).

The purpose of summary judgment is to isolate and then terminate claims that are factually unsupported. Id. at 323-24. A moving party is not required to disprove the non-moving party's claims. Id. Instead the moving party is simply required to point out the absence of evidence supporting the non-moving party's claims. Id.

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does indeed exist. Matsushita, 475 U.s. at 586. Material facts are facts that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.s. 242, 248 (1946). The court should not consider disputes concerning irrelevant or unnecessary facts. Anderson, 477 at U.s. at 248.

When attempting to establish the existence of a genuine issue of material fact, the opposing party is not permitted to merely rely upon its pleadings, but is required to render evidence of specific facts in the form of affidavits, admissible evidence of discovery materials. Fed.R.Civ.P. 56(c); Matsushita, 475 U.s. at 586 n.11; Anderson 477 U.s. at 255. The opposing party is not required to establish a material issue of fact conclusively as it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Toll. Elec. Serv., Inc. v. Pacific Elec. Contra. Ass'n., 809 F.2d 626, 631 (9th Cir. 1997).

The evidence of the non-moving party is to be believed, and all reasonable inference that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 597; Anderson, 477 U.S. at 255.

Reasonable inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richard v. Nielson Freight Lines, 602 F.supp. 1224, 1244-45 (E.D. Cal 1945), aff'd, 810 F.2d 494, 962 (9thcir. 1987). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; Ind. Elec. Serv., 909 F.2d at 631. The court is concerned with establishing the existence of genuine issues, and "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." Matsushita, 475 U.S. at 587.

The facts are only "viewed in the light most favorable to the non-moving party if there is a "genuine" dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2001). "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." Id. (quoting Matsushita, 475 U.S. at 586 47). The Supreme Court has stated that " when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling or a motion for summary judgment." Id.

Declaration or affidavits by Harris have the same status as those by anyone else, and it is improper to discount or disregard them on summary judgment. *Jones v. Blanas*, 393 F.3d 916, 923 (9th Cir. 2004)(Holding that where plaintiff is pro se, the Court "must consider as evidence in his opposition to summary judgment all of [Harris] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Harris] attested under penalty of perjury that the contents of the motions of pleadings are true and correct."); ECF No. 94 at 1-21.

The evidence of Harris will believed as true, all doubts will be resolved against the Defendants, all evidence will be construed in the light most favorable to Harris, all reasonable inference will be drawn in Harris favor. *Hunt v. Cromartie*, 526 U.S. 541, 550-55, 119 S.Ct. 1545, 1551-52, 143 L.Ed. 2d 731 (1999). Instead, so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference to believe and summary judgment is not appropriate. *Hunt*, 526 U.S. at 552.

Summary judgment is never automatically foreclosed merely because Defendants state of mind (such as motive, knowledge, intent, good faith or bad faith, malice, fraud, conspiracy, or consent) is at issue, but such cases will seldom lend themselves to a summary disposition because questions of credibility will ordinarily abound. *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed. 2d 411 (1979); *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999)(observing that state of mind questions are factual issues inappropriate for summary judgment).

-16 of 20-

## B. Harris Exhausted Remedies, Defendants Made Unavailable

The Supreme Court has said that the only exception to the exhaustion requirement, is that Harris need not exhaust remedies that are not "available." Ross v. Blake, 136 S.ct. 1450, 1462, 195 L.Ed. 2d 117, 126-127 (2016).

An administrative remedy is "available" if it can "provide any relief" or "take any action whatsoever in response to a complaint" even if it cannot provide the relief Harris prefers, such as money damages. Booth v. Churner, 532 U.S. 731, 736, 740-41, 121 S.ct 1819, 1823, 149 L.Ed. 2d 958, 963 (2001).

The Court has acknowledged that sometimes an administrative procedure "though officially on the books, is not capable of use to obtain relief" and is therefore not an available remedy. Ross, 136 S.ct. at 1859. It described, "as relevant here", three Kinds of situations where that may be the case for Harris. Id.; Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017)(per curiam).

One of these "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with Defendants unable or consistently unwilling to provide any relief to [Harris]... when the facts on the ground demonstrates that no such potential filing exists [Harris] has no obligation to exhaust the remedy." Ross, 131 S.ct. at 1859; Ecf No. 114-2 at 1-15 (AR 746), Ecf No. 41 at 143-226 (grievance).

Defendants purposely did not accept Harris informal grievance, which stated their misconduct leading to his attack. Ecf No. 41 at 143-226; compare Ecf No. 114-1 at 3.; Smith v. Laggaris, 574 F. App'x 130, 132-133 (3d Cir. 2014)(per curiam)(holding evidence of a "culture of not processing, nor responding to... complaints." combined with evidence of [Harris] fruitless attempts to exhaust raised a factual question of unavailability barring summary judgment).

A remedy is also unavailable " When prison administrators thwart incarcerated people from taking advantage of a grievance process through machination, misrepresentation, or intimidation.... [W]e [have] recognized that officials might devise procedural systems in order to 'trip [Harris] up all but the most skillful prisoners.' And appellate courts have addressed a variety of instances in which officials misled or threatened individual incarcerated people so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an incarcerated person's pursuit of relief renders the administrative process unavailable" Ross v. Blake, 136 S.Ct. 1450, 1860, 195 L. Ed. 2d 117, 127 (2016)( internal citations and footnote omitted).

C. Defendants Are Not Entitled To Qualified Immunity As Harris Can Establish A Constitutional Violation And That They Were Clearly Established

1. This Court Has Already Made Constitutional Violation Determination

Pursuant to 28 U.S.C. § 1915A(a) The Court made following determination;

On August 26, 2020, at about 9:30 in the morning, an inmate attacked and seriously injured Harris. (ECF No. 46 at 4:19-20) Earlier that morning, Harris had informed Cole that he was not going to the yard that. ( Id. at :21) Just before the attack, Cole started opening multiple cell doors in Harris unit. The inmate stood by Harris cell door and made gesture to Cole. Harris cell door was opened. At this point, Harris saw that the inmate had a weapon, so he alerted Cole and Boyd for aid. They laughed and cheered and did not interfere until after Harris was on the flooding bleeding. ( Id at 4:19-26)

Court proceeded to rely on Clearly Established law. (ECF No. 46 at 7:17-28), as well as summarize factual predicate. ( Id. at 8:16-24 · 4:1-2).

On March 14, 2021, Harris filed an internal grievance about the August 28, 2020 incident. (Ecf No. 40 at 5: 24-28 · 6:1). When he did not receive a response, he filed a first level on May 5, 2021. Dreesen and Drummond were notified of Harris grievances. On May 6, 2021, Dreesen and Drummond planned to have Harris transferred back to ESP to "retaliate against [him]" for "petitioning the government for [] redress." (Id. at 5:24). The transfer took place on May 14, 2021. (Id. at 6:1).

Court proceeded to rely on clearly established law. (Ecf No. 40 at 11: 26-28 · 13:1-4), as well as summarize factual predicate (Id. at 12: 24-28 · 13:1-4).

## 2. Defendants Are Not Entitled To Qualify Immunity

Qualified immunity means that Defendants must have fair notice of laws before being subject to suit for damages for violating it. Hope v. Pelzer, 536 U.S. 736, 739-40, 122 S.Ct. 2508 (2002).

Qualify immunity protects Defendants from damage liability in federal civil rights cases. Cousins v. Lockyer, 568 F.3d 1063, 1072 (4th cir. 2009), unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. App, 817-18, 102 S.Ct. 2727 (1982).

The question has also been stated as "whether a reasonable officer could have believed [their actions] to be lawful, in light of clearly established law and the information the [defendants] possessed." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034 (1987).

The Supreme Court has described qualified immunity as extending to "officials performing discretionary functions." Harlow, 457 U.S. at 818. Some Courts have held that Defendants who exceed their discretion are not entitled to immunity. Halbert Intern. Inc. v. James, 154 F.3d 1271, 1281 (11th Cir. 1998); Howard v. Adkison, 887 F.2d 134, 140 (4th Cir. 1989) (Defendants who acted in violation of prison policies were not immune).

When Defendants claims qualified immunity, courts must generally determine whether law was clearly established at the time they committed illegal acts. Harlow, 457 U.S. at 818.

Ninth Circuit also hold that decisions from other jurisdictions may establish law. Tekle ex rel. Tekle v. U.S., 511 F.3d 839, 847 (9th cir. 2007) (Holding that "in the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decision of state courts, other circuits, and district courts." (citations omitted).

State law or regulations may also identify Defendants who clearly had a duty to correct particular kinds of constitutional violations. Alexander v. Perrill, 912 F.2d 1392, 1398 (9th Cir. 1990) (regulations and policies helped establish an officials duty to investigate claim).

Harris does not have to find a prior case holding Defendants' exact actions unconstitutional. Anderson, 483 U.S. at 640; see also Hope, 536 U.S. at 739-740 (officials can be on notice that their conduct violates established law even in "novel circumstances"; courts need not have held that "fundamentally similar" conduct was unlawful to defeat qualified immunity).

A case must have "some but not precise factual correspondence with precedents" to give Defendants notice; they must apply "general, well-developed legal principles" to the varying situations they face. Eastwood v. Dep't of Corr. Okla., 846 F.2d 627, 630 (10th Cir. 1966) (citation omitted), which they cannot escape liability by making fine distinctions. Clem v. Gomez, 244 F.3d 898, 906 (4th Cir. 2002) (citation omitted).

Defendants are expected to use common sense in assessing their legal obligations. Giebel v. Sylvester, 244 F.3d 1142, 1149 (4th Cir. 2001) (holding that "even if there is no closely analogous case law, a right can be clearly established on the basis of 'common sense'"); Sepulveda v. Ramirez, 967 F.2d 1413, 1418 (9th Cir. 1992) (Defendants was not immune for conduct that "runs contrary to common sense, decency" and state regulations).

If an infringement of Harris rights is extreme, sweeping, or obvious, those responsible for it are not immune even if there is no prior factually similar case. Brosseau v. Haugen, 543 U.S. 194, 196, 125 S.Ct. 596 (2004) (" in an obvious case, [general] standards can 'clearly establish' [a right] ... even without a body of relevant case law."); see, Tekle ex rel. Tekle, 511 F.3d at 4448.

Defendants may be entitled to qualified immunity even where the law was clearly established if they lacked enough information about the facts to know that his actions violated that law. Anderson, 483 U.S. at 641 (qualified immunity is assessed "in light of ... the information the [defendants] possessed"); Floyd v. Lawies, 929 F.2d 1390, 1393-94 (9th Cir. 1991), although defendants will be liable if they should have reasonably obtained more information. Jones v. Wilhelm, 425 F.3d 455, 461 (9th Cir. 2005) (requiring actual knowledge of relevant facts to overcome immunity in all cases would allow state actors to "trample on the constitutional rights of citizens by maintaining willful ignorance").

Where Defendants actions are more clearly contrary to established law, immunity is more likely to be denied. *California Attorneys for Criminal Justice v. Butts*, 195 F.3d 1039, 1044-50 (4th Cir. 1999)( denying qualified immunity to police officers who intentionally violated Miranda rule).

Harris has already pleaded factual elements which violated clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).

### 3. Harris Constitutional Rights Were Violated
#### a. Eighth Amendment Conditions of Confinement

Eighth Amendment, which forbids "cruel and unusual punishments," governs the treatment of Harris. *Farmer v. Brennan*, 511 U.S. 425, 434, 114 S.Ct. 1970 (1994), *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321 (1991).

To prevail on an Eighth Amendment claim, Harris must establish both an "objective" component, the seriousness of challenged conditions, and a "subjective" component, the state of mind of Defendants who are responsible for them. U.S. Const. Amend. VIII.

#### i. Objective: Cruel Conditions

Prison conditions that are "restrictive and even harsh" are part of penalty that Harris pay for his offenses against society. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1991).

Conditions do not violate Eighth Amendment unless they amount to " the unnecessary and wanton infliction of pain" *Rhodes*, 452 U.S. at 347; *Wilson*, 501 U.S. at 299.

With respect to living conditions, Harris must demonstrate "unquestioned and serious deprivations of "basic human needs" & of the "minimal civilized measure of life's necessities" to establish an Eighth Amendment violation. *Rhodes*, 452 U.S. at 347; accord, *Wilson*, 501 U.S. at 304. The "treatment a prisoner receives in prison and the conditions under which is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993)

-24- C.2.

The Supreme Court has listed as basic human needs "food, clothing, shelter, medical, care, and reasonable safety". Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475 (1993) (citing DeShaney v. Winnebago County Dept of Social Services, 489 U.S. 189, 199-200, 109 S.Ct. 998 (1989)), and issued decisions concerning Harris' Eighth Amendment claims have emphasized physical harm, or the risk of it. Farmer, 511 U.S. at 436 (addressing risk of inmate-inmate assault).

However, the Court held that conduct may violate Harris Eighth Amendment even if it does not inflict physical injury or permanent harm, see, e.g. Hudson v. Palmer, 468 U.S. 517, 530, 104 S.Ct. 3194 (1984)(citation omitted).

The Eighth Amendment standard "draws its meaning from the evolving standards of decency that mark the progress of a maturing society". Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 456 U.S. 46, 101, 78 S.Ct. 590 (1958); accord Helling, 509 U.S. at 36.

In cases involving risks to safety, this Court must "assess whether society considers the risk that [Harris] complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk". In other words, Harris must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling, 509 U.S. at 36; see, Baze v. Rees, 555 U.S. 35, 128 S.Ct. 1520, 1531 (2008)(" it is difficult to regard a practice as 'objectively intolerable' when it is in fact widely tolerated"). Courts must inquire whether conditions, "alone or in combination", deprived [Harris] of the minimal civilized measure of life necessities. Rhodes, 452 U.S. at 347 (emphasis supplied).

This requires Harris to demonstrate 'conditions posing a substantial risk of serious harm' that present an 'excessive risk to his health or safety. Norbert v. City & Cty. of San Francisco, 10 F.4th 918,927 (4th Cir. 2021)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

## 2. Subjective: Deliberate Indifference

In Eighth Amendment condition cases, Harris must prove that Defendants acted with "deliberate indifference." Wilson, 501 U.S. at 303. The Court reasoned that if deprivations are not specifically imposed as part of Harris sentence, they are not really "punishment" unless Defendants imposing them "possessed a sufficiently culpable state of mind." Id., 501 U.S. at 297-94. The Court then decided that deliberate indifference was appropriate state of mind requirement for conditions cases. Accord, Farmer, 511 U.S. at 834.

Deliberate indifference in Eighth Amendment cases falls somewhere between mere negligence (carelessness) and actual malice (intent to cause harm). Farmer, 511 U.S. at 835-36; Wilson, 501 U.S. at 297-304. That is, it amounts to recklessness. Farmer, 511 U.S. at 836.

Sometimes deliberate indifference is shown directly by evidence of Defendants bad motives or attitudes. Haley v. Gross, 86 F.3d 650, 642 (7th Cir. 1996)(stating that official who told prisoner who had been threatening to set a fire and responded, "We'll go ahead, you nigger, burn your black asses. You've got to be in there" presented "a paradigm case of deliberate indifference"); Curtis v. Jones, 213 F.3d 431, 845 (9th Cir. 2002)(officials "essentially orchestrated the attack"); Pavlick v. Mifflin, 96 F.3d 205, 208 (4th Cir. 1996) ("... although this case was litigated as one of deliberate indifference, ... allegations appear to go beyond simple "indifference" to his safety ... viewing the evidence in the light most favorable to ... a reasonable jury could have inferred that, by opening ... cell door and allowing the attackers ... actually participated in the assault."); accord, Hope, 536 U.S. at 734. (finding Eighth Amendment violation where prison staff knowingly subjected Plaintiff to the obvious risks and pain of "hitching post" restraint).

page 27

However, the fact that condition of risk was obvious is circumstantial evidence that will permit judge or jury to conclude that Defendants did know about it, even if there is no direct evidence about what they knew. *Farmer*, 511 U.S. at 442-43; *Id.* at 937 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Lolli v. County of Orange*, 351 F.3d 410, 420-21 (9th Cir. 2003).

Therefore, if Harris can show that Defendants disregarded a risk that was obvious by simply opening his cell door, the Court should not grant summary judgment against him, and he should have a right to trial. *Hope*, 536 U.S. at 754 n. 4 (holding particular defendants awareness of a risk of harm "may be evaluated in part by considering the pattern of treatment that inmates generally received" as a result of the challenged practice).

The court may find deliberate indifference even if particular Defendants are well motivated as individuals. *Harris v. Angelina County, Texas*, 31 F.3d 331, 335 (5th Cir. 1994) (deliberate indifference found "against the county")

In such cases the focus is on "the institution's historical indifference" rather that the Defendants knowledge and the response to Harris, the "actual knowledge" that is necessary to support a grant of relief may be provided by the judicial proceeding itself. *Farmer*, 511 U.S. at 846 n. 9; *Hadix v. Johnson*, 367 F.3d 513, 526 (6th Cir. 2004)( noting that same evidence showing unconstitutional conditions in court was available to prison officials.); *see also* ECF No 135 at 1 ("the Court has discovered a pattern at Ely State Prison regarding physical attacks on inmates"); *Terry v. Hill*, 232 F.supp. 2d 934, 944 (E.D. Ark. 2002)( finding "the state" deliberately indifferent).

## b. First Amendment Retaliation of Interference

The First Amendment protects "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances". U.S. Const., Amend. I,

The First Amendment forbids Defendants from retaliating against Harris for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1246 (4th Cir. 2003); accord, Crawford-El v. Britton, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998) ("The reason why such retaliation offends the constitution is that it threatens to inhibit exercise of the protected right.").

Unconstitutional retaliation may be remedied by an injunction, even if the practices are not formally part of Defendants policy. Gomez v. Vernon, 255 F.3d 1118, 1127, 1129-30 (4th Cir. 2001), or by an award of damages. Dannenberg v. Valadez, 338 F.3d 1070, 1072 (4th Cir. 2003) See, also Hines v. Gomer, 108 F.3d 265 (4th Cir. 1997)(affirming jury verdict for plaintiff subjected to retaliation for filing grievances).

To state a retaliation claim, Harris must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [Harris], and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)(citation omitted).

Harris must at a minimum state "a chronology of events from which retaliation may plausibly be inferred." Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).

To support a retaliation claim, adverse action must be sufficient to deter or "chill" a person of "ordinary firmness" in the exercise of constitutional rights. Rhodes, 408 F.3d at 568-69.

However, Harris do not have to show that he was actually deterred from exercising his rights. Rhodes, 408 F.3d at 569. The question whether a particular action would deter a person of ordinary firmness is an objective one and does not depend on how Harris reacts; the question is whether the defendants' actions are capable of deterring a person of ordinary firmness. Bell v. Johnson, 308 F.3d 594, 605-06 (6th Cir. 2002). In a case tried to a jury, that question is to be decided by the jury, Id., 308 F.3d at 603, and the claim need not be supported by expert testimony. Id. at 605-07.

Defendants placed an unnecessary requirement on Harris because he filed a grievance by improperly rejecting or denying them in order to restrict his ability to sue. Blaisdell v. Frappiea, 729 F.3d 1237, 1242 (9th Cir. 2013).

Adverse action need not independently violate the Constitution to support a retaliation claim. Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005).

Defendants took adverse action by initiating prison transfer in retaliation for Harris protected activities of filing grievances. Belmonte v. Palomares, No. 19-CV-00163, 2020 WL 5641246, at *3 (E.D. Cal. Oct. 2, 2020) ("A prison transfer may ... constitute an adverse action." (collecting cases)).

Harris need only show that protected speech was a "motivating factor" for retaliation, at which point the burden of proof shifts and Defendants must show that the adverse action would have been taken anyway. Hasan v. U.S. Dept. of Labor, 400 F.3d 1001, 1006 (7th Cir. 2005); accord, Scott v. Coughlin, 344 F.3d 282, 287-44 (2d Cir. 2003).

Under either of these standards, Harris must produce evidence that the adverse action was in fact done for retaliatory reasons. Richardson v. McDonnell, 841 F.2d 120, 122-23 (5th Cir. 1998). Such evidence may be direct, such as statements by Defendants or staff indicating their motive for taking the adverse action. See e.g. Brule v. Yost, 351 F.3d 1243, 1284-84 (9th Cir. 2003)(citation omitted).

Often there is no direct evidence, so Harris must rely on circumstantial evidence. Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997)(jury could infer retaliatory motive from evidence from prison staff that the plaintiff had a reputation for "complaining" or "whining", from his having filed many grievances, and from his having told the defendants he would be filing a grievance against him).

Type of evidence that have been found to support retaliation claims include the suspicious timing of adverse actions shortly after Harris has made complaints or filed grievances. Brule, 351 F.3d at 1286 ("suspect timing").

A document filed Pro Se is to be liberally construed, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.ct. 2197, 2100(2007)(quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.ct 245(1976)).

Harris brought suit, and is master to decide what law he will rely upon. Bogovich v. Sandoval, 189 F.3d 999, 1001 (9th Cir. 1999)( quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 n.7, 96 L.Ed. 2d 318, 107 S.ct. 2425(1987); Osborn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060( 9th Cir. 2007).

## IV. Conclusion

Defendants improperly screened or purposely interfered with Harris grievances in order to assert his failure under PLRA.

Defendants are not entitled to qualified immunity due to Harris establishment of an orchestrated attack permitted to take by deliberate disregard for policy and at bequest of attacker, injuries are life sustaining.

Harris was only permitted to transfer after Defendants deactivated grievance that contained murder initiation, initiating it to take place immediately after, which directly support retaliation by evidence.

As of 6/1/25 Harris still have not seen video from Defendants motion for summary judgment, and because all of their suppose evidence are improper, this Court has every right to disregard. Ex. A. at 6.

Finally, Harris has established personal participation of Cole, Byrd, Dreesen and Drummond, and punitive damages are appropriate, as evidence support finding of malice and/or despicable conduct where Defendants refused accepting of service on Cole.

Dated this 1st day of June, 2025.

/s/ Mr. Harris

EXHIBIT A

EXHIBIT A

Ammar Harris #1116547
High Desert State Prison

United States District Court
District of Nevada

Ammar Harris,                    3:21-CV-00380-CLB
            Plaintiff,

      -vs-                        Declaration of Ammar Harris

Ely State Prison, et al.,
            Defendants.

Ammar Harris hereby makes following declaration;

1.) I was housed at ESP in unit 1, Cell A21, lower bunk on August 28, 2020.
Approximately 8am that morning Cole, Boyd or Harry asked if I were attending yard,
while 37-45 (D) was on tier, replied no, not my group.

2.) 4:30 am Harry went to B wing to escort Ripps in cell B-1 to A wing for group
1-17 (A) yard, in violation of ESP Operational Procedure 521, pointly 521.I (5)(B)

3.) Simultaneously while Harry is getting Ripps alone, Cole and Boyd starts opening
days on 1A tier, in violation of 521(5)(B), an incarcerated person attempted to gain
entry into my cell, he proceeded to make gesture or signal to Cole or Boyd, immediately
my door was opened so I could be attacked.

4.) I saw the knife style weapon in attacker hand, yelled to Cole and begd for help, heard them laughing and saw smiles on their faces, attacker made moves to enter my cell, in order to give myself a fighting chance I had to rush out of it, my heart was racing, I thought this is how my life ends, consumed fear, refusing to be locked in a cell with him.

5.) As I was trying to preserve my life, Cole and Boyd tried to impale me with the door while cheering for attacker, manage to free myself and defend myself from this orchestrated attack, when other officers came to intervene, I was laying on flod bleeding from a stab wound to my head, moaning in pain.

6.) N. Childers appealed me to be taken from ESP to UMC in Las Vegas, because my injuries were life threatening.

7.) On October 19, 2020 Calderwood made entry into my file; Inmate is pending MJ16 for Murder.

8.) On November 14, 2020 Yeates made similar entry into my file; Investigated due to incident that occurred at ESP on 8/24/20, pending OIC#445309 (MJ16: Murder).

9.) On December 16, 2020, January 15, 2024, February 16, 2021, March 16, 2021, April 19, 2021 I was still pending a disciplinary infraction for murder which prevented me from being transferred until it was resolved or dismissed

10.) May 17, 2021 E. Lima informed me that I would be transferred to ESP soon, and "do not worry about that murder write up, warden took care of it."

11.) Ecf No. 175-6 at 1-22 and Ecf No. 175-7 at 1-11 are fraudulent misrepresentations of my filed grievances, purposely and intently done by Leo T. Heredes to destroy, fabricate evidence or color-up misconduct to deprive me of means to challenge unlawful conduct in court.

12.) Dreesen and Drummond must enter all grievances into NOTIS, whether accepted or not Failed to record receipts, transmittals, actions, and responses on all my grievances to NOTIS within three (3) working days of receipt, failed to sign, date and entered into NOTIS.

13.) Dreesen failed to automatically allow appeals without interference unless my grievance was granted.

14.) Dreesen and Drummond failed to forward my grievances to Inspector General.

15.) Dreesen and Drummond failed to review, investigate and respond to my informal grievance by the Department Supervisor that has responsibility over the issue that is being grieved or designated person.

16.) Dreesen and Drummond failed to review, investigate and respond to my first level grievance by warden at institution where the incident being grieved occurred, even if warden is the subject of grievance.

17.) Dreesen and Drummond failed to review, respond to my second level grievance by Deputy Director of Operation or Offender Management Division.

18.) Dreesen and Drummond thwarted my attempts of grieving by having me transferred or from taking advantage of grievance process through machination or misrepresentation.

19.) Defendant's failed to file properly admissible evidence.

20.) I utilized lower bunk on August 29, 2020, informing Cole, Boyd of Harry that I was not attending yard, not my group at 8am.

21.) Harry went to B. Wing to bring Rippo over to A. Wing for yard at 8:30am, Cole and Boyd disregarded policy by sending Harry alone, before he could complete the task they let my attacker out, bypassing schedule policy.

22.) When attacker attempts to gain access to my cell and fails, he gestures or signals to Cole or Boyd to open it, which they do, first thing I noticed was the knife like weapon in his hand, I panic, shouted to Cole and Boyd for help, they were smiling and laughing, at that point I knew it was a setup.

23.) Only option I had was to prevent attacker from entering when I saw him motion for door, I rushed my body towards it, thats when Cole and Boyd tried to pin me in the door, helping my attack, heard them cheering for him, still I shouted for help, thats when I realized it was planned.

24.) I had no choice but to defend myself, after I was dazed and injured badly suffering did anyone intervene, after my ordeal, while laying in my hospital bed dying, Cole and Boyd issues a disciplinary charge for murder, to cover themselves in case I died.

25.) I arrived to HOSP expecting medical treatment, while pending murder infraction, which probably effated my case, attempted to grieve orchestrated attack while still struggling with symptoms mentally, emotionally and physically.

26.) Once I filed my first level grievance, thats when Dreesen contacted Drummond, alerting him because I listed his name as well as all superiors, lucky for me I was able to file my informal grievance with murder intraction, which prevented it from being adjudicated until end of process.

27.) Dreesen and Drummond had to improperly screen grievance in order to deactivate them and initiate transfer through Southworth, knowing that it was the only reason I was still being Hassed at HDSP, in doing this they abandon policies to interfere with my required pursuit.

28.) As of 6/1/25 I still have not been able to view video purported in Defendants motion for Summary judgment, ECF No. 175, which prejudice my ability to adequately dispute Leo T. Hardge's of facts, seen him in court on 5/22/25 and informed him that I have not seen video.

29.) I, Aumar Harris on personal knowledge am over the age of 18 years, am competent to testify to matters stated, as well as all papers, pleadings on file herein, declare under penalty of perjury that the foregoing is true and correct. 28 USC § 1746.

# EXHIBIT B

EXHIBIT B



# State of Nevada
# Department of Corrections

Historical Bed Assignments

**Offender Name:** HARRIS, AMMAR
**NDOC ID:** 1116547
**Booking No:** 2014-070354

**Status:** ACTIVE-IN
**Booking Begin Date:** 03/07/2014
**Booking End Date:**

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| HDSP-RC | 03/07/2014 | 03/07/2014 |
| HDSP-U2-D-41-A | 03/07/2014 | 05/14/2014 |
| ESP-U9-A-4-A | 05/14/2014 | 05/19/2014 |
| ESP-U9-A-28-A | 05/19/2014 | 05/21/2014 |
| ESP-U9-A-30-A | 05/21/2014 | 05/23/2014 |
| ESP-U1-A-13-B | 05/23/2014 | 06/18/2014 |
| ESP-U4-B-13-A | 06/18/2014 | 08/02/2014 |
| HDSP-RC | 08/02/2014 | 08/02/2014 |
| HDSP-U14-A-1-A | 08/02/2014 | 08/05/2014 |
| CCDC-RC | 08/05/2014 | 08/06/2014 |
| HDSP-RC | 08/06/2014 | 08/06/2014 |
| HDSP-U14-A-1-A | 08/06/2014 | 08/09/2014 |
| ESP-RC | 08/09/2014 | 08/09/2014 |
| ESP-U1-A-7-B | 08/09/2014 | 08/11/2014 |
| ESP-U4-A-7-A | 08/11/2014 | 09/02/2014 |
| HDSP-RC | 09/02/2014 | 09/02/2014 |
| HDSP-U14-A-1-A | 09/02/2014 | 09/03/2014 |
| ESP-RC | 09/03/2014 | 09/03/2014 |
| ESP-U4-B-22-A | 09/03/2014 | 09/25/2014 |
| ESP-U4-A-19-A | 09/25/2014 | 09/30/2014 |
| HDSP-RC | 09/30/2014 | 09/30/2014 |
| HDSP-U14-A-1-A | 09/30/2014 | 10/01/2014 |
| ESP-RC | 10/01/2014 | 10/01/2014 |
| ESP-U4-A-19-A | 10/01/2014 | 10/26/2014 |
| HDSP-RC | 10/26/2014 | 10/26/2014 |
| HDSP-U14-A-1-A | 10/26/2014 | 10/29/2014 |
| ESP-RC | 10/29/2014 | 10/29/2014 |
| ESP-U4-A-19-A | 10/29/2014 | 12/16/2014 |
| ESP-U4-B-16-A | 12/16/2014 | 01/02/2015 |
| HDSP-RC | 01/02/2015 | 01/02/2015 |
| HDSP-U14-A-1-A | 01/02/2015 | 01/07/2015 |
| CCDC-RC | 01/07/2015 | 01/21/2015 |
| ESP-RC | 01/21/2015 | 01/21/2015 |
| ESP-U4-B-16-A | 01/21/2015 | 04/14/2015 |
| CCDC-RC | 04/14/2015 | 06/04/2015 |
| ESP-RC | 06/04/2015 | 06/04/2015 |
| ESP-U4-A-21-A | 06/04/2015 | 07/14/2015 |
| HDSP-RC | 07/14/2015 | 07/14/2015 |
| HDSP-U14-A-1-A | 07/14/2015 | 07/16/2015 |
| ESP-RC | 07/16/2015 | 07/16/2015 |
| ESP-U4-A-21-A | 07/16/2015 | 08/19/2015 |
| CCDC-RC | 08/19/2015 | 11/06/2015 |



# State of Nevada
# Department of Corrections

Historical Bed Assignments

**Offender Name:** HARRIS, AMMAR
**NDOC ID:** 1116547
**Booking No:** 2014-070354

**Status:** ACTIVE-IN
**Booking Begin Date:** 03/07/2014
**Booking End Date:**

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| ESP-RC | 11/06/2015 | 11/06/2015 |
| ESP-U4-B-19-A | 11/06/2015 | 12/16/2015 |
| ESP-U4-A-17-A | 12/16/2015 | 01/03/2016 |
| HDSP-RC | 01/03/2016 | 01/03/2016 |
| HDSP-U14-A-1-A | 01/03/2016 | 01/04/2016 |
| ESP-RC | 01/04/2016 | 01/04/2016 |
| ESP-U4-A-17-A | 01/04/2016 | 02/09/2016 |
| ESP-U4-A-12-A | 02/09/2016 | 03/24/2016 |
| ESP-U4-B-15-A | 03/24/2016 | 04/14/2016 |
| ESP-U4-B-20-A | 04/14/2016 | 06/29/2016 |
| ESP-U4-A-12-A | 06/29/2016 | 07/23/2016 |
| ESP-U4-B-18-A | 07/23/2016 | 09/14/2016 |
| ESP-U3-B-13-A | 09/14/2016 | 10/16/2016 |
| ESP-U1-B-32-A | 10/16/2016 | 06/07/2017 |
| ESP-U1-A-1-A | 06/07/2017 | 07/19/2017 |
| ESP-U1-B-35-A | 07/19/2017 | 11/08/2017 |
| HDSP-RC | 11/08/2017 | 11/08/2017 |
| HDSP-U3-B-25-A | 11/08/2017 | 05/15/2018 |
| HDSP-U5-D-38-A | 05/15/2018 | 05/15/2018 |
| HDSP-U3-B-25-A | 05/15/2018 | 05/16/2018 |
| ESP-U1-B-2-B | 05/16/2018 | 03/06/2019 |
| ESP-U1-A-21-A | 03/06/2019 | 11/07/2019 |
| ESP-U1-A-21-B | 11/07/2019 | 08/28/2020 |
| UMC-RC | 08/28/2020 | 10/16/2020 |
| HDSP-RC | 10/16/2020 | 10/16/2020 |
| HDSP-U13-A-6-A | 10/16/2020 | 11/16/2020 |
| HDSP-U4-B-1-A | 11/16/2020 | 03/24/2021 |
| HDSP-U6-A-21-A | 03/24/2021 | 05/19/2021 |
| ESP-RC | 05/19/2021 | 05/19/2021 |
| ESP-U9-A-6-A | 05/19/2021 | 06/07/2021 |
| ESP-U9-A-3-A | 06/07/2021 | 10/13/2021 |
| ESP-RC | 10/13/2021 | 10/13/2021 |
| HDSP-RC | 10/13/2021 | 10/13/2021 |
| HDSP-U6-B-1-A | 10/13/2021 | 12/23/2022 |
| HDSP-U8-A-21-A | 12/23/2022 | 06/03/2023 |
| HDSP-U4-A-21-A | 06/03/2023 | Offenders Current Location |



# State of Nevada
# Department of Corrections

OFFENDER INFORMATION SUMMARY

NDOC ID:1116547     NAME: HARRIS, AMMAR     BOOKING NO: 2014-070354

## - CASE NOTES -

Rx ESP/MAX Death Row w/ all CMU privileges. ...[TSANDOVAL updated the case note on 06/19/2020 10:51:41] OK ESP MLU-D

08/28/2020 - 11:20 [Classification / Re-Classification (Change)]: Assessment= 9/MAX.
 Sentence =LWP[____] cs Death Murder 1 W/DW X3 cs 96-240 months Attempt Murder cs 96-240 months UDWE cs 72-180 months Discharging FA from Vehicle X5 cs 72-180 months Robbery cs 28-72 months Discharging FA at Structure/Vehicle. CMS=HDSP. Alerts=STW. STG=None, Holds/Det=None Den= 1/1 Med=1/1 Psy= 1/1. Last OIC= G14 1/24/18.
PED=2/2/24    MPR=N/A    PEXD=LIFE w/ pending CS (including DEATH)
Inmate is being lifeflighted to UMC
Rx HDSP via UMC
 ...[NCHILDERS updated the case note on 08/28/2020 11:44:11] Approved MAX/HDSP No PED/PEXD, sentence Death. Offender being tx due to lifeflighted from ESP to UMC in Las Vegas. Treat and Return to MAX/ESP upon medical clearance. IG Supervisor [____] notified of transfer / transport on this date.

08/31/2020 - 10:59 [General Case Notes / Family Outside Contact]: ESP has received 2 phone calls this morning regarding I/M Harris. One of the callers claimed [____], another caller claimed [____] Neither contact is listed in NOTIS. They wanted to know information about the incident on Friday and the medical status of I/M Harris. I explained to them that I/M Harris is currently under the custody of HDSP and they would have to call that institution to receive any details as he is under their care. They also indicated that they had spoken with medical who wouldn't tell them anything. I told them that I/M Harris would have to sign a release of medical records for them to be given any information and since we didn't have them listed as emergency contacts, it's highly unlikely that form is on file for them. I gave them contact information for HDSP and they thanked me for the information.

10/19/2020 - 09:00 [Classification / Due Process]: Due Process Hearing: Inmate present, met with inmate on 10/19/2020. Rights were explained and understood. No DOC 2003 received. Inmate was brought into the infirmary on 10/16/2020 from ESP Death Row, due being stabbed. Inmate is also pending a MJ16: Murder. Inmate must remain HOUSE ALONE all Unit Officers Notified. Inmate is clear for exercise/showers/phones. Inmate was provided with a copy of the PREA Education and Information Sheet. Inmate did not have any questions or concerns. Inmate advised he will remain HDSP/CLS/ INFIRMARY pending discharge by medical provider.  Offender Care in Placement was set for 30 day PREA follow up.

CCSII Calderwood and Unit Correctional Officer.

10/19/2020 - 09:01 [PREA / PREA Intake Assessment]: PREA Intake (transfer) risk assessment completed in NOTIS on this date. This screening for risk of victimization and abusiveness meets the requirements per PREA standard 115.41. PREA Orientation Acknowledgment form (DOC 2096-1) signed this date and given to records to place in I-File.
10/19/2020 - 09:01 [PREA / PREA Education]: PREA Comprehensive Education.  Inmate signed acknowledgement form DOC 2096-2 stating  he has been given information regarding PREA regulations, how to report PREA incidents, advised of NDOC Zero tolerance policy and noting he read a comprehensive PREA educational video or transcript (15-minutes). Inmate was also provided with a copy of PREA frequently asked questions on this date. Within 10 to 20 days of reception (Intake and/or Transfer) they need a PREA 30 day follow up assessment (completed in NOTIS).
11/16/2020 - 10:47 [General Case Notes / Full Class Review]: SCC:  HDSP Inmate Present: Inmate seen on this date per Dr Bryan, inmate discharged from the infirmary. Spoke with inmate on this date inmate stated he is fine returning to SEG. Inmate is a death row inmate. Inmate needs ADA cell. Notified bed move coordinator on this date.

CCS II Calderwood and Unit Correctional Officer Gallo.

11/18/2020 - 01:55 [Classification / Due Process]: Due Process Hearing: Inmate present, met with inmate on 11/18/2020. Rights were explained and understood. No DOC 2003 received. Inmate was brought into Adseg on 11/16/2020 from ESP via Infirmary. Inmate was lifeflighted due to incident that occurred at ESP on 08/28/2020. Inmate pending OIC on 08/28/2020. Inmate pending OIC #485309 (MJ16: Murder) dated 08/28/2020. Inmate at ESP due to DR. Inmate is clear for exercise/showers/phones as a walk alike inmate only. Inmate was provided with a copy of the PREA Education and Information Sheet. Inmate did not have any questions or concerns. Inmate advised he will remain HDSP/Max/ AD-SEG pending completion of medical appointments/treatment and return to ESP/Max. Care in Placement was set to review in 30 days.

CCSII Yeats and Unit Correctional Officer.

12/04/2020 - 02:42 [PREA / PREA 30-day Follow-up Assessment]: Inmate reported no changes to the Initial (transfer) assessment per PREA standard 115.41.



# State of Nevada
# Department of Corrections

OFFENDER INFORMATION SUMMARY

**NDOC ID:1116547**      **NAME: HARRIS, AMMAR**      **BOOKING NO:  2014-070354**

## - CASE NOTES -

12/16/2020 - 10:13 [General Case Notes / Administrative Segregation Review]: AD SEG Review: Inmate is in HDSP Segregation since 11/16/2020 from ESP via Infirmary. Inmate was life for flight from ESP due to incident that occurred on 08/28/2020. Inmate still pending OIC #485309 from incident. Inmate to return to ESP/Max upon completion of medical treatment. Care in Placement was updated to an additional 30 days for review.

RX= REMAIN HDSP/ADSEG/Max pending completion of medical appointments/treatment.

12/29/2020 - 12:38 [Classification / Re-Classification (Change)]: Periodic/Change Review: Inmate at HDSP: RFS: 9; Max Custody/Segregation due to Med T&R from ESP, DEATH ROW; 2nd termer; serving 120 months to LWP for ███████ with CS 72-180 months Robbery with CS 24-60 months for Bribery of Pub Off with CS Death for Murder w/DW X 3 with CS 96-240 for Attempt Murder with CS 96-240 months for UDWE with CC 28-72 months for Discharge Firearm at or into Structure/Vehicle/Aircraft/Watercraft X 2 with CC 72-180 months for Discharge Firearm out of Motor Vehicle X 5 . JOC checked and verified with OSM. Currently Unassigned; Age=34; Religion= Islam; Emergency Contact=███████████████;
Education= 11th grade; Language= English; Commit= Clark Co.; Last Disciplinary=G14 dated 01/24/2018; Offender Non-Association=1@HDSP, 1@ESP; Detainers= None; STG= None; Med:3-2/5/8/10/11, Den:1-1, Psych:1-1; Birth Certificate= not in I-file, Social Security Card= not in I-file; No Religious or Medical diet noted; STW-Alert noted. Per NOTIS no upcoming court or parole dates noted. Claims no children and does not receive visits. PREA Education, PREA Initial Assessment and PREA 30 day Follow-up Assessments reviewed and verified in NOTIS. Inmate is a US resident. No prior escape history. Inmate had no other questions or concerns.
PED=02/02/2024, PEXD=Life to CS.
No 317/184/Min due to death row.
Recommend transfer ESP/Max due to DR and Med T&R. Medical completed. ...[DKEITH updated the case note on 04/01/2021 13:05:02] Approved CMU/MAX/ESP, MED T+R.

01/15/2021 - 09:53 [General Case Notes / Administrative Segregation Review]: AD SEG Review: Inmate is in HDSP Segregation since 11/16/2020 from ESP via Infirmary. Inmate was life for flight from ESP due to incident that occurred on 08/28/2020. Inmate still pending OIC #485309 from incident. Inmate to return to ESP/Max upon completion of medical treatment. Confirmed 12/29/2020 with medical department, inmate is cleared to return to ESP. Care in Placement was updated to an additional 30 days for review.

RX= REMAIN HDSP/ADSEG/Max pending transfer to ESP/Max due to DR.

02/16/2021 - 12:23 [General Case Notes / Administrative Segregation Review]: AD SEG Review: Inmate is in HDSP Segregation since 11/16/2020 from ESP via Infirmary. Inmate was life for flight from ESP due to incident that occurred on 08/28/2020. Inmate still pending OIC #485309 from incident. Inmate to return to ESP/Max upon completion of medical treatment. Confirmed 12/29/2020 with medical department, inmate is cleared to return to ESP. Care in Placement was updated to an additional 30 days for review.

RX= REMAIN HDSP/ADSEG/Max pending transfer to ESP/Max due to DR.

03/16/2021 - 04:22 [General Case Notes / Administrative Segregation Review]: AD SEG Review: Inmate is in HDSP Segregation since 11/16/2020 from ESP via Infirmary. Inmate was life for flight from ESP due to incident that occurred on 08/28/2020. Inmate still pending OIC #485309 from incident. Inmate to return to ESP/Max upon completion of medical treatment. Confirmed 12/29/2020 with medical department, inmate is cleared to return to ESP. Care in Placement was updated to an additional 30 days for review.

RX= REMAIN HDSP/ADSEG/Max pending transfer to ESP/Max due to DR.

04/19/2021 - 01:29 [General Case Notes / Administrative Segregation Review]: AD SEG Review: Inmate is in HDSP Segregation since 11/16/2020 from ESP via Infirmary. Inmate was life for flight from ESP due to incident that occurred on 08/28/2020. Inmate still pending OIC #485309 from incident. Inmate to return to ESP/Max upon completion of medical treatment. Confirmed 12/29/2020 with medical department, inmate is cleared to return to ESP. Care in Placement was updated to an additional 30 days for review.

RX= REMAIN HDSP/ADSEG/MAX/DR/PENDING TRANSFER TO ESP/MAX/DR

05/17/2021 - 02:03 [Grievance / Grievance]: Date: May 17, 2021
To: Grievance Coordinator at ESP
From: Frank Dreesen/ E. Lima
Re: Forwarded Grievance(s) listed below:
???????????????__  The enclosed grievance is being forwarded to your institution as the inmate is currently housed there and needs to sign, date, and agree/disagree. Please return 1 copy of the response page and the canary copy to HDSP when completed.



# State of Nevada
# Department of Corrections

OFFENDER INFORMATION SUMMARY

NDOC ID:1116547     NAME: HARRIS, AMMAR                    BOOKING NO:  2014-070354

**- CASE NOTES -**

??_x__This issue occurred at your facility. Please address the issue, prepare the Official Response with the Staff signature, copy for your records and return the original grievance to HDSP when it is completed. Once the inmate signs off on it. I will forward you a copy for your records.

_x__The enclosed grievance is being forwarded to your institution because it originated at your institution. It has already been inactivated. Please retain for your records.



#1116547 Harris 1st Level 18343 needs Resp



# State of Nevada
# Department of Corrections

OFFENDER INFORMATION SUMMARY

**NDOC ID:1116547**      **NAME: HARRIS, AMMAR**                **BOOKING NO:  2014-070354**

## - CASE NOTES -

05/19/2021 - 10:36 [General Case Notes / Exit Review]: Inmate is not present. Inmate approved for transfer from HDSP to ESP on 5/19/2021. Inmate has no upcoming Parole Board appearances or Court hearings scheduled. Inmate has no pending disciplinary concerns.

05/19/2021 - 03:58 [General Case Notes / Reception Review]: ESP/Reception. I/M arrived from HDSP on 5/19/21 for CMU was a medical T&R. I/M will be housed in building MLU AS/D and expressed no issues or concerns. Alerts=STW-Warning, Violent, Transportation and Security. STG=None. CMS=1@ESP U1 & 1@HDSP. Special Diet=None. LOIC= G14 1/24/2018. Den: 1/1, Med: 3/2-10-9-5-11-8, Psy:1/1. Serving: 120 months to LWP for ████████ with CS 72-180 months Robbery with CS 24-60 months for Bribery of Pub Off with CS Death for Murder w/DW X 3 with CS 96-240 for Attempt Murder with CS 96-240 months for UDWE with CC 28-72 months for Discharge Firearm at or into Structure/Vehicle/Aircraft/Watercraft X 2 with CC 72-180 months for Discharge Firearm out of Motor Vehicle X 5.   PED=2/02/24  PEXD=Life w/ pending Death. KOPs: None. Viewed 3 minute PREA video and given 15 minute video transcript. Given handbook and signed handbook acknowledgment. No other issues or concerns. I/M interviewed by classification, medical, and mental health staff.

05/20/2021 - 02:37 [PREA / PREA Intake Assessment]: ESP-NDOC PREA risk transfer assessment was completed on this date. This screening for risk of victimization and abusiveness assessment meets the requirements per PREA standard 115.41. Inmate was shown a 3 minute PREA video and he was given PREA information regarding PREA (Q & A PREA transfer assessment and PREA acknowledgment sheet have been placed in I-file.

05/20/2021 - 02:37 [PREA / PREA Education]: ESP - Inmate has been given information regarding PREA regulations, how to report PREA incidents at this facility and was mandated to watch a comprehensive PREA educational video (15 minutes) or read the video transcript within 30 days of arrival.

06/17/2021 - 01:18 [PREA / PREA Education]: ESP- Inmate has been given information regarding PREA regulations, how to report PREA incidents at this facility and was mandated to watch a comprehensive PREA educational video (15 minutes) or read the video transcript within 30 days of arrival

06/17/2021 - 01:19 [PREA / PREA 30-day Follow-up Assessment]: PREA-30 day follow up assessment completed.

07/09/2021 - 08:57 [Classification / Re-Classification (Per)]:
ESP-Reg Rev- I/M seen to rvw records. Rx Remain ESP/MAX due to CMU status.  Assessment= 9. Sentence= LWP ████████
████ cs Death Murder 1 W/DW X3 cs 96-240 months Attempt Murder cs 96-240 months UDWE cs 72-180 months Discharging FA from Vehicle X5 cs 72-180 months Robbery cs 28-72 months Discharging FA at Structure/Vehicle. CMS= 1@HDSP & 1@ESP. Alerts= STW-DR inmate & LTS / Transportation / Review warning chronos/Medical diet. NOK= Confirmed Carlin Michelle, Friend, 609-277-2967. Military= No. Holds/Det= None. JOC matches NOTIS/OSM records. Den/Med/Psy= Den 1/1, Med 3/2-5-11-10-8, Psy 1/1. Last OIC= 1/24/18-G14. STG= None. I/M acknowledged he understood PREA and how to report PREA incidents.
PED=2/2/24    MPR=N/A    PEXD=LIFE w/ pending CS (including DEATH)
Reason at ESP=CMU status.

Rx ESP/MAX Death Row w/ all CMU privileges.
...[TSANDOVAL updated the case note on 07/16/2021 14:57:35] OK ESP MLU-AS-D

09/28/2021 - 09:05 [Classification / Re-Classification (Change)]: OMD - Approved Max/HDSP/Medical Appointment per HDSP Medical. Death Row inmate.

10/13/2021 - 03:51 [General Case Notes / Reception Review]: HDSP Reception Review: Inmate received on 10/13/2021 from ESP. Inmate states that he has no immediate medical/mental/dental concerns and is not suicidal or homicidal. Inmate states he has no enemy concerns and no issues being housed HDSP/ADSEG. Inmate arrived due to being a medical treat and return.

10/13/2021 - 03:54 [PREA / PREA Comprehensive Education: Inmate signed acknowledgment form DOC 2096-2 stating he has been given information regarding PREA regulations, how to report PREA incidents, advised of NDOC Zero tolerance policy and noting he read a comprehensive PREA educational video or transcript (15-minutes).

10/13/2021 - 03:54 [PREA / PREA Intake Assessment]: PREA Intake (transfer) risk assessment completed in NOTIS on this date. This screening for risk of victimization and abusiveness meets the requirements per PREA standard 115.41. PREA Orientation Acknowledgment form (DOC 2096-1) signed this date and given to records to place in I-File.

Report Name: OAOIS                                                           Page 15 of 20
Run Date:DEC-22-23 10:25 AM



# State of Nevada
# Department of Corrections

OFFENDER INFORMATION SUMMARY

**NDOC ID:1116547**     **NAME: HARRIS, AMMAR**                    **BOOKING NO: 2014-070354**

## - CASE NOTES -

minimum of 90 days from his last issuance.

07/07/2023 - 12:52 [General Case Notes / General Case Note]: Offender seen in office on this day to review Legal Documents. Offender Harris submitted a DOC 3012, requesting to view documents. The Paperwork was picked up from Wardens AA at 7/6/2023. Offender viewed docs at 07/07/2023 10:47a and was done viewing at 10:47. DOC 3012 and Legal paper work will be forwarded to Wardens AA.

08/01/2023 - 08:45 [General Case Notes / General Case Note]: Offender seen in office on this day to review Legal Documents. Offender Harris submitted a DOC 3012, requesting to view documents. The Paperwork was picked up from Wardens AA at 7/27/2023. Offender viewed docs at 07/28/2023 9:30a and was done viewing at 10:55a. DOC 3012 and Legal paper work will be forwarded to Wardens AA.

08/23/2023 - 12:59 [Vital Statistics / Birth Cert VR note]:

08/23/2023 - 12:59 [Vital Statistics / SSN VR note]: Offender accepted assistance on this date and was given application, pending completion and return.

10/06/2023 - 04:02 [Grievance / Grievance]: Informal grievance 3508,  #2006-315-4029 returned to Offender on 10/6/2023 for signature. Offender has signed all copies and originals returned to Offender and a copy forwarded back to the grievance coordinator.

10/13/2023 - 02:13 [Grievance / Grievance]: Informal grievance 3508,  #2006-315-6082 returned to Offender on 10/12/2023 for signature. Offender has signed all copies and originals returned to Offender and a copy forwarded back to the grievance coordinator.

11/29/2023 - 08:34 [Classification / Re-Classification (Change)]: HDSP/CLS/SEG- Change Review: RFS: 21, Close custody, Unassigned. Sentence Structure is as follows: 120 mon-LIFE X3 for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with CS of 72-180 months for Robbery (Cat B), 24-60 months for Bribery of a police officer (Cat C), 96-240 months for Attempt Murder (Cat B), 28-72 months X2 for Discharging a gun into a structure/vehicle (Cat B), 72-180 months for Discharging firearm from a vehicle X5 (Cat B), 96-240 months for UDW enhancement (Cat B) and Death sentence for Open Murder with the Use of a Deadly Weapon X3 (Cat A). Age: 37, Place of Birth: Queens, NY, Religion: Islam, US Citizen: Yes, Education: 11th grade, Military Service: No. Emergency Contact (NOK): ▮▮▮▮▮h ▮▮▮▮▮▮. Holds/Detainers: None, Escape history: No, County of Commit: Clark Co. Last OIC: Pending MJ26 8/23/2023), Institutional violence (Within the last 5 years): no, (CMS) Non-Association: ESP U1X2, STG: None, Alert: S,L,T. Casework: None. Medical: 2:2,5,6,8,9,10,11, Dental: 1:1, Mental health: 2:5, Religious/Special/Medical diet: None. B/C: not in I-file, SSC: not in I-file, State ID: not in I-file.

PED: 2/2/2024, MPD: CS, PEXD: NONE

No 317/CT/184 due to I/O violence. - Offenders next court date is not until 3/21/2024 - Evidentiary Hearing

Recommend TX to ESP pending his next court date. Remain HDSP/CLS/SEG pending transfer (All NOC?s will be handled before transfer)

   ...[EGIBSON updated the case note on 11/29/2023 12:52:40] Approved MAX/ESP.  Return from court.

LOG NUMBER: 2006.31.28318

## NEVADA DEPARTMENT OF CORRECTIONS
## SECOND LEVEL GRIEVANCE

NAME: Ammar Harris          I.D. NUMBER: 1116547

INSTITUTION: HDSP          UNIT: 6B-1

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER _____ N/A _____ , ON THE
SECOND LEVEL. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION
IS ATTACHED FOR REVIEW.

**SWORN DECLARATION UNDER PENALTY OF PERJURY**

INMATE SIGNATURE: A.H.          DATE: 1/24/22

WHY DISAGREE: I filed an informal on 8/15/21 at ESP, it went
unanswered, proceeded to First Level on 11/20/21 at HDSP,
its been more than 60 days, no response, proceeding to my
Second Level.

GRIEVANCE COORDINATOR SIGNATURE: _____ for kw Scally DATE: _____

SECOND LEVEL RESPONSE: _____

DOC 3098

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 10/31/22

INMATE SIGNATURE: Mr. Harris          DATE: 1/24/23

## THIS ENDS THE FORMAL GRIEVANCE PROCESS

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison          RECEIVED

MAR 1 7 2022          JAN 25 2022

Grievance Coordinator    HDSP

DOC 3094 (12/01)

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Ammar Harris          I.D. NUMBER: 1116547

INSTITUTION: HDSP          UNIT #: 6B-1

GRIEVANCE #: N/A          GRIEVANCE LEVEL: 2nd Level

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1    OF 2

On 8/6/21 while at ESP, caseworker P. Hernandez provided me with the following documents, Two Memorandum dated 7/4/21 and 8/4/21 by Paul Drummond informing me for the first time a grievance has been rejected, By dates and information contained within, I was able to uncover a conspiracy involving HDSP and Ely Administration to have me transferred back to ESP cause I filed a grievance, resulting in me being injured in route, in order to preclude me from exercising my constitutional rights, in the process also violating AR 740, which prohibit retaliction, as well as, NRS 209.131, 209.243, 41.031, 41.0322, 41.0375, 42 USC § 15601. et seq, and 28 CFR Part 115, its apparent by the language used within, there was no first rejection, third rejection clearly informs me to resubmit listing all previous rejections.

Original:    Attached to Grievance
Pink:        Inmate's Copy

**Ely State Prison**

JAN 25 2022

HDSP

MAR 17 2022

**Grievance Coordinator**

DOC – 3097 (01/02)

## NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Ammar Harris    I.D. NUMBER: 1116547

INSTITUTION: HDSP    UNIT #: 6B-1

GRIEVANCE #: N/A    GRIEVANCE LEVEL: 2nd Level

GRIEVANT'S STATEMENT CONTINUATION:    PG. 2    OF 2

The first time I was informed of any deficiencies was 4/6/21.

Remedies; Full investigation, Declaratory Relief, Injunction Relief.

Ely State Prison

MAR 1 7 2022

Grievance ᴄ

Original:    Attached to Grievance
Pink:    Inmate's Copy